IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARLIN M. ADAMS, as Chapter 11 Trustee of the Bankruptcy Estates of Coram Healthcare Corp. and Coram, Inc., <br><br> Plaintiff, <br><br> v. <br><br> GENESIS INSURANCE COMPANY, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) |

Civil Action No. 1:06-cv-00364-SLR

**OPENING BRIEF IN SUPPORT OF DEFENDANT GENESIS
INSURANCE COMPANY'S MOTION TO DISMISS OR STAY**

Carmella P. Keener (DSBA No. 2810)
ROSENTHAL, MONHAIT &
 GODDESS, P.A.
919 Market Street, Suite 1401
Wilmington, Delaware 19801
302-656-4433

*Attorneys for Defendant
Genesis Insurance Company*

Of Counsel:

Lewis K. Loss
Thomas J. Judge
Thompson, Loss & Judge, LLP
1919 Pennsylvania Avenue, N.W.
Suite M-200
Washington, D.C. 20006-3458
202-772-5170

## **TABLE OF CONTENTS**

**Page**

NATURE AND STAGE OF PROCEEDINGS ........................................................................... 1

SUMMARY OF ARGUMENT .................................................................................................. 1

STATEMENT OF FACTS ......................................................................................................... 1

The Policy .................................................................................................................................. 1

The Trustee Action against Coram's Former Directors and Officers ......................................... 2

Genesis Denies Coverage for the Trustee Action and
Commences the Colorado Coverage Litigation ........................................................................... 2

The Outside Directors Countersue Genesis
in Colorado for an Alleged Breach of Contract .......................................................................... 3

The Outside Directors Settle with the Trustee and
Assign Their Rights under the Policy against Genesis ................................................................ 4

The Trustee Substitutes into the Colorado Coverage Litigation .................................................. 4

The Trustee Commences this Duplicative Coverage Action ........................................................ 5

The Trustee Moves to Transfer the Colorado Coverage Action ................................................... 5

ARGUMENT .............................................................................................................................. 6

I.      THIS DUPLICATIVE COVERAGE ACTION SHOULD BE DISMISSED
        OR STAYED PURSUANT TO THE WELL-ESTABLISHED "FIRST-
        FILED RULE" ................................................................................................................. 6

II.     NO "RARE OR EXTRAORDINARY CIRCUMSTANCES" EXIST HERE
        THAT WOULD JUSTIFY NOT APPLYING THE FIRST-FILED RULE .................. 10

CONCLUSION ......................................................................................................................... 12

## TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Chase Manhattan Bank, USA, N.A., v. Freedom Card, Inc.*,
    265 F. Supp. 2d 445 (D. Del. 2003)................................................................................6, 9, 10

*Gahagen Iron & Metal Co. v. Transport Insurance Co.*,
    812 F. Supp. 1106 (D. Colo. 1992).......................................................................................11

*Hartsel Springs Ranch of Colo., Inc.  v. Bluegreen Corp.*,
    296 F.3d 982 (10th Cir. 2002) .............................................................................................7

*Moore Corp. Ltd. v. Wallace Computer Services, Inc.*,
    898 F. Supp. 1089 (D. Del. 1995).........................................................................................6

*Snell v. J.C. Turner Lumber Co.*,
    285 F. 356 (2d Cir. 1922).....................................................................................................7

*Turner v. Crawford Square Apartments III, L.P.*,
    449 F.3d 542 (3d Cir. 2006).................................................................................................7

*Ultronic System Corp. v. Ultronix, Inc.*,
    217 F. Supp. 89 (D. Del. 1963) ..........................................................................................10

### STATE CASES

*Allstate Insurance Co. v. Carioto*,
    551 N.E.2d 382 (Ill. Ct. App. 1990) ............................................................................. 10-11

*Liggett Group, Inc. v. Affiliated FM Insurance Co.*,
    788 A.2d 134 (Del. Super. Ct. 2001) ..................................................................................11

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff Arlin M. Adams (the "Trustee"), as Trustee of the Bankruptcy Estates of Coram Healthcare Corp. and Coram, Inc. (collectively, "Coram"), commenced this insurance coverage action against defendant Genesis Insurance Company ("Genesis") on May 31, 2006. Genesis's counsel accepted and acknowledged service on behalf of Genesis on June 12, 2006. The Trustee's counsel agreed that Genesis's response to the complaint would not be due until July 24, 2006. Genesis responds to the complaint with this motion to dismiss or stay.

## SUMMARY OF ARGUMENT

This recently-filed insurance coverage action is an ill-conceived exercise in forum shopping. This action is duplicative of an insurance coverage action that has been pending in a Colorado federal court since February of 2005, which is being actively litigated. Pursuant to the well-established "first-filed" rule, this action should be dismissed or stayed in favor of the prior pending action in Colorado. In the absence of such relief, Genesis will be forced to litigate the issue of coverage under the subject insurance policy for the same underlying litigation in two different lawsuits before two different courts. To prevent this injustice and eliminate the risk of inconsistent decisions by the two federal courts, the Court should grant Genesis's motion to dismiss or stay this later-filed, duplicative insurance coverage action.

## STATEMENT OF FACTS

### The Policy

Genesis issued Directors and Officers Liability Insurance Policy No. YXB001625A (the "Policy") to Coram in Colorado, where Coram had its headquarters and principal place of business. (Ex. 1, Policy, Declarations Page). Subject to its terms and conditions, the Policy affords coverage for Claims first made during the Policy Period effective from January 8, 1999

- 1 -

to January 27, 2001.  (*Id.*, Declarations Page, as amended).  In addition, the Policy provides Discovery Period coverage for claims first made between January 27, 2001 and January 27, 2002, provided such Claims are for Wrongful Acts committed before January 27, 2001, and otherwise are covered under the Policy.  (*Id.*, Section III, as amended by Endorsement Form No. GIC-7480 (09/97)).  The Policy provides only indemnity-type coverage.  Genesis has no duty to defend against claims under the Policy.  (*Id.*, Section VI.C.).

The Trustee Action against Coram's Former Directors and Officers

In December 2004, the Trustee commenced an action in this Court against Coram's former Chief Executive Officer, Daniel D. Crowley ("Crowley"), and Coram's former outside directors, Donald J. Amaral, William J. Casey, L. Peter Smith, and Sandra L. Smoley (collectively, the "Outside Directors"), captioned *Arlin M. Adams v. Daniel D. Crowley, et al.*, No. 04-1565 (D. Del.) (the "Trustee Action").  (Ex. 2, Trustee Action Complaint).  In that lawsuit, the Trustee alleges that Crowley breached fiduciary duties owed to Coram through a conflict of interest arising out of his simultaneous employment with one of Coram's principal lenders, Cerberus Partners, LP.  (*Id.*).  The Trustee also alleges that the Outside Directors breached their fiduciary duties by first failing to discover Crowley's conflict of interest and then, once having discovered the conflict, failing to adequately address it.  (*Id.*).

Genesis Denies Coverage for the Trustee Action and<br/>Commences the Colorado Coverage Litigation

Crowley and the Outside Directors provided Genesis with notice of the Trustee Action. After reviewing the claim, Genesis, in February 2005, denied coverage for the Trustee Action because, *inter alia*, it is a Claim first made long after the Policy Period and the Discovery Period expired.  (Ex. 3, J. Cronic ltr. of Feb. 23, 2005 pp. 2-4).  At the same time, on February 23, 2005, Genesis commenced coverage litigation in the Colorado federal court against Crowley and the

- 2 -

Outside Directors seeking a declaratory judgment that the Policy does not afford any coverage for the Trustee Action. (Ex. 4, Genesis Complaint).

In the Colorado coverage litigation, Genesis alleges, *inter alia*, that there is no coverage under the Policy for the Trustee Action because the Trustee Action Claim was first made long after the Policy Period and the Discovery Period expired. (*Id.* ¶¶ 24-25, 30-31). In addition, Genesis alleges that there is no coverage under the Policy for Loss based on Wrongful Acts committed after January 27, 2001, and, to the extent there is any coverage for the Trustee Action, which Genesis denies, any Loss sustained by the insured defendants in the Trustee Action must be allocated between covered and uncovered Loss pursuant to the Policy's terms. (*Id.* ¶¶ 38-41).

### The Outside Directors Countersue
#### Genesis in Colorado for an Alleged Breach of Contract

In response to Genesis's complaint in Colorado, the Outside Directors filed a counterclaim against Genesis in June 2005. (Ex. 5, Outside Directors' Answer and Counterclaim pp. 11-20). In their counterclaim, the Outside Directors assert a single cause of action for breach of contract based on Genesis's denial of coverage for the Trustee Action, seeking "damages in amounts to be proved at trial" and a declaratory judgment that they are entitled to coverage under the Policy for the claims asserted in the Trustee Action, "including indemnity for those claims and legal fees and costs reasonably incurred in defending the claims." (*Id.*, ¶¶ 41-45 and Prayer for Relief ¶¶ A. and C.).

In their counterclaim, the Outside Directors allege that the Trustee Action Claim, in fact, was first made during the Policy Period and, consequently, the Policy covers the Trustee Action. (*Id.* ¶¶ 24-40). Specifically, the Outside Directors allege that the Trustee Action Claim was first made during the Policy Period because it relates back to Claims first made in the Policy Period or the Discovery Period. (*Id.*).

- 3 -

The Outside Directors Settle with the Trustee and
Assign Their Rights under the Policy against Genesis

In April 2006, before the Trustee Action had progressed past the pleadings stage, the Trustee settled with the Outside Directors. (Ex. 6, Settlement Agreement). Pursuant to the settlement agreement, the Outside Directors consented to the entry of judgment against them in the Trustee Action in the amount of $9.55 million and assigned all of their rights under the Policy to the Trustee. (*Id.*, ¶¶ 1 and 3). The Trustee, on the other hand, agreed that execution on the consent judgment would be restricted to seeking recovery from the Outside Directors' insurers (*i.e.*, Genesis). (*Id.*, ¶ 4). The settlement required the Outside Directors to continue to defend Genesis's claim for a declaratory judgment in Colorado and to prosecute their counterclaim for breach of contract there pending the Trustee's substitution as a real party in interest in that action. (*Id.*, ¶ 7).[1]

The Trustee Substitutes into the Colorado Coverage Litigation

Following the settlement, the Trustee, on May 11, 2006, moved in the Colorado coverage litigation to substitute in as a real party in interest, replacing the Outside Directors as a defendant and counterclaim plaintiff. (Ex. 7, Motion to Substitute). Citing the settlement agreement with the Outside Directors and the assignment contained therein of their rights under the Policy, the Trustee argued that he is the real party in interest as a defendant in Genesis's declaratory judgment action and as the counterclaim plaintiff asserting a breach of contract claim against Genesis. (*Id.*).

Genesis filed only a limited objection to the Trustee's motion to substitute. (Ex. 8, Limited Objection). Genesis did not object to the Trustee joining the Colorado action following

---

[1] The Trustee Action is proceeding against Crowley. A scheduling order was recently entered setting a discovery cut-off date in March 2007.

the settlement, but argued that the Outside Directors should remain in the case, in part, to facilitate discovery. (*Id.*). On June 22, 2006, the Trustee's motion to substitute was granted. (Ex. 9, Order of June 22, 2006).

The Trustee Commences this Duplicative Coverage Action

While the Trustee's motion to substitute was pending in Colorado, the Trustee commenced this coverage litigation against Genesis. (Ex.10, Delaware Coverage Complaint (D.I. 1)). In this action, the Trustee, again, as the assignee of the Outside Directors' rights under the Policy, alleges that, contrary to Genesis's denial of coverage, the Policy does in fact afford coverage for the Trustee's Action against the Outside Directors and asserts a single cause of action for breach of contract seeking to recover the $9.55 million settlement with the Outside Directors as damages. (*Id.* ¶¶ 52-58). The Trustee alleges in this action, just as he does in Colorado, that the Trustee Action Claim relates back to Claims first made against the Outside Directors during the Policy Period and/or Discovery Period or, alternatively, that it should be treated as a Claim first made during the Policy Period because of a notice of circumstances provided to Genesis during the Policy Period. (*Id.* ¶¶ 26-45).

The Trustee Moves to Transfer the Colorado Coverage Action

On June 30, 2006, the Trustee filed a motion in the Colorado federal court seeking to transfer that coverage action to Delaware. (Ex. 11, Motion to Transfer). Genesis will be filing an opposition to the transfer motion on or before July 27, 2006. In addition, Genesis will be moving at and around that time for partial summary judgment in the Colorado coverage litigation, arguing, as a matter of law, that the Trustee's settlement with the Outside Directors is not recoverable under the Policy.

The Colorado coverage litigation is moving rapidly towards trial. The parties have completed serving and responding to written discovery and fact depositions must be completed by September 15, 2006. (Ex. 12, Order of May 24, 20006; Ex. 13, Proposed Deposition Schedule). Dispositive motions are due to be filed no later than October 2, 2006 and a pretrial conference is scheduled for February 14, 2007.

ARGUMENT

I.   THIS DUPLICATIVE COVERAGE ACTION SHOULD BE DISMISSED OR STAYED PURSUANT TO THE WELL-ESTABLISHED "FIRST-FILED RULE"

"Where two actions are pending concurrently in separate forums, there is potential for conflicting resolutions. In response to this contingency, the Third Circuit Court of Appeals has adopted the . . . 'first-filed" rule, whereby in all cases of federal concurrent jurisdiction, the court which first had possession of the subject must decide it." *Moore Corp. Ltd. v. Wallace Computer Services, Inc.*, 898 F. Supp. 1089, 1098 (D. Del. 1995) (citing *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941); *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988)). The rule, which is applied as a matter of discretion, is based on two practical policies: (1) ensuring that "'the party who first brings a controversy into a court of competent jurisdiction for adjudication should . . . be free from vexation of subsequent litigation over the same subject matter,'" and (2) ensuring the that the courts are not burdened with overseeing duplicative litigation with the risk of inconsistent decisions. *Chase Manhattan Bank, USA, N.A., v. Freedom Card, Inc.*, 265 F. Supp. 2d 445, 448 (D. Del. 2003) (citations omitted); *see also Moore*, 898 F. Supp. at 1098. "'While the first-filed rule is not a rigid or inflexible rule to be mechanically applied[,]' only in '*rare or extraordinary circumstances*' should the first filed action give way to one filed later." *Chase Manhattan*, 265 F. Supp. 2d at 448 (quoting *E.E.O.C.*, 850 F.2d at 972) (emphasis added).

- 6 -

Here, the Trustee has filed an insurance coverage action in this Court that duplicates a prior pending coverage action in Colorado. Both actions seek to resolve the central question of whether there is coverage under the Policy for the Trustee Action. In both actions, the Trustee is pursuing a breach of contract claim against Genesis stemming from Genesis's denial of coverage for the Trustee Action. Clearly, if permitted to proceed concurrently, the parties and the courts will duplicate efforts and run the significant risk of inconsistent decisions. As the Colorado coverage action has been pending for a considerable period of time (and has been actively litigated), this action should be dismissed or stayed in favor of the Colorado action pursuant to the first-filed rule.

The Trustee, in an effort to justify this duplicative lawsuit, argues that his breach of contract claim against Genesis before this Court concerns recovering only the $9.55 million settlement with the Outside Directors in the Trustee Action, while his breach of contract claim against Genesis in Colorado concerns recovering only defense costs incurred by the Outside Directors in the Trustee Action. In so arguing, the Trustee seeks to split his cause of action for Genesis's alleged breach of the insurance contract so as to seek recovery of one element of damages in Colorado and another here in Delaware. This type of forum shopping, which, if left unchecked, would provide the Trustee with two bites at the coverage apple, understandably is not permitted. *See, e.g., Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 548-551 (3d Cir. 2006) (prohibition against claim splitting precluded from bringing a successive lawsuit that could have been asserted an the earlier lawsuit); *Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*, 296 F.3d 982, 986-88 (10th Cir. 2002) (recognizing well reasoned prohibition against claim splitting); *Snell v. J.C. Turner Lumber Co.*, 285 F. 356, 358 (2d Cir. 1922) ("'The rule is well settled that one having a claim against another, arising either on a breach of contract

- 7 -

or for a tort, must recover in one suit for all of the damages he may suffer because thereof, but is not permitted to split his cause of action and recover in successive suits therefore.'") (citations omitted).

The Trustee's contention that the Colorado coverage action somehow does not encompass his attempt to recover the $9.55 million settlement under the Policy cannot withstand even minimal scrutiny. First, in the Colorado action, Genesis seeks a declaration that it has no obligation provide any coverage under the Policy for the Trustee Action, such a declaration obviously would mean that there can be no recovery of the $9.55 million settlement under the Policy. Second, in the Colorado action, the Trustee himself is asserting a breach of contract claim against Genesis and, in connection with that claim, is seeking "*all* contractual and compensatory damages" stemming from Genesis's denial of coverage and a declaratory judgment that the Policy affords coverage, "including indemnity," for the Trustee Action. (Ex. 5, Outside Directors' Answer and Counterclaim p. 19). Accordingly, the Trustee's breach of contract claim in Colorado extends to the $9.55 million settlement as a potential element of damages caused by Genesis's denial of coverage. That the settlement was executed after the breach of contract claim was first asserted does not alter the fact that the settlement, to the extent recoverable under the Policy, is an element of the Trustee's breach of contract damages based on Genesis's denial of coverage for the Trustee Action. Furthermore, the Trustee's associated claim for a declaratory judgment that Genesis has a duty to indemnify under the Policy in connection with the Trustee Action also necessarily encompasses the question of whether Genesis has a duty to provide indemnity for a settlement reached in that Action.

Furthermore, the Trustee's attempt to differentiate his breach of contract claims by contending that, in Colorado, he is only complaining about Genesis's initial denial of coverage

- 8 -

for the Trustee Action, while, in Delaware, he is only complaining about Genesis's later refusal to consent to and fund the $9.55 million settlement in the Trustee Action, is utter nonsense. Genesis's refusal to consent to and fund the settlement obviously stems, as an initial matter, from Genesis' steadfast position that there is no coverage under the Policy for the Trustee Action.[2] Properly described, the Trustee's breach of contract claim in Colorado essentially alleges that the Policy affords coverage for the Trustee Action, Genesis breached the contract by denying coverage for the Trustee Action (refusing to pay money for Loss sustained by the Outside Directors in the Trustee Action), and the Outside Directors' defense costs and settlement in the Trustee Action are damages resulting from the alleged breach. That claim cannot and should not be split between two different cases and two different courts. Moreover, as previously noted, Genesis will be moving for partial summary judgment in Colorado with respect to the recoverability of the settlement. In response to that motion, the Trustee may argue that the issue is not properly included within the Colorado coverage action. The resolution of that issue, however, properly should be left to the Colorado federal court.

Setting aside the impermissible claim splitting, the Trustee cannot ignore that, in both cases, for the Trustee to prevail on his breach of contract claim, there must be a finding that there is coverage under the Policy for the Trustee Action. Thus, if this case proceeds, that central issue will be litigated and decided in two different venues. While Genesis expects that it would prevail in both cases, showing that, in fact, there is no coverage for the Trustee Action, concurrent coverage litigation nevertheless would be impractical and prejudicial, and there would be a definitive risk of inconsistent decisions from this Court and the Colorado federal

---

[2] Genesis has additional defenses to coverage with respect to the settlement itself.

court. *See Chase*, 265 F. Supp. 2d at 450 (applying first-filed rule where "the issues of fact will not be different in any significant degree" whether resolved in one forum or the other).

This is precisely the situation that the first-filed rule is designed to address. The Colorado coverage action, including the Trustee's breach of contract claim therein, undeniably was filed long before this action commenced. As the first-filed, the Colorado coverage action should take precedence over this action, which should be dismissed or stayed.

That result would be particularly appropriate since the Colorado coverage action is a superior and more complete action than this action because Crowley, while not a party in this action, is a party in Colorado, so the determination of whether there is or is not coverage under the Policy for the Trustee Action in Colorado will be binding on all of the interested parties. In addition, in light of the Trustee's purposeful entrance into the Colorado coverage action and his prosecution of a claim in that action, the dismissal or stay of this action is not in any way inequitable or prejudicial to the Trustee. Moreover, while the Trustee erroneously contends that Delaware is a more convenient venue for the coverage litigation, that issue properly should be decided by the court with prior jurisdiction. *See Ultronic Sys. Corp. v. Ultronix, Inc.*, 217 F. Supp. 89, 92 (D. Del. 1963) ("it is for the Court having prior jurisdiction to determine this [convenience] issue by way of a motion to transfer"). The Colorado federal court will decide the Trustee's motion to transfer the Colorado coverage action to Delaware.

## II.    NO "RARE OR EXTRAORDINARY CIRCUMSTANCES" EXIST HERE THAT WOULD JUSTIFY NOT APPLYING THE FIRST-FILED RULE

Contrary to any contention by the Trustee, this is *not* a situation that presents "*rare or extraordinary circumstances*" that justify not adhering to the first-filed rule. The Third Circuit has recognized such exceptional circumstances where there is "inequitable conduct, bad faith, or forum shopping" in the commencement of the first-filed action. *Chase*, 265 F. Supp. 2d at 448.

- 10 -

The burden is on the party seeking to avoid application of the first-filed rule (here, the Trustee) to show such circumstances. *Id.* at 450.

There was no inequitable conduct, bad faith, or forum shopping involved in Genesis's filing a declaratory judgment action in Colorado, where the Policy was issued and the insured risk was located. Indeed, insurers are encouraged to promptly bring such actions to resolve coverage issues with their insureds. *See, e.g., Allstate Ins. Co. v. Carioto*, 551 N.E.2d 382, 386 (Ill. Ct. App. 1990). Likewise, there was nothing improper about the Outside Directors' filing of a counterclaim for breach of contract against Genesis in that action, which the Trustee has since inherited and is prosecuting. The interpretation of the Policy is governed by Colorado law and, while the Trustee may erroneously view Delaware as a superior forum, there certainly is nothing improper about Genesis seeking a resolution of issues under Colorado law in Colorado.[3]

To extent there has been improper forum shopping, it is in the form of this duplicative litigation. While this Court need not decide whether this action was filed for improper purposes to grant Genesis's motion to dismiss or stay, Genesis notes the apparent lack of any valid reason for bringing this duplicative action. This action appears to result purely from a perceived tactical advantage in pursuing the coverage litigation in Delaware.

In any event, there simply is no reason not to apply the first-filed rule in these circumstances. This coverage action should be dismissed or stayed in favor of the Colorado coverage action. The parties undeniably disagree as to which venue is the most convenient venue, but that issue will be addressed by the Colorado federal court in connection with the Trustee's motion to transfer.

---

[3] Colorado and Delaware courts generally hold that insurance policies should be interpreted according to the law where the policy was issued. *See, e.g., Gahagen Iron & Metal Co. v. Transp. Ins. Co.*, 812 F. Supp. 1106, 1108 (D. Colo. 1992); *Liggett Group, Inc. v. Affiliated FM Ins. Co.*, 788 A.2d 134, 138 (Del. Super. Ct. 2001).

CONCLUSION

For the reasons set forth above, Genesis respectfully requests that the Court grant

Genesis's Motion to Dismiss or Stay.

Dated this 24th day of July 2006.

Respectfully Submitted,

_____/s/ Carmella P. Keener_____

Carmella P. Keener (DSBA No. 2810)
ROSENTHAL, MONHAIT & GODDESS, P.A.
919 Market Street, Suite 1401
Wilmington, Delaware 19801
302-656-4433

*Attorneys for Defendant*
*Genesis Insurance Company*

Of Counsel:

Lewis K. Loss
Thomas J. Judge
Thompson, Loss & Judge, LLP
1919 Pennsylvania Avenue, N.W.
Suite M-200
Washington, D.C. 20006-3458
(202) 772-5170

## CERTIFICATE OF SERVICE

I, Carmella P. Keener, hereby certify that on this 24th day of July, 2006, I caused the

**OPENING BRIEF IN SUPPORT OF DEFENDANT GENESIS INSURANCE COMPANY'S MOTION TO DISMISS OR STAY** to be electronically filed with the Clerk of

Court using CM/ECF, which will send notification of such filing to the following:

> Michael Jason Barrie, Esquire
> Schnader Harrison Segal & Lewis LLP
> 824 N. Market Street, Suite 1001
> Wilmington, DE 19801

/s/ Carmella P. Keener
Carmella P. Keener (DSBA No. 2810)
ROSENTHAL, MONHAIT & GODDESS, P.A.
919 N. Market Street, Suite 1401
Citizens Bank Center
P.O. Box 1070
Wilmington, DE 19899-1070
(302) 656-4433
ckeener@rmgglaw.com

- 13 -

# EXHIBIT 1

# GENESIS

**GENESIS INSURANCE COMPANY**
STAMFORD, CONNECTICUT 06904

COMMERCIAL LINES POLICY

THIS POLICY JACKET WITH THE COMMON DECLARATIONS PAGE, COVERAGE PARTS,
AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETES THIS POLICY.

# GENESIS

**GENESIS INSURANCE COMPANY**

## DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICY
### DECLARATIONS PAGE

Policy Number: YXE001625A

NOTE: THIS IS A CLAIMS MADE POLICY, PLEASE READ IT CAREFULLY. AMOUNTS INCURRED AS DEFENSE COSTS SHALL REDUCE THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS AND SHALL ALSO BE APPLIED AGAINST THE RETENTION. THIS POLICY DOES NOT PROVIDE FOR ANY DUTY BY THE INSURER TO DEFEND THOSE INSURED UNDER THIS POLICY.

### THIS IS A CLAIMS MADE POLICY, PLEASE READ IT CAREFULLY

| | | |
|---|---|---|
| ITEM 1. | Insured Entity.......: | **Coram Healthcare Corporation** |
| | Principal Office.....: | 1125 Seventeenth Street, Suite 2100 |
| | | Denver, CO 80202 |

ITEM 2.  Policy Period........:  From: **January 8, 1999**   To: **January 8, 2001**
(Both dates at 12:01 a.m. at the Principal Address of the Insured Entity)

ITEM 3.  Limit of Liability (Inclusive of Defense Costs):
$  25,000,000    Aggregate Limit of Liability

ITEM 4.  Retentions Applicable to Insuring Agreements:
A.  For Securities Claims:
   1.  Defense Costs:
   $           0   Each Director or Officer for each single Securities Claim under Insuring Agreement Section I.A., and in no event exceeding
   $           0   for all Directors and Officers under Insuring Agreement Section I.A. for each single Securities Claim; and
   $     200,000   for each single Securities Claim to which Insuring Agreements Sections I.B. or I.C. apply.
   2.  Settlements and Judgments:
   NONE   for Settlements and Judgments in Securities Claims.

B.  For Claims other than Securities Claims:
   $           0   Each Director or Officer for each single Claim under Insuring Agreement Section I.A., and in no event exceeding
   $           0   for all Directors and Officers under Insuring Agreement Section I.A. for each single Claim; and
   $      75,000   for each single Claim to which Insuring Agreement Section I.B. applies.

ITEM 5.  Premium:
$     586,000   Two year pre-paid premium.

ITEM 6.  Premium for Discovery Period:
75% of the annualized premium, to be paid only if the eligibility requirements are met and the Discovery Period option is properly exercised

ITEM 7.  Endorsements:
This Policy includes the following attached endorsements, and all other endorsements issued by the Insurer to be attached hereto after the issuance of this Policy: 7425.EP, 7425, 7425.RE, 7459.

ITEM 8.  Notices and Information:
All notices and information required to be provided to the Insurer under this Policy shall be addressed to: Genesis Insurance Company, 25550 Chagrin Boulevard, Suite 300, Beachwood, Ohio 44122.

These Declarations along with the Application, including all materials submitted therewith, and the Directors and Officers Liability Insurance Policy, shall constitute the entire contract between the Directors, Officers, the Company and the Insurer. GENESIS INSURANCE COMPANY.

Date: _January 8, 1999_          By: _Michael Zartman_
                                    Company Officer or Authorized Agent

FORM NO. GIC-7417 (5/97)

# GENESIS    GENESIS INSURANCE COMPANY

## DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICY

## THIS IS A CLAIMS MADE POLICY, PLEASE READ IT CAREFULLY

In consideration of the premium paid and in reliance upon the information provided in and with the Application, and subject to the terms, conditions and limitations of this Policy, the Insurer, the Company and the Directors and Officers agree as follows:

### SECTION I.   INSURING AGREEMENTS

A.  The Insurer will pay, on behalf of the Directors and Officers, Loss arising from Claims first made during the Policy (or Discovery) Period against the Directors or Officers, individually or collectively, for a Wrongful Act, except for such Loss which the Company pays to or on behalf of the Directors and Officers;

B.  The Insurer will pay, on behalf of the Company, Loss which the Company is required to indemnify, or which the Company may legally indemnify, the Directors or Officers, arising from Claims first made during the Policy (or Discovery) Period against the Directors or Officers, individually or collectively, for a Wrongful Act; and

C.  The Insurer will pay, on behalf of the Company, Loss arising from Securities Claims first made against the Company during the Policy (or Discovery) Period for a Wrongful Act.

### SECTION II.   DEFINITIONS

A.  "Claim" shall mean the following proceedings initiated against a Director or Officer for money damages or other relief, whether brought within or outside of the United States:

   (1)  any civil, arbitration or administrative proceeding commenced by: (a) service of a complaint or similar pleading, or (b) receipt of a notice of charges;
   (2)  any criminal proceeding commenced by the return of an indictment or an information;
   (3)  any appeal from the above proceedings; or
   (4)  other written or verbal demand for money or services.

   "Claim" shall also mean any of the above-listed proceedings initiated against a Director, Officer or the Company which is a Securities Claim.

B.  "Company" shall mean the Insured Entity and its Subsidiaries under Insuring Agreements Sections I.A. and I.B. Under Insuring Agreement Section I.C., "Company" shall mean the Insured Entity only.

C.  "Defense Costs" shall mean reasonable and necessary legal fees and expenses incurred in the investigation and/or defense of any Claim, including costs of attachment or similar bonds; provided, however, Defense Costs shall not include salaries, wages, overhead or benefit expenses of or associated with Directors, Officers, employees of the Company, or the Company.

D.  "Determination of No Liability" shall mean: (1)  a final judgment of no liability in a Securities Claim in favor of all Directors and Officers and the Company, after the exhaustion of all appeals, or (2)  a dismissal of a Securities Claim without prejudice, and without the payment of any consideration by the Directors, Officers, and/or the Company.

E. "Directors" and "Officers" shall mean:

   (1) all past, current or prospective duly elected or appointed directors and officers of the Company, and their foreign equivalents for Company operations outside of the United States, including their estates, heirs, legal representatives or assigns in the event of their death, incapacity or bankruptcy;

   (2) for Securities Claims only, all past, current and future employees of the Company; and

   (3) spouses of duly elected or appointed directors and officers of the Company, but only for Claims

      (i) which are based upon Wrongful Acts of the directors or officers, and not upon any alleged conduct of a spouse, and

      (ii) which are based upon either the legal status as a spouse or the joint ownership of property between a spouse and a director or officer.

F. "Loss" shall mean any amounts which the Directors or Officers are legally obligated to pay, such amounts which the Company is required to indemnify the Directors or Officers, or such amounts which the Company may legally indemnify the Directors or Officers, for Claims made against the Directors or Officers, or any amounts which the Company is legally obligated to pay for Securities Claims made against the Company, in excess of the applicable Retention, including damages, judgments, orders, Settlements, and Defense Costs; provided, however, Loss shall not include criminal or civil fines or penalties imposed by law, multiplied portions of damages in excess of actual damages, taxes, or any matter which may be deemed uninsurable under the law pursuant to which this Policy shall be construed.

G. "Outside Entity" shall mean any nonprofit entity under Section 501(c)(3) of the Internal Revenue Code of 1986, as amended, for which any of the Directors or Officers serve as directors or officers with the consent of the Company.

H. "Policy Period" shall mean the time period from the inception date of this Policy to the expiration date as stated in item 2 of the Declarations, or to its earlier cancellation or termination date.

I. "Securities Claim" means any Claim brought by any person or entity, directly or derivatively, based upon, arising out of, or attributable to, the purchase or sale, or offer to purchase or sell, any securities of the Company, brought by a securities holder of the Company in their capacity as a securities holder, or brought by the United States Securities and Exchange Commission.

J. "Settlement" shall mean a compromise of any Claim to which the Insurer has given its written consent pursuant to Section VI.A.

K. "Subsidiary" shall mean:

   (1) any entity in which the Insured Entity owns or at any time owned more than fifty percent (50%) of the issued and outstanding voting securities, directly or indirectly, subject to clauses (2) and (3) below for acquisitions made by the Company during the Policy Period;

   (2) any entity in which the Insured Entity acquires more than 50% of the issued and outstanding voting securities or substantially all of the assets, directly or indirectly, during the Policy Period, if such entity's total assets represent less than 20% of the Company's total assets prior to the acquisition; and

   (3) for forty-five (45) days immediately following the acquisition date, any entity in which the Insured Entity acquires more than 50% of the issued and outstanding voting securities or substantially all of the assets, directly or indirectly, during the Policy Period, if such entity's total assets represent more than 20% of the Company's total assets prior to the acquisition; provided, however, such entity will not be considered a Subsidiary or included within the definition of Company beyond such automatic forty-five (45) day period unless the Insurer specifically agrees in writing to provide such coverage, subject to such additional information, coverage terms and premium as the Insurer may require.

   The term "Subsidiary" shall also include any subsidiary of a Subsidiary.

L.  "Wrongful Act" shall mean:

(1) under Insuring Agreements Sections I.A. and B., any actual or alleged act, omission, misstatement, misleading statement, neglect, error or breach of duty by the Directors or Officers in their capacity as Directors or Officers of the Company or in their capacity as directors or officers of an Outside Entity, individually or collectively;

(2) under Insuring Agreement Section I.C., any actual or alleged act, omission, misstatement, misleading statement, neglect, error or breach of duty by the Company, or by persons for whose actual or alleged conduct the Company is legally responsible.

## SECTION III.  DISCOVERY PERIOD

A.  If either the Insurer or Insured Entity cancels this Policy pursuant to Section VIII, or if either the Insurer or Insured Entity chooses to not renew this Policy, for any reason other than the Company's nonpayment of premium or non-compliance with the terms of this Policy, then the Insured Entity shall have the right, upon payment of the additional premium set forth in Item 6 of the Declarations, to an extension of the Policy Period for Claims first made during the period of one year after the effective date of such cancellation or nonrenewal, but only with respect to Wrongful Acts committed before such effective date and otherwise covered by this Policy. This one year extension period shall be referred to as the Discovery Period.

B.  The right to purchase the Discovery Period shall terminate unless a written request for the Discovery Period is provided to the Insurer within thirty (30) days after the effective date of cancellation or nonrenewal, together with full payment of the premium for the Discovery Period.

C.  Purchase of the Discovery Period shall not in any way increase the Limit of Liability.

D.  The additional premium paid for the Discovery Period shall be fully earned at its commencement.

## SECTION IV.  EXCLUSIONS

The Insurer shall not be liable to make any payment for Loss in connection with any Claim:

A.  Arising out of, based upon or attributable to the Directors or Officers or the Company gaining in fact any profit or advantage to which they were not legally entitled;

B.  Arising out of, based upon or attributable to the committing in fact of deliberate fraudulent, dishonest or criminal acts by the Directors or Officers, or by employees, agents or representatives of the Company;

C.  Which is insured in whole or in part by another valid policy or policies, including policies issued to an Outside Entity, regardless of whether or not any Loss arising from such Claim is collectible or recoverable under such other policy or policies; provided, however, this exclusion shall not apply to policies which are specifically excess of this Policy by reference hereto (including the Policy Number);

D.  Arising out of, based upon or in any way involving: (1) any Wrongful Act, or any fact, circumstance or situation which has been the subject of any notice given prior to the Policy Period under any insurance policy providing protection for the Directors or Officers or the Company, including any matter in any way related thereto; or (2) any other Wrongful Act which has as a common nexus any fact, circumstance, situation, event, or transaction with any fact, circumstance or situation which has been the subject of notice as described in clause (1) of this exclusion;

Form No. GIC-7418 (9/97)
page 5 of 8

E.  For actual or alleged: (1) bodily injury, sickness, disease, or death of any person, assault, battery, mental anguish, emotional distress, loss of consortium; (2) damage to or destruction of any tangible property, including loss of use thereof; or (3) invasion of privacy, wrongful entry, eviction, false arrest, false imprisonment, malicious prosecution, defamation or false light, libel or slander;

F.  For actual or alleged violations of the Employee Retirement Income Security Act of 1974, as amended, and regulations promulgated thereunder;

G.  For any actual or alleged act, omission, misstatement, misleading statement, neglect, error or breach of duty committed in the capacity as a director or officer of any entity other than the Company or an Outside Entity;

H.  Arising out of, based upon, or in any way involving, directly or indirectly:

   (1)  the actual, alleged or threatened discharge, disposal, migration, dispersal, release or escape of pollutants, or

   (2)  any direction, order or request to test for, monitor, remediate, clean up, remove, contain, treat, detoxify or neutralize pollutants, or to pay for or contribute to the costs of undertaking such actions including claims alleging damage to the Company or its shareholders.

   Pollutants include (but are not limited to) any solid, liquid, nuclear, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, organisms or other hazardous substances, and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

I.  Brought by, at the behest of, or with the assistance or active participation of, the Insured Entity or a Subsidiary (or any affiliated person), or any Director or Officer of the Insured Entity or a Subsidiary; however, this exclusion shall not apply to wrongful termination of employment actions, shareholder derivative actions which are not brought by, at the behest of, or with the assistance or active participation of a Director or Officer of the Insured Entity or a Subsidiary, crossclaims, or to other claims for contribution or indemnity which are part of or arise directly from a Claim;

J.  Arising out of, based upon, or in any way involving actual or alleged conduct in the capacity as a director, officer or employee of any Subsidiary, which actual or alleged conduct occurred prior to or after the time period when such subject entity was a Subsidiary of the Insured Entity;

K.  Which is indemnified by an Outside Entity.

NOTE:  THE ACTUAL OR ALLEGED CONDUCT OF ANY DIRECTOR, OFFICER OR THE COMPANY SHALL NOT BE IMPUTED TO ANY OTHER DIRECTOR OR OFFICER FOR THE PURPOSE OF DETERMINING THE APPLICABILITY OF THE ABOVE EXCLUSIONS.

---

## SECTION V.  LIMIT OF LIABILITY, RETENTIONS, ALLOCATION

A.  The Insurer shall be liable to pay one hundred percent (100%) of covered Loss in excess of the applicable Retention up to the Limit of Liability stated in Item 3 of the Declarations. The Limit of Liability is the Insurer's maximum aggregate limit of liability for all Loss under all of the Insuring Agreements combined, arising out of all Claims first made during the Policy Period and Discovery Period (if applicable), regardless of the time of payment by the Insurer.

B.  Defense Costs shall be part of and not in addition to the Limit of Liability, and such Defense Costs shall reduce the Limit of Liability and shall also be applied against the Retention.

Form No. CIC-7418 (9/97)
page 4 of 8

C. More than one Claim based upon or arising out of the same Wrongful Act(s), or facts, circumstances or situations, or one or more series of similar, repeated or continuous Wrongful Acts, shall be considered a single Claim, and only one Retention shall be applicable to such single Claim. Such single Claim shall be deemed to be first made on the date when the earliest Claim is first made, or on the date within the Policy Period in which notice of a potential Claim pursuant to Section VII.B. is given.

D. One Retention amount shall apply to the covered portion of each and every single Claim. In the event a single Claim is covered under more than one Insuring Agreement, the Retentions stated in Item 4 of the Declarations shall be applied separately to the portion of the Claim covered by each Insuring Agreement, and the sum of the Retentions so applied shall constitute the Retention for each single Claim, which in total shall not exceed the largest of the applicable Retentions. Notwithstanding other Policy provisions, for purposes of determining the applicable Retention(s), the Retentions applicable to Insuring Agreement Section I.B. shall apply to Claims made against Directors or Officers, and indemnification (including advancement of defense costs) by the Company will be presumed to be required or permissible, whenever indemnification is legally permissible under the broadest applicable laws, regardless of whether the Company has agreed in its by-laws or otherwise to provide such indemnification, unless indemnification cannot be provided due to financial insolvency.

E. Notwithstanding the foregoing provisions of Section V, the Retention(s) applicable to Securities Claims shall apply only to Defense Costs. Further, no Retention shall apply in the event of a Determination of No Liability in a Securities Claim, in which event the Insurer shall reimburse any Defense Costs paid by the Directors and Officers or the Company within the Retention amount. Such reimbursement shall be made within sixty (60) days of the Determination of No Liability, only if:

    (1) the subject Securities Claim, or another Claim which would be treated as a single Claim with the subject Securities Claim under Section V.C., is not brought or refiled within such sixty (60) day period;

    (2) the Determination of No Liability is not challenged by motion or appeal within such sixty (60) day period; and

    (3) only with respect to a dismissal of or stipulation to dismiss a Securities Claim without prejudice, the Company provides a written undertaking satisfactory to the Insurer which states that such reimbursement shall be returned to the Insurer if the subject Securities Claim, or another Securities Claim which would be treated as a single Claim with the subject Securities Claim under Section V.C., is brought or refiled after the sixty (60) day period.

F. The Company is not covered under Insuring Agreement Section I.A.; the Company is covered, subject to the Policy's terms and conditions, only with respect to indemnification of Directors or Officers under Insuring Agreement Section I.B. for Claims made against the Directors and Officers; but the Company is covered, subject to the Policy's terms and conditions, under Insuring Agreement Section I. C. for Securities Claims made against the Company. Accordingly, the Insurer has no obligation under this Policy for defense fees and costs incurred by, judgments against or settlements by the Company arising out of any Claims or other actions in which the Company is a party other than a covered Securities Claim, nor any obligation to pay any amount arising out of any legal liability that the Company has except with respect to covered Securities Claims against the Company.

G. If both Loss covered by this Policy and other loss are incurred, either because a Claim includes both covered and non-covered matters, or because a Claim is made against both covered and non-covered parties, then the Directors, Officers, the Company and the Insurer agree to use their best efforts to determine a fair and proper allocation of all such amounts. In making such determination, the parties shall take into account the relative legal and financial exposures, and the relative benefits obtained in connection with the defense and/or settlement, of and between the covered and non-covered parties and matters involved in the Claim. In the event the parties cannot agree to an appropriate allocation percentage for the Claim, then the Insurer shall be obligated to make an interim payment of the amount of Loss, including Defense Costs, which the parties agree is not in dispute until a final allocation is agreed upon or determined pursuant to the terms of this Policy.

Form No. GIC-7418 (9/97)
page 5 of 5

## SECTION VI.  DEFENSE COSTS AND SETTLEMENTS

A.  The Directors, Officers and the Company shall not admit liability for or settle any Claim, or incur Defense Costs in connection with any Claim, without the Insurer's prior written consent, which consent shall not be unreasonably withheld.  The Insurer shall be entitled to full information and all particulars it may request in order to reach a decision as to such consent.  Any Defense Costs incurred, and/or settlements or judgments agreed to prior to the Insurer's consent thereto shall not be covered by this Policy.

B.  The Insurer shall, upon request, advance Defense Costs prior to the final disposition of a Claim, subject to an allocation, if any, determined in accordance with Sections V.F. and V.G., and subject further to prior satisfaction of the applicable Retention.  Any agreement by the Insurer to advance Defense Costs shall be on the condition that the parties for whom the Defense Costs are advanced provide a written undertaking satisfactory to the Insurer which states that in the event it is finally established that the Insurer has no liability under the Policy to the Directors, Officers or the Company, or any of them separately, for such Claim, they agree to repay to the Insurer upon demand all Defense Costs advanced on their behalf.

C.  It shall be the duty of the Directors, Officers and the Company and not the duty of the Insurer to defend Claims, and the Directors, Officers and the Company shall obtain the consent of the Insurer as to the choice of defense counsel, which consent shall not be unreasonably withheld.  The Insurer shall at all times have the right, but not the duty, to associate in the investigation, defense or Settlement of any Claim that appears reasonably likely to involve the Insurer.

D.  The Directors, Officers and the Company shall give the Insurer such information, assistance and cooperation as the Insurer reasonably requests, including furnishing the Insurer with copies of reports, investigations, pleadings and any other information requested by the Insurer in connection therewith.

E.  The Insurer shall have the right but not the obligation to make any investigation it deems expedient with respect to a Claim and, with the consent of the Company or the person(s) against whom the Claim is made, make Settlement within the available Limit of Liability (whether above or below the applicable Retention).

## SECTION VII.  NOTICE OF CLAIMS AND POTENTIAL CLAIMS

A.  The Directors, Officers and/or the Company shall give the Insurer written notice as soon as practicable of any Claim first made during the Policy (or Discovery) Period, and in no event later than thirty (30) days after the expiration of the Policy (or Discovery) Period, and, for Claims deemed to be first made during the Policy Period under Section VII.B., within sixty (60) days from when such Claims are made.

B.  If, prior to the effective date of the expiration of the Policy Period, the Directors, Officers or the Company first become aware of circumstances which may subsequently give rise to a Claim, and the Directors, Officers or the Company as soon as practicable during the Policy Period give written notice to the Insurer of the circumstances and the reasons for anticipating a Claim, then any Claim subsequently made based upon such circumstances (of which the Insurer receives proper notice under Section VII.A.) shall be deemed for the purposes of this Policy to have been first made during the Policy Period; provided, however, as a condition precedent for any coverage to arise hereunder, such notice must be specific and contain full particulars as to the facts and circumstances potentially giving rise to the Claim, including a narrative setting forth dates, names of the potential plaintiffs and affected Directors or Officers, names of other parties involved, the nature and scope of the anticipated Claim, and all reasons why such a Claim is reasonably to be anticipated.

## SECTION VIII.  GENERAL CONDITIONS

A.  CANCELLATION OR NON-RENEWAL

(1)  By acceptance of this Policy, the Company and the Directors and Officers hereby confer the exclusive power and authority to cancel this Policy to the Insured Entity. The Insured Entity may cancel this Policy by surrender thereof to the Insurer, or by mailing to the Insurer written notice stating when thereafter such cancellation shall be effective.  The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the Policy Period.  Delivery of such written notice shall be equivalent to mailing.

(2)  This Policy may be canceled by the Insurer by mailing to the Insured Entity written notice stating when, not less than sixty (60) days thereafter, such cancellation shall be effective.  The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the Policy Period.  Delivery of such written notice by the Insurer shall be equivalent to mailing.

(3)  If this Policy is canceled by the Insured Entity, the Insurer shall retain the customary short rate portion of the premium.  If this Policy is canceled by or on behalf of the Insurer, the Insurer shall retain the pro-rata portion of the premium.  Payment or tender of any unearned premium by the Insurer shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

(4)  If the Insurer elects not to renew this Policy, the Insurer shall provide the Insured Entity with no less than sixty (60) days advance notice thereof, unless any of the events described in Section VIII.B. occur.

B.  SUBSEQUENT MAJOR EVENTS

If in the event of:

(1)  the acquisition by another entity or persons of the Insured Entity, a majority of its voting securities, or substantially all of its assets;
(2)  the merger or consolidation of the Insured Entity into or with another entity such that the Insured Entity is not the surviving entity; or
(3)  the appointment of a receiver, liquidator, conservator, trustee or similar official with respect to the Insured Entity;

then the Policy will remain in effect until the end of the Policy Period as stated in Item 2 of the Declarations, but only with respect to Wrongful Acts occurring prior to such acquisition, merger, consolidation or appointment. Further, the premium will be considered fully earned upon the occurrence of any of the above events in consideration of the coverage extended.

C.  REPRESENTATIONS

It is agreed that the information and statements contained in the Application for this Policy, a copy of which is attached hereto, and any materials submitted therewith (which are on file with the Insurer and shall be deemed to be attached to and part of the Application as if physically attached hereto), are the basis of this Policy and are to be considered as incorporated into and constituting a part of this Policy.

By acceptance of this Policy the Directors and Officers and the Company agree:

(1)  That the statements in the Application and in any materials submitted therewith are their representations, that they shall be deemed material to the acceptance of the risk or hazard assumed by the Insurer under this Policy, and that this Policy is issued in reliance upon the truth of such representations; and

Form No. GIC-7418 (9/97)
page 7 of 8

(2) That in the event that the Application, including materials submitted therewith, contains misrepresentations made with the actual intent to deceive, or contain misrepresentations which materially affect either the acceptance of the risk or the hazard assumed by the Insurer under this Policy, no coverage shall be afforded under this Policy (including under Insuring Agreement Section I.B.) for any Director or Officer who did not sign the Application but who knew on the inception date of this Policy the facts that were so misrepresented, and this Policy in its entirety shall be void and of no effect whatsoever if such misrepresentations were known to be untrue on the inception date of the Policy by one or more of the individuals who signed the Application.

D.  ACTION AGAINST THE INSURER

(1) No action shall be taken against the Insurer unless, as a condition precedent thereto, there shall have been full compliance with all terms of this Policy, and until the Directors', Officers' or the Company's obligation to pay shall have been finally determined, either by an adjudication or by written agreement of the Directors, Officers, and/or the Company, and the Insurer.

(2) No persons or entities shall have any right under this Policy to join the Insurer as a party to any Claim, nor shall the Insurer be impleaded by the Directors, Officers, or the Company or their legal representatives in any Claim.

E.  SUBROGATION

In the event of any payment under this Policy, the Insurer shall be subrogated to any of the Directors', Officers' and the Company's rights to recovery thereof. The Directors or Officers and the Company shall execute all papers required and shall do everything that may be necessary to secure or transfer such rights, including the execution of such documents as may be necessary to enable the Insurer to effectively bring suit in the name of any Director, Officer or the Company. The Insurer shall not exercise these rights of subrogation against a Director or Officer with respect to Loss excluded by Section IV.B., however, unless such individual has been judicially determined to have committed deliberate fraudulent, dishonest or criminal acts.

F.  ASSIGNMENT

Assignment of interest under this Policy shall not bind the Insurer unless its consent is endorsed hereon.

G.  CONFORMITY TO STATUTE

Any terms of this Policy which are in conflict with the terms of any applicable laws construing this Policy, including any endorsement to this Policy which is required by any state Department of Insurance (or equivalent authority) ("State Amendatory Endorsement"), are hereby amended to conform to such laws. Nothing herein shall be construed to restrict the terms of any State Amendatory Endorsement. In addition, to the extent permissible by law, nothing in any State Amendatory Endorsement shall be construed to restrict the terms of this Policy.

H.  ENTIRE AGREEMENT

By acceptance of this Policy, the Directors, Officers and the Company and the Insurer agree that this Policy (including the Application and any materials submitted therewith) and any written endorsements attached hereto constitute the entire agreement between the parties.

I.  CHANGES

Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Insurer shall not effect a waiver or a change in any part of this Policy or stop the Insurer from asserting any right under the terms of this Policy. This Policy cannot be waived or changed, except by written endorsement issued to form a part of this Policy.

Form No. CIC-7418 (9/97)
page 8 of 8

**GENESIS**  GENESIS INSURANCE COMPANY

ADDITION TO SECTION VIII
GENERAL CONDITIONS

Policy Number: YXB001625A

It is understood and agreed that Section VIII. of the Policy is hereby amended by the addition of the following paragraph J to said Section:

J.  EMPLOYMENT PRACTICES EXTENSION

It is hereby understood and agreed that coverage as is afforded by this Policy is extended to Employment Practices Claims against an INSURED (whether such claims are brought by a past, present or prospective employee or employees, whether directly or by class action, or by the Equal Employment Opportunity Commission [EEOC] or any other state or federal governmental authority regulating employment practices, or by any other person or entity) subject to a $5,000,000 sublimit of liability for all Employment Practices Claims made in the aggregate during the Policy Period. the terms, conditions and exclusions of this endorsement and to the other terms, conditions and exclusions of the Policy.

It is further understood and agreed that for the purposes of this endorsement only, the following definitions shall apply:

(1)   "Employment Practices Claim" shall mean any Claim relating to a past, present or prospective employee of the Company for or arising out of any actual or alleged wrongful dismissal, discharge or termination, either actual or constructive, of employment, employment-related misrepresentation, wrongful failure to employ or promote, wrongful deprivation of career opportunity, wrongful discipline; failure to grant tenure or negligent employee evaluation, or sexual or workplace harassment of any kind (including the alleged creation of a harassing workplace environment); or unlawful discrimination, whether direct, indirect, intentional or unintentional, or failure to provide adequate employee policies and procedures.

Employment Practices Claims shall include claims brought under state, local or federal law (whether common or statutory) and shall include but not be limited to allegations of violations of the following federal laws (as amended) including regulations promulgated thereunder:

(a)  Americans with Disabilities Act of 1992 (ADA),

(b)  Civil Rights Act of 1991,

(c)  Age Discrimination in Employment Act of 1967 (ADEA), including the Older Workers Benefit Protection Act of 1990,

(d)  Title VII of the Civil Rights Law of 1964, as amended (1983), including the Pregnancy Discrimination Act of 1978,

(e)  Civil Rights Act of 1866, Section 1981, and

(f)  Fifth and Fourteenth Amendments of the U.S. Constitution.

(2)   "INSURED" shall include for the purposes of Employment Practices Claims only, any Director, Officer or employee of the Company whether such individual is in a supervisory, co-worker or subordinate position or otherwise. Coverage shall automatically apply to all new Directors, Officers or employees after the inception date of Policy.

It is further understood and agreed that additional coverage is hereby granted for Employment Practices Claims only by amending Exclusions IV. E. and IV. I. of the Policy as follows:

(E)    for bodily injury, sickness, disease or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof;

(I)    which are brought by any Director or Officer or the Company; or which are brought by any security holder of the Company, whether directly or derivatively, unless such Claim (s) is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any Director or Officer or the Company, provided, however, this exclusion shall not apply to Employment Practices Claims;

Exclusions IV. E. and IV. I. of the Policy remain in effect for Claims other than Employment Practices Claims.

It is further understood and agreed that Item 4. of the Declarations Page is amended for Employment Practices Claims only as follows:

ITEM 4.    Retentions Applicable to Insuring Agreements

$     0    Each INSURED for each Employment Practices Claim, but in no event exceeding

$     0    Each Employment Practices Claim for all INSUREDS under Insuring Agreement Section I.A.; and

$ 150,000    Each Employment Practices Claim under Company Reimbursement Insuring Agreement Section I. B.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy other than as above stated.

Date:  January 8, 1998                    By:    *Michael Zartman*
                                                   _____
                                                   Company Officer or Authorized Agent

Form No. GIC-7425.EP (06/93)

# GENESIS   GENESIS INSURANCE COMPANY

### ADDITION TO SECTION VIII
### GENERAL CONDITIONS

Policy Number: YXB001625A

It is understood and agreed that the Policy is amended as follows:

**CHANGES TO SECTION II:**

Section II is hereby amended as follows:

A.   "Claim" shall mean the following proceedings initiated against a Director or Officer for money damages or other relief, whether brought within or outside of the United States:

  (1)  any civil, arbitration or administrative proceeding commenced by: (a) service of a complaint or similar pleading, or (b) receipt of a notice of charges;
  (2)  any criminal proceeding commenced by the return of an indictment or an information;
  (3)  any administrative or regulatory investigation commenced by a formal order of investigation;
  (4)  any appeal from the above proceedings; or
  (5)  other written or verbal demand for money or services.

  "Claim" shall also mean any of the above-listed proceedings initiated against a Director, Officer or the Company which is a Securities Claim.

B.   "Company" shall mean the Insured Entity and its Subsidiaries under Insuring Agreements Sections I.A. and Under Insuring Agreement Section I.C., "Company" shall mean the Insured Entity only. "Company" shall also include the Insured Entity as a debtor-in-possession in the event of bankruptcy.

K.   "Subsidiary" shall mean:

  (1)  any entity in which the Insured Entity owns or at any time owned fifty percent (50%) or more of the issued and outstanding voting securities, directly or indirectly, subject to clauses (2) and (3) below for acquisitions made by the Company during the Policy Period;
  (2)  any entity in which the Insured Entity acquires 50% or more of the issued and outstanding voting securities or substantially all of the assets, directly or indirectly, during the Policy Period, if such entity's total assets represent less than 25% of the Company's total assets prior to the acquisition; and
  (3)  for forty-five (45) days immediately following the acquisition date, any entity in which the Insured Entity acquires 50% or more of the issued and outstanding voting securities or substantially all of the assets, directly or indirectly, during the Policy Period, if such entity's total assets represent more than 25% of the Company's total assets prior to the acquisition; provided, however, such entity will not be considered a Subsidiary or included within the definition of Company beyond such automatic forty-five (45) day period unless the Insurer specifically agrees in writing to provide such coverage, subject to such additional information, coverage terms and premium as the Insurer may require.

  The term "Subsidiary" shall also include any subsidiary of a Subsidiary.

**CHANGES TO SECTION VII:**

Section VII is hereby amended as follows:

A.   The Directors, Officers and/or the Company shall give the Insurer written notice as soon as practicable of any Claim first made during the Policy (or Discovery) Period, and in no event later than sixty (60) days after the expiration of the Policy (or Discovery) Period, and, for Claims deemed to be first made during the Policy Period under Section VII.B., within sixty (60) days from when such Claims are made.

**CHANGES TO SECTION VIII:**

Section VIII is hereby amended as follows:

A.(2)  This Policy shall not be canceled by the Insurer except for nonpayment of the premium.

A.(4)  If the Insurer elects not to renew this Policy, the Insurer shall provide the Insured Entity with no less than sixty (60) days advance notice thereof, unless any of the events described in Section VIII.B. occur.

B.   SUBSEQUENT MAJOR EVENTS

If in the event of:

(1)  the acquisition by another entity or persons of the Insured Entity, a majority of its voting securities, or substantially all of its assets; or

(2)  the merger or consolidation of the Insured Entity into or with another entity such that the Insured Entity is not the surviving entity;

then the Policy will remain in effect until the end of the Policy Period as stated in Item 2 of the Declarations, but only with respect to Wrongful Acts occurring prior to such acquisition, merger, consolidation or appointment. Further, the premium will be considered fully earned upon the occurrence of any of the above events in consideration of the coverage extended. The Company will have the right, upon the events described in (1) and (2) above to purchase a six (6) year "run-off" policy to replace this Policy, under the same terms and conditions, for no more than 1.1 times the annual premium, less any unearned premium remaining under this Policy if it is canceled and so replaced.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy other than as above stated.

Date: _January 8, 1999_                    By: _Michael Zartman_

                                              Company Officer or Authorized Agent

Form No. GIC-7425  (08/93)



**GENESIS**  GENESIS INSURANCE COMPANY

REINSTATEMENT OF EXCESS LIMIT ENDORSEMENT

Policy Number: YXB001625A

It is understood and agreed that Section V. of the Policy is hereby amended by the addition of the following-
paragraph (H):

H.    In the event a Claim is first made after during the Policy Period and reported to the Insurer pursuant to
      Section VII. A. of the Policy, then, upon the Company's written request to the Insurer, and upon payment of
      an additional premium of one hundred percent (120%) of the then unearned Premium, the Limit of Liability as
      stated in Item 3 of the Declarations shall be amended to consist of both a First Limit and a Reinstated
      Excess Limit as follows:

   (1)   The Limit of Liability shall include a "Reinstated Excess Limit" equal to the Limit of Liability as stated in
         Item 3 of the Declarations for all Loss in the aggregate arising out of Claims first made during the part of
         the Policy Period beginning at 12:01 a.m. on the Effective Date of the Reinstated Excess Limit and
         ending on the expiration of the Policy Period or the Discovery Period (if applicable). The Reinstated
         Excess Limit shall be separate from and in addition to the First Limit.

   (2)   The Limit of Liability shall also include a "First Limit" equal to the Limit of Liability as stated in Item 3 of
         the Declarations for all Loss in the aggregate arising out of Claims first made and reported during the
         Policy Period.

   (3)

      (a)   The Reinstated Excess Limit shall not apply to Claims made after the Effective Date of the
            Reinstated Excess Limit which are considered a single Claim (under Section V.C. above) with any
            Claim first made prior to the Effective Date of the Reinstated Limit, regardless of when or whether
            the prior Claim is reported to the Insurer.

      (b)   The Reinstated Excess Limit shall not apply to Claims based upon or arising out of any Wrongful
            Acts if any Directors or Officers knew or could have reasonably foreseen, prior to or on the
            Effective Date of the Reinstated Limit, that such Wrongful Acts might give rise to a Claim.

      (c)   The Reinstated Excess Limit shall be excess of (and not available until after full exhaustion of) the
            First Limit and all limits of liability provided by other insurance policies which are specifically excess
            of this Policy by reference hereto (including reference to the Policy Number).

   (4)   The "Effective Date of the Reinstated Excess Limit" is the date upon which the Insurer is in receipt of
         both the written request and additional premium as set forth herein.

   (5)   Under no circumstances may the covered Loss for any single Claim (under Section V.C.) exceed
         $25,000,000, whether applied from the First Limit or the Reinstated Excess Limit, or a combination
         thereof.

(6) There may be one and only one Reinstated Excess Limit, and one and only one Effective Date of the Reinstated Excess Limit, under this Policy.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy other than as above stated.

Date: January 8, 1996

By: *Michael Zartman*

Company Officer or Authorized Agent

Form No. GIC-7425.RE (08/93)

# GENESIS   GENESIS INSURANCE COMPANY

### DIRECTORS AND OFFICERS LIABILITY INSURANCE
### COLORADO DISCLOSURE FORM CLAIMS MADE POLICY

Policy Number: YXB001625A

## IMPORTANT NOTICE TO POLICYHOLDERS

THIS DISCLOSURE FORM IS NOT YOUR POLICY. IT MERELY DESCRIBES SOME OF THE MAJOR FEATURES OF OUR CLAIMS MADE POLICY FORM. READ YOUR POLICY CAREFULLY TO DETERMINE RIGHTS, DUTIES, AND WHAT IS AND IS NOT COVERED. ONLY THE PROVISIONS OF YOUR POLICY DETERMINE THE SCOPE OF YOUR INSURANCE PROTECTION.

Your Policy is a claims made policy. It applies only to **Claims** made against you after the inception date and before the end of the **Policy Period** involving injury or damage that occurs after the Policy's Past Acts Date. Upon termination of your Policy, a **Discovery Period** may be available.

## OCCURRENCE VS. CLAIMS-MADE

There is no difference in the kinds of injury and damage covered by either an "occurrence" policy or a "claims made" policy. Claims for damages may be assigned to different policy periods, however, depending on which policy you have purchased.

In an "occurrence" policy, coverage is provided for liability because of bodily injury and property damage that occurs during the policy period, no matter when the claim is made.

In your "claims made" policy, coverage is provided for a **Wrongful Act** if the **Claim** is first made during the **Policy Period**. The **Claim** must be a demand for damages by an injured party but it does not have to be in writing. Under most circumstances, a **Claim** is considered made when it is received and recorded by you or by us; but sometimes, a **Claim** may be deemed made at an earlier time. This can happen when another **Claim** for the same injury or damage has already been made, or when the **Claim** is received and recorded during the **Discovery Period**.

## PRINCIPAL BENEFITS

This Policy provides coverage for **Loss** resulting from **Claims** first made during the **Policy Period** against **Officers** and **Directors** for a **Wrongful Act** up to the maximum dollar limit specified in the Policy.

The principal benefits and coverage are explained in detail in your claims made policy. Please read it carefully.

## EXCEPTION, REDUCTION AND LIMITATIONS

Your claims made policy contains certain exceptions, reductions and limitations. Please read it carefully.

## RENEWALS, TAILS AND DISCOVERY PERIODS

Your claims made policy has some unique features relating to renewal, **Discovery Period**, and coverage of occurrences with long periods of exposure. These special claims made provisions are described below:

## Special "Claims Made" Provisions

Two concepts relating to continuity of coverage under the "claims made" policy are especially important to understand. These involve the "Past Acts Date" and the "Discovery Period."

### Retroactive Date

When you have a "Past Acts Date", there is no coverage for a Wrongful Act that occurred before that Past Acts Date, even if the Claim is first made during the Policy Period.

If there is no Past Acts Date, the Policy will respond only to Claims first made during the Policy Period for covered damage, no matter when the damage occurred. But if previous "occurrence" type insurance also applies to the injury or damage, your "claims made" policy will be excess; that is, it will apply only after that previous insurance is used up.

If there is a Past Acts Date, it cannot be moved ahead in time, except under certain circumstances, e.g., you changed insurers; there is substantial change in your operations that increases your exposure to loss; you failed to provide us with information you knew about the nature of your business or premise, and then only with your written consent. It is important to understand how the "claims made" policy's Discovery Period guarantees continuity of coverage if you are offered a renewal or replacement policy with a later Past Acts Date than the one in your current Policy.

### DISCOVERY PERIOD or "Tails"

**WARNING**

If a Claim is made after the termination of your claims made policy, you may not have coverage for that Claim unless you purchase a Discovery Period or "tail" endorsement, which must be offered to you for at least one year, at a premium not to exceed 200% of your terminated policy premium.

Carefully review the policy provisions regarding the available Discovery Period, especially the length of coverage and price, and the time during which you must purchase or accept any offered Discovery Period.

Date: _January 5, 1993_                    By: _Michael Zartman_

                                            Company Officer or Authorized Agent

FORM NO. GIC-7473 (08/93) CO

 GENESIS INSURANCE COMPANY

DIRECTORS AND OFFICERS LIABILITY INSURANCE
COLORADO FRAUD STATEMENT

IMPORTANT NOTICE TO APPLICANTS

Policy Number: YXB001625A

THE STATE OF COLORADO REQUIRES THAT THIS STATEMENT BE ATTACHED TO EVERY DIRECTORS
AND OFFICERS LIABILITY INSURANCE POLICY APPLICATION. PLEASE READ THE STATEMENT
CAREFULLY.

IT IS UNLAWFUL TO KNOWINGLY PROVIDE FALSE, INCOMPLETE,
OR MISLEADING FACTS OR INFORMATION TO AN INSURANCE
COMPANY FOR THE PURPOSE OR DEFRAUDING OR ATTEMPTING
TO DEFRAUD THE COMPANY. PENALTIES MAY INCLUDE
IMPRISONMENT, FINES, DENIAL OR INSURANCE, AND CIVIL
DAMAGES. ANY INSURANCE COMPANY OR AGENT OF AN
INSURANCE COMPANY WHO KNOWINGLY PROVIDES FALSE
INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO A
POLICY HOLDER OR CLAIMANT FOR THE PURPOSE OF
DEFRAUDING OR ATTEMPTING TO DEFRAUD THE POLICY
HOLDER OR CLAIMANT WITH REGARD TO A SETTLEMENT OR
AWARD PAYABLE FROM INSURANCE PROCEEDS SHALL BE
REPORTED TO THE COLORADO DIVISION OF INSURANCE WITHIN
THE DEPARTMENT OF REGULATORY AGENCIES.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions,
agreements or limitations of any policy issued by the Insurer.

Date: January 8, 1998          By: _Michael Zartman_

Company Officer or Authorized Agent

FORM NO. GIC-7474.CO (06/96)

**GENESIS**  GENESIS INSURANCE COMPANY

DIRECTORS AND OFFICERS LIABILITY INSURANCE
COLORADO AMENDATORY ENDORSEMENT

Policy Number: YXB001625A

Section III. is hereby amended as follows:

SECTION III. DISCOVERY PERIOD

E.    [additional provision]
In the event of renewal on terms and conditions different from those in effect during the Policy Period, the Company shall have the right, upon payment of an additional premium to be determined by the Insurer, to an extension of the original terms and conditions with respect to any Claim first made during the period of one year after the effective date of renewal, but only with respect to any Wrongful Act committed prior to the effective date of the renewal. This right of extension shall terminate unless written notice of such election is received by the Insurer within thirty (30) days after the effective date of renewal.

B.    [replacement]
The right to purchase the Discovery Period shall terminate unless a written request for the Discovery Period is given to the Insurer within sixty (60) days after the effective date of cancellation, or, in the event of a refusal to renew, within sixty (60) days after the Policy Period ends, together with payment of the appropriate premium for the Discovery Period. In the event that such written request and premium paid is not so given to the Insurer, there shall be no right to purchase the Discovery Period at any later date.

All other provisions of the Policy remain unchanged.

Date: January 8, 1999                              By: _Michael Zartman_

_____
Company Officer or Authorized Agent

FORM NO. GIC-7480 (09/97)  CO



**GENESIS** GENESIS INSURANCE COMPANY

DIRECTORS AND OFFICERS LIABILITY INSURANCE
COLORADO AMENDATORY ENDORSEMENT

Policy Number: YXB001625A

Section VIII. is hereby amended as follows:

X.     [additional provision]
       LOSS INFORMATION

The Insurer must furnish to the Insured Entity, upon its request and within thirty (30) days thereafter, sufficient information about closed or paid Claims, Claims for which the Insurer has established reserves, and claims for which the Insurer has received notices of occurrences which could give rise to Claims, to allow the Insured Entity to determine how much of its aggregate coverage remains available under the Policy.

All other provisions of the Policy remain unchanged.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above-mentioned policy other than as above stated.

Date: January 8, 1999                    By: _Michael Zartman_
                                         _____
                                         Company Officer or Authorized Agent

FORM No. GIC-7461 (9/97) CO

# GENESIS  GENESIS INSURANCE COMPANY

### OUTSIDE DIRECTORSHIP COVERAGE
### (WITH EQUITY INTEREST)

Policy Number: YXB001625A

It is hereby understood and agreed that the insurance provided by this Policy is extended to include coverage for the Directors and Officers of the Company as Directors or Officers of _____ (hereinafter called "Other Entity"), as part of their regularly assigned duties with the Company subject to the Policy terms and conditions, provided that coverage shall not apply to any Loss in connection with any Claim made against such Directors or Officers, unless the Directors or Officers are entitled to indemnification by the Company pursuant to applicable laws and regulations.  It is further understood and agreed that:

1.    Coverage provided by this Endorsement is available only to the extent that the serving Directors or Officers are not indemnified by the Other Entity; and

2.    This extension of coverage is to be excess of any other insurance, including but not limited to, Directors and Officers Liability Insurance and/or Directors and Officers Reimbursement Insurance provided for, to, or by the Other Entity.

Nothing herein contained shall be held to vary, alter, waive, or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy other than as above stated.

Date:   January 8, 1999                      By:   *Michael Zartman*
                                                    _____
                                                    Company Officer or Authorized Agent

Form No. GIC-7-466 (08/93)

In Witness Whereof, we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by our authorized representative.

Secretary

President

GIC-12-3J

# EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| ARLIN M. ADAMS, Chapter 11 Trustee of the Post-Confirmation Bankruptcy Estates of CORAM HEALTHCARE CORPORATION, a Delaware Corporation, and of CORAM, INC., a Delaware Corporation, | : : : : : : | Case No. _____ 0 4 - 1 5 6 5 |
|  Plaintiff, | : |  |
| v. | : : |  |
| DANIEL D. CROWLEY; DONALD J. AMARAL; WILLIAM J. CASEY; L. PETER SMITH; AND SANDRA L. SMOLEY, | : : : : | JURY TRIAL DEMANDED |
|  Defendants. | : : |  |

FILED U.S. DISTRICT COURT DISTRICT OF DELAWARE 2004 DEC 29 PM 4: 25

## COMPLAINT

Plaintiff, Arlin M. Adams, as Chapter 11 Trustee of the Post-Confirmation Bankruptcy Estates of Coram Healthcare Corporation and its wholly owned subsidiary Coram, Inc. (collectively "Coram"), brings this action for breaches of fiduciary duty against Daniel D. Crowley, the former Chairman and CEO of Coram and a member of its Board of Directors ("Crowley"), and former Board members Donald J. Amaral, William J. Casey, L. Peter Smith, and Sandra L. Smoley arising out of Crowley's conflict of interest and breach of his duty of loyalty. Before he entered into a November 30, 1999 employment agreement with Coram, Crowley had already entered into an Employment Agreement with Cerberus Partners L.L.P. ("Cerberus"), one of Coram's three major lenders, under which Cerberus paid Crowley $80,000 per month. The head of Cerberus, Stephen Feinberg, sat on Coram's Board. Crowley did not

disclose to Coram's Board the existence of his Employment Agreement with Cerberus or its terms. Although the Board was aware that Crowley had some "relationship" with Cerberus, the other Board members failed to exercise any business judgment or otherwise make any good faith attempt to fulfill their fiduciary duties to Coram and its stockholders in connection with Crowley's employment. They made no inquiries and approved Crowley's employment agreement with Coram without investigating or learning that Crowley was receiving $80,000 each month from Cerberus. The Board's inaction continued even after the existence of the conflict was brought to their attention.

When these facts were brought to light in connection with Coram's bankruptcy proceeding, the Bankruptcy Court on December 21, 2000, refused to confirm Coram's proposed plan of reorganization, finding that it was not submitted in good faith because Crowley had an actual conflict of interest that tainted Coram's operations and proposed restructuring. Despite this clear finding, Crowley continued for the next year to accept $80,000 per month from Cerberus, and the Board took no remedial action whatsoever and did not inquire whether Crowley continued to receive these payments. To the contrary, the Board attempted to ratify and bless their own breaches of fiduciary duty by retaining an independent advisor whose assignment, in the words of defendant Amaral, was "to sprinkle holy water" on the situation. On December 21, 2001, the Bankruptcy Court rejected this cynical and bad faith ploy and refused to confirm Coram's second proposed plan of reorganization. The Court found that "nothing had changed," and that the breaches by Crowley and these directors caused damages to Coram. Crowley's failure to disclose his conflict of interest and his continued acceptance of payment from Cerberus and from Coram were breaches of his duties of care, good faith and loyalty to Coram and its shareholders. By approving Crowley's retention without even basic inquiry into

Crowley's relationship with Cerberus and then seeking to allow Crowley to continue to receive $80,000/month from Cerberus, the other members of the Board consciously and intentionally abdicated all responsibility to consider appropriately Crowley's employment arrangements and failed to act in good faith and meet even minimal standards of attention. These serious and persistent breaches of fiduciary duty caused harm to Coram and its shareholders. The Trustee brings this action to recover those damages for the benefit of Coram's former shareholders and unsecured creditors.

## PARTIES

1.      On March 7, 2002, the United States Bankruptcy Court for the District of Delaware entered an order appointing plaintiff Chapter 11 Trustee of Coram and Coram, Inc. At the time, Coram was a publicly-traded company. On October 27, 2004, the Bankruptcy Court signed an order, deemed entered as of November 1, 2004, confirming the Trustee's Plan of Reorganization. All appeals from the confirmation order have been withdrawn, and the Trustee's plan has been implemented. Coram is now a private company owned by its former lenders.

2.      Coram is a Delaware corporation with its principal place of business in Colorado. Coram is a leading provider of alternative-site infusion therapy in the United States. Infusion therapy involves the intravenous administration of drug therapies for nutrition, anti-infection, HIV, blood factor, pain management, chemotherapy and other purposes.

3.      Defendant Daniel D. Crowley ("Crowley") is a citizen of California. He was Chairman and Chief Executive Officer of Coram from November 1999 until March 2003.

3

4.     Defendant Donald J. Amaral ("Amaral") is not a citizen of Pennsylvania, Delaware, or Colorado and is, on information and belief, a citizen of Nevada. He joined Coram's Board in 1995 and served as Chairman from September 1997 through November 30, 1999. From October 1995 through April 23, 1999, and from October 22, 1999 through November 30, 1999, he also served as Coram's Chief Executive Officer.

5.     Defendant William J. Casey ("Casey") is not a citizen of Pennsylvania, Delaware, or Colorado and is, on information and belief, a citizen of California. He joined Coram's Board in 1997.

6.     Defendant L. Peter Smith ("Smith") is not a citizen of Pennsylvania, Delaware, or Colorado and is, on information and belief, a citizen of Illinois. He joined Coram's Board in 1994.

7.     Defendant Sandra L. Smoley ("Smoley") is not a citizen of Pennsylvania, Delaware, or Colorado and is, on information and belief, a citizen of California. She joined Coram's Board on February 10, 2000.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332, as the action is between citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs.

9.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1409.

4

## FACTUAL ALLEGATIONS

10.      From approximately 1997 on, Cerberus, together with Goldman Sachs

Credit Partners L.P. ("Goldman Sachs") and Wells Fargo Foothill ("Foothill"), owned all of

Coram's debt and are collectively referred to as "the Noteholders." Cerberus owned

approximately 38%. Cerberus is a substantial investor in the debt of numerous distressed

companies.

11.      On May 6, 1998, Coram and the Noteholders entered into a Securities

Exchange Agreement negotiated between then-CEO Amaral for Coram and Stephen Feinberg

("Feinberg"), head of Cerberus, for the Noteholders. The Securities Exchange Agreement

allowed the Noteholders a seat on Coram's Board. The Noteholders designated Feinberg as their

representative on the Board.

12.      In April 1999, Amaral resigned as Coram's CEO for unanticipated

personal reasons. He was replaced as CEO by his second-in-command, Richard M. Smith.

Amaral remained Chairman of the Board.

13.      In early 1999, Cerberus retained Crowley as a consultant to advise

Cerberus in connection with its investments, especially in the health care field. Cerberus agreed

to pay Crowley $10,000 per day plus expenses on a project by project basis. In July 1999,

Crowley and Cerberus entered into an oral agreement pursuant to which Crowley agreed to work

exclusively for Cerberus for three years at a salary of $80,000 per month plus expenses and the

possibility of substantial bonuses if Cerberus' investments on which Crowley had consulted were

profitable.

5

14.    In August 1999, after Crowley and Cerberus had made their oral agreement, Feinberg recommended to the Board that Coram hire Crowley as a "consultant" or "CEO coach" to work with the newly-elevated CEO, Richard Smith.

15.    Feinberg disclosed to the Board that Crowley had a relationship with Cerberus, but provided no information about that relationship. Notwithstanding their knowledge that "a relationship" existed between Crowley and Cerberus, none of Coram's directors asked any questions or requested any materials about that relationship. They approved the retention of Crowley as a consultant to CEO Richard Smith without knowing Crowley's obligations to Cerberus, the nature of his work for Cerberus, and the terms of his compensation from Cerberus. The directors agreed to pay Crowley $40,000 per month for his consulting services.

16.    In October 1999, Richard Smith claimed that Coram had constructively terminated him as CEO. In late October 1999, the Board determined to treat his departure as a resignation but also agreed that he was entitled to benefits under his employment agreement.

17.    On October 29, 1999, Crowley wrote to Amaral asking that Amaral consider hiring him in connection with Coram's ongoing "restructuring process." A copy of the October 29, 1999 letter is attached as Exhibit "A."

18.    The Noteholders offered Coram a six-month interest accrual holiday if Crowley were hired as CEO, which amounted to a cash savings to Coram of approximately $11 million. Crowley and Amaral began negotiations no later than early November 1999.

19.     On November 12, 1999, while he was negotiating with Amaral to be Coram's CEO, Crowley sent a "Personal & Confidential" letter to Feinberg requesting additional compensation from Cerberus to induce him to become CEO of Coram. At the time, Crowley was Chairman of Winterland, also a Cerberus investment. Crowley's letter, a copy of which is attached as Exhibit "B," seeks additional compensation from Cerberus for his work at Coram in the form of an increased share of the profits at Winterland.

20.     On November 15, 1999, Amaral and the Noteholders agreed on the terms of the interest forbearance agreement.

21.     On November 17, 1999, the Board approved a three-year employment agreement with Crowley, which he signed the next day. The agreement is dated as of November 30, 1999. It provides for a base annual salary of $650,000, potential bonuses of between $390,000 and $1,950,000 depending on Coram's EBIDTA, a minimum 24-month severance period, options to purchase one million shares of Coram stock at then market rates, and an acquisition bonus upon a change of control. Amaral signed the agreement for Coram. A copy of Crowley's employment agreement with Coram is attached as Exhibit "C."

22.     On November 19, 1999, Crowley executed an executive Employment Agreement with Cerberus effective as of August 1, 1999, a copy of which is attached as Exhibit "D." The Agreement does not state that Crowley had the previous day signed an employment agreement to be Coram's Chairman and CEO, although it does mention Coram. The Crowley/Cerberus Employment Agreement provides that Crowley would devote "his entire business time, attention, skill and energy exclusively to the business of the Employer [Cerberus]" by performing duties to be assigned by Feinberg. Cerberus agreed to pay Crowley a base salary

of $960,000 and the potential for bonuses. The Employment Agreement also provided that Cerberus could terminate Crowley for cause if Crowley did not follow Cerberus' reasonable instructions.

23.     As was the case with the oral agreement between Crowley and Cerberus, neither Crowley nor Feinberg disclosed the existence or the terms of their written agreement to the Board of Coram, and no member of the Board of Coram made any inquiry about the terms of the Crowley/Cerberus relationship.

24.     Coram's corporate policy provided that actual conflicts of interest must be avoided and that any action creating a potential conflict of interest must be disclosed and approved in advance. Crowley did not seek approval for his Employment Agreement with Cerberus.

25.     Crowley signed the management letter to Coram's outside auditors for the year ending December 31, 1999, and stated: "There are no instances where any officer or employee of [Coram] has an interest in a company, with which [Coram] does business that would be considered a 'conflict of interest,' that has not been disclosed or waived. Such an interest would be contrary to [Coram] policy." A copy of the management letter is attached as Exhibit "E." At the time he signed the management letter, Crowley was party to an undisclosed Employment Agreement with one of Coram's three lenders.

26.     Coram retained Crowley's wholly-owned consulting company, Dynamic Health Care Solutions, L.L.C., to act as a "consultant" to Coram. Coram paid fees to Dynamic in excess of $1 million.

27.    On February 28, 2000, Crowley wrote to the Board asking for additional compensation. The letter, a copy of which is attached as Exhibit "F," states:

> It is also clear to me, that the assignment and the terms I accepted in November 1999 did *not* reflect the activity required to "stabilize" Coram and get it on solid footing. This is more than just a nineteen (19) hour a day "workout". Clearly, Coram will take longer, involve more, and will need me to stay "on task" for much longer than we envisioned when I said, "Yes". The risks for me as a professional are also substantially different that those involved with just fixing the day to day problems of Coram. Had the Board engaged a firm like J.Alix the charge to do the same work at Coram would have been multiples of what I am being compensated.

Crowley did not disclose that while he was working what he claims were more than 19-hour days for Coram, Cerberus was paying him $80,000 a month.

28.    In response to Crowley's demand for additional compensation, Feinberg and Crowley negotiated an amendment to Crowley's November 30, 1999 Employment Agreement, which was executed as of April 6, 2000, and signed by directors Feinberg and L. Peter Smith. Even though the other members of the Board had been informed that Crowley had a "relationship" with Cerberus, they allowed Feinberg to conduct the negotiations with Crowley, made no inquiry concerning that relationship, nor made any independent review of Feinberg's negotiations with Crowley. Nor did the Board retain a compensation consultant or other independent expert to review and opine regarding the fairness of Crowley's compensation under the Employment Agreement. A copy of the Second Amendment to Employment Agreement is attached as Exhibit "G."

9

29.    The Second Amendment provided a new bonus structure that was far greater than the maximum $1.9 million bonus that Crowley received under the employment agreement with Coram he had signed just four months earlier.  Under the new arrangement, Crowley could claim a bonus of up to 25% of the amount by which EBIDTA for 2000 exceeded $14 million, and an additional $5 million bonus if 2000 EBIDTA exceeded $35 million.

30.    At the time Crowley and Feinberg negotiated the amendment to Crowley's Employment Agreement with Coram, Crowley anticipated that Coram would be restructured by filing a bankruptcy petition under Chapter 11 with a proposed plan of reorganization that would eliminate the public shareholders without any payment to them.

31.    Between November 30, 1999, when Crowley became CEO, and July 31, 2000, Crowley caused Coram to pay the Noteholders approximately $60 million.

32.    Feinberg resigned from the Board of Coram in July 2000.

33.    On August 8, 2000, Coram filed its Chapter 11 petition together with its first Plan of Reorganization.  The proposed Plan provided for the cancellation of all shareholders' interests and for issuing new Coram stock to the Noteholders.  The Plan was supported by Coram's three-member Creditors' Committee, which consisted of two Noteholders and one trade creditor.  The Noteholders' claims of about $250 million far exceeded Coram's trade debt of approximately $7 million.

34.    In connection with the bankruptcy proceedings, Coram filed a Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code, which stated that Crowley was

serving as a consultant to Cerberus, that he generally receives a fee from Cerberus for such services, but that he "receives no fee from Cerberus for any services he provides respecting the Debtors." Despite this latest notice of a relationship between Crowley and Cerberus, the outside directors still asked no questions and made no inquiry about this relationship. Crowley made identical statements in other Bankruptcy Court filings.

35.    On October 18, 2000, the United States Trustee appointed an Official Committee of Equity Security Holders (the "Equity Committee") to represent the interests of Coram's common shareholders. The Equity Committee obtained the Crowley/Cerberus Employment Agreement and other documents in discovery in connection with Coram's proposed Plan of Reorganization, which the Equity Committee opposed.

36.    On December 21, 2000, the Bankruptcy Court, holding that Coram had not proposed its Plan in good faith under Section 1129(a)(3) of the United States Bankruptcy Code, denied confirmation of the First Plan. In its oral ruling, the Bankruptcy Court stated that:

a.    Crowley "had an actual conflict of interest" by virtue of his contractual relationship with Cerberus. (Opinion 12/21/00, at 89.)

b.    "[T]he actions of Mr. Crowley to hide the relationship, and I think that [his letter] did show an intent to hide the relationship and to hide his request for additional compensation in Winterland in exchange for his efforts here did at least evidence that he, himself, believed that this relationship should not be disclosed and, therefore, did, in fact, taint his ability to serve as CEO of the debtor." (*Id.*)

c.    The actual conflict of interest "tainted the debtors' restructuring of its debt, the debtors' negotiations towards a Plan, even the debtors' restructuring of its operations." (*Id.*, at 88.)

A copy of the Court's ruling is attached as Exhibit "H."

37.    Even if the outside directors had not learned the terms of the
Crowley/Cerberus Employment Agreement during the course of discovery, they did so upon
being informed of the Bankruptcy Court's decision. Nevertheless, in the face of the Bankruptcy
Court's clear finding that Crowley had a conflict of interest and breached his fiduciary duty to
Coram in a pervasive way, Crowley continued to receive $80,000 per month from Cerberus,
while the outside directors did absolutely nothing to meet their obligation to make inquiry about
Crowley's relationship with Cerberus, a matter of material importance to Coram and its
shareholders.  The minutes of the Board meetings in 2001 do not reflect any discussion of
whether Crowley should be permitted to stay on as Coram CEO if he continued to receive
payments from Cerberus.

38.    Rather than investigate the matter, the Board members attempted to avoid
the issue.  In 2000, the Board formed a Special Committee consisting of its independent directors
– the Board members other than Crowley.  The Special Committee decided to retain Harrison J.
Goldin Associates, L.L.C. ("Goldin"), a financial advisory firm, as an independent restructuring
advisor.  Coram filed a motion to appoint Goldin on February 1, 2001, which the Bankruptcy
Court approved on February 26, 2001.

39.    As approved by the Bankruptcy Court, Goldin's assignment was to advise
the Special Committee regarding Crowley's relationship with Cerberus, and potential
amendments to the plan of reorganization that had been rejected.  In addition, Goldin was to
attempt to mediate a consensual resolution among Coram, the Equity Committee, and the
Noteholders.

12

40.     The Bankruptcy Court approved Goldin's application to retain counsel. Goldin conducted an extensive investigation, for which Coram paid in excess of $2.5 million, although Goldin envisioned having only a "soft role."

41.     Goldin limited the scope of his inquiry to events occurring prior to December 2000. He did not ask either Crowley or Cerberus whether Crowley continued to receive $80,000 per month from Cerberus. In fact, Crowley received those payments throughout 2001.

42.     In describing the Special Committee's purpose in retaining Goldin as independent restructuring advisor, Amaral testified that the Board wanted Goldin "to sprinkle holy water on [the situation]." (Amaral Deposition, 10/26/01, at 35, attached as Exhibit "I.")

43.     Goldin prepared a report of his investigation, which Coram converted into a second proposed plan of confirmation.

44.     On December 21, 2001, the Bankruptcy Court issued a written opinion denying confirmation, a copy of which is attached as Exhibit "J." After reviewing the facts of the Crowley/Cerberus Employment Agreement and Crowley's conflict of interest as found at the hearing on the First Plan, and after hearing from Goldin, Crowley, Amaral, and others concerning events since December 2000, the Bankruptcy Court concluded:

> Nothing, in fact, has changed since the first confirmation hearing. Crowley continues to receive almost $1 million a year from one of the Debtors' largest creditors, while serving as the Debtors' CEO and President. Under his agreement with Cerberus, he is required to obey its instructions or risk having the agreement terminated and losing his $1 million. This is an actual conflict of interest, as we

13

concluded at the first confirmation hearing.  (Opinion, 12/21/01, at 13.)

45.    The Bankruptcy Court found that other than hiring Goldin and reviewing his report, the outside directors did nothing in response to the Bankruptcy Court's order denying confirmation of the First Plan.  The Bankruptcy Court found that the outside directors did not conduct any investigation of Crowley's conflict of interest, did not require that Crowley cease accepting any compensation from Cerberus, and did not even ask Crowley or Cerberus if the conflict or payments persisted.  The Bankruptcy Court also found that Crowley did not advise the Board that he continued to receive compensation from Cerberus and rejected Crowley's testimony that his nearly $1 million annual compensation from Cerberus had nothing to do with Coram.

46.    The Bankruptcy Court rejected the proposition that Crowley's conflict of interest had caused no harm to Coram.  The Bankruptcy Court found that:

> there is absolutely no evidence from which the Court can conclude that the Debtors have suffered no harm from Crowley's continued conflict of interest.  Mr. Goldin's assertion that there must be no harm since the disclosure of the relationship because no harm was caused by Crowley when the relationship was hidden is not logical, nor is it borne out by the facts.  Crowley did cause harm to the Debtors while his relationship with Cerberus was hidden and there is no reason to assume he did not cause harm to the Debtors when that relationship was disclosed.  (Opinion, 12/21/01, at 20.)

The Bankruptcy Court concluded that "the conflict in this case transcends every single thing Crowley does on behalf of the Debtors" and "[t]he Debtors' hiring of Goldin to 'sprinkle holy water on the situation' does not cure the conflict or evidence good faith."  (*Id.*, at 24-25.)

14

47.    The Bankruptcy Court concluded that the "don't ask, don't tell" approach of the outside directors "does not fulfill their fiduciary duty to these estates." (*Id.* at 22.)

## COUNT I

### AGAINST CROWLEY
### FOR BREACH OF FIDUCIARY DUTY

48.    Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 47 as if fully set forth.

49.    Crowley, as an officer and director, owed Coram fiduciary duties of care, loyalty, disclosure, and good faith, including the duty to disclose actual and potential conflicts of interest. As found by the Bankruptcy Court, Crowley breached those duties. Those breaches, the Bankruptcy Court held, "transcend every single thing Crowley" did on Coram's behalf (*Id.* at 24.)

50.    As a result of Crowley's breaches of fiduciary duties, Coram has suffered damages in excess of $75,000, exclusive of interest and costs.

## COUNT II

### AGAINST AMARAL, CASEY, SMITH, AND
### SMOLEY FOR BREACH OF FIDUCIARY DUTIES

51.    Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 50 as if fully set forth.

15

52.    As members of Coram's Board of Directors, Amaral, Casey, Smith, and Smoley owed Coram fiduciary duties of care, loyalty, disclosure, and good faith in managing Coram's affairs.

53.    By allowing Coram to enter into an employment agreement with Crowley without first investigating Crowley's relationship with Cerberus, the Board members did not make an adequate investigation of material information reasonably available to them and breached their duties of good faith and due care.

54.    The Board members violated their fiduciary duties by allowing Feinberg, who also had a conflict of interest, to negotiate the terms of the Second Amendment to Crowley's employment agreement without any meaningful review by independent and unconflicted directors of the fairness of the Second Amendment to Coram and its shareholders.

55.    The Board members continued to breach their duties even after receiving actual knowledge of Crowley's conflict of interest.

56.    In 2001, Amaral testified that he first learned the details of Crowley's Employment Agreement with Cerberus during his December 8, 2000 deposition but expressed the opinion that the relationship did not create a conflict of interest.  (Amaral Deposition, 10/26/01, at 8, 13, attached as Exhibit "I.")  He further testified that he did not care about the appearance of the conflict and, therefore, did not think it necessary to ask Feinberg about the details of Crowley's relationship with Cerberus.  (*Id.*, at 45.)

16

57.    No later than a telephonic meeting of the Board of Directors on December 27, 2000, the outside directors were fully aware of the material terms of the Crowley/Cerberus Employment Agreement.  Coram's counsel sent a complete copy of the transcript of the Bankruptcy Court's December 21, 2000 ruling to each director.  Nonetheless, the Board members took no action to investigate the conflict or its impact on Coram and its shareholders.

58.    The outside directors, either individually or as a Special Committee, never investigated: (a) whether Crowley's conflict of interest had damaged Coram or had influenced Coram's strategic direction; (b) whether all of Crowley's arrangements with Cerberus had been fully disclosed; or (c) whether Crowley continued to receive payments of $80,000 per month from Cerberus and continued to be bound by his Employment Agreement with Cerberus.  By performing no investigation whatsoever, the outside directors failed to make any good faith attempt to fulfill their fiduciary duties to Coram.  They simply abdicated their responsibilities.

59.    Amaral intentionally disregarded his responsibilities as a director of Coram.  He did not consider Crowley's Employment Agreement with Cerberus to be a conflict. When the Bankruptcy Court found otherwise, Amaral's only action was to retain Goldin "to sprinkle holy water."  He never asked Crowley why he failed to disclose the terms of his relationship to Cerberus, and after Crowley's involuntary disclosure, Amaral never asked him or Feinberg whether the $80,000/month payments were continuing.  Amaral testified that he "didn't think it was appropriate" to ask Feinberg about the conflict.  (Amaral Deposition, 10/26/01, at 45, attached as Exhibit "I.")

17

60.     Smith intentionally disregarded his responsibilities as a director of Coram. Smith did not think it important for the Board to reach its own conclusion whether the Crowley/Cerberus Employment Agreement was a conflict. Smith never asked Crowley why he failed to disclose, and after Crowley's involuntary disclosure, Smith never asked him or Feinberg whether the $80,000/month payments were continuing.

61.     Casey intentionally disregarded his responsibilities as a director of Coram. Casey admitted that he did not investigate Crowley and his relationship with Cerberus between the denial of the First Plan and the issuance of Goldin's report nor did he request any one else to conduct such an investigation. Casey did not ask to see Crowley's employment agreement with Cerberus. Casey never asked Crowley why he failed to disclose. Casey never asked him or Feinberg whether the $80,000/month payments were continuing.

62.     Smoley intentionally disregarded her responsibilities as a Director of Coram. Smoley admitted that she did not care what Crowley was doing outside Coram even if it might be considered a conflict of interest. Smoley never confronted Crowley or Feinberg about the nature of Crowley's relationship with Cerberus. She failed to ask Crowley or Feinberg whether the $80,000/month payments were continuing.

63.     The outside directors, even though operating as a Special Committee, did not obtain independent legal advice, but relied on Coram's bankruptcy counsel.

64.     The decisions of the outside directors, individually and as the Special Committee, were made without adequate information and without adequate deliberation.

65.    The outside directors, individually and as the Special Committee, failed to exercise any business judgment with respect to their actions concerning Crowley's conflict of interest.

66.    The conduct of the outside directors, individually and as the Special Committee, was an egregious breach of their fiduciary duties and was consciously indifferent to the foreseeable results of the breach.

67.    Because the Board of Directors by their knowing and wrongful inaction failed to take such steps as would be necessary to afford the transactions at issue the protection of the business judgment rule, the transactions are subject to review for entire fairness and the defendants bear the burden of showing that the transactions were fair to Coram and its stockholders.

68.    As a result of the breaches of duty of the outside directors, Coram has suffered damages in excess of $75,000, exclusive of interest and costs.

19

WHEREFORE, Plaintiff demands judgment against defendants for compensatory damages, disgorgement, punitive damages, costs, attorneys' fees, pre-judgment interest and such other and further relief as the Court may deem just and proper.

Respectfully submitted,

By: _____

Rolin P. Bissell (Attorney No. 4478)
Glenn C. Mandalas (Attorney No. 4432)
YOUNG CONAWAY STARGATT & TAYLOR
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Phone: (302) 571-6600
Fax:    (302) 571-1253

OF COUNSEL:

Barry E. Bressler
Wilbur L. Kipnes
Jennifer Nestle
Han Nguyen
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103
Phone: (215) 751-2000
Fax:    (215) 751-2205

Dated: December 29, 2004.

EXHIBIT 3



Wiley Rein & Fielding LLP

Daniel J. Standish
202.719.7130
dstandish@wrf.com

Jason P. Cronic
202.719.7175
jcronic@wrf.com

1776 K STREET NW
WASHINGTON, DC 20006
PHONE  202.719.7000
FAX    202.719.7049

Virginia Office
7925 JONES BRANCH DRIVE
SUITE 6200
MCLEAN, VA 22102
PHONE  703.905.2800
FAX    703.905.2820

www.wrf.com

February 23, 2005

**VIA ELECTRONIC AND CERTIFIED MAIL,
RETURN RECEIPT REQUESTED**

Boris Feldman, Esq.                    Anthony C. Valiulis, Esq.
Wilson Sonsini Goodrich & Rosati       Much Shelist Freed Denenberg Ament
650 Page Mill Road                       & Rubenstein, P.C.
Palo Alto, CA 94304-1050               191 N. Wacker Drive, Ste. 1800
                                       Chicago, IL 60606

Re:    Insured:         Coram Healthcare Corporation
       Genesis Policy No.:  YXB001625A (the "Policy")
       Matter:          *Adams v. Crowley, et al.*, No. 04-1565 (D. Del.) (the
                        "Litigation")

Gentlemen:

As you know, we represent Genesis Insurance Company ("Genesis") in connection
with the above-referenced matter (the "Litigation"). On behalf of Genesis, this
letter further acknowledges your previous notice of the Litigation and provides you
with Genesis's current views regarding the availability of coverage under the Policy
for this matter.

According to the complaint in the Litigation, the plaintiff, Arlin Adams "as Chapter
11 Trustee of the Post-Confirmation Bankruptcy Estate of Coram Healthcare
Corporation and its wholly owned subsidiary Coram, Inc." (the "Trustee"), seeks
recovery against Daniel Crowley, Donald Amaral, William Casey, L. Peter Smith,
and Sandra Smoley for alleged breaches of fiduciary duties owed to Coram as a
result of their position as officers and/or directors of the company. *See* Complaint,
Trustee's Action (the "Complaint"), ¶¶ 1-7, 48-68. Specifically, the Complaint
alleges that Crowley breached fiduciary duties owed to Coram through failing to
disclose "actual and potential conflicts" arising from his relationship with Cerberus
Partners, LLP ("Cerberus"), with whom he is alleged to have had an employment
agreement during his tenure as Chairman and CEO of Coram. *Id.*, ¶¶ 10-50. The
other defendants, Coram's outside directors, are alleged to have violated their
fiduciary duties to Coram by failing to investigate Crowley's asserted relationship
with Cerberus and by allowing Crowley to continue in his role at Coram in spite of
an asserted conflict of interest arising from his relationship with Cerberus. *Id.*, ¶¶
51-68. The Complaint further asserts that the foregoing alleged breaches of
fiduciary duty caused Coram unspecified harm, and, as a result, the Trustee seeks
"compensatory damages, disgorgement, punitive damages, costs, attorneys' fees,

Wiley Rein & Fielding LLP

Boris Feldman, Esq.
Anthony C. Valiulis, Esq.
February 23, 2005
Page 2

pre-judgment interests and such other relief as the Court may deem just and proper."
*Id.*, Prayer for Relief.

The Policy was issued to Coram Healthcare for the period from January 8, 1999, to
January 8, 2001. Policy, Declarations, Item 2. The Policy Period subsequently was
extended to January 27, 2001. Coram Healthcare exercised its option to purchase
the Discovery Period pursuant to Section III of the Policy. As a result, the coverage
was extended for one year (or until January 27, 2002), but only for Claims first
made during the Discovery Period for Wrongful Acts committed before January 27,
2001, and otherwise covered by the Policy. Policy, Section III.A. Subject to all
applicable terms and conditions, the Policy has an aggregate limit of liability of $25
million. Policy, Declarations, Item 3.[1]

As a threshold issue, we note that the Policy responds only to Claims first made
against an Insured during the Policy Period or Claims first made against an Insured
during the Discovery Period based on Wrongful Acts committed prior to January
27, 2001. Policy, Sections I.B. and III.A. Both the Policy Period and the Discovery
Period expired before the Litigation was filed. Accordingly, there can be no
coverage for the Litigation unless it is deemed related to a Claim first made against
an Insured during the Policy Period or Discovery Period. *See* Policy, Section V.C.[2]

As set forth in Genesis's letters of March 8, 2001, and January 10, 2002, various
iterations of a proposed lawsuit against Mr. Crowley based in part on his
relationship with Cerberus were presented to the Bankruptcy Court overseeing
Coram's bankruptcy during the Discovery Period. After the end of the Discovery
Period, versions of a complaint naming additional individuals were proposed to the
Bankruptcy Court. However, to Genesis's knowledge, the Bankruptcy Court never

---

[1] This aggregate limit has been eroded by approximately $1.8 million due to payments and advances
made in connection with other claims under the Policy.

[2] The Policy also contains provisions regarding notices of potential Claims tendered during the
Policy Period. Policy, Section VII.B. Because there was no specific notice of potential Claim based
on the circumstances at issue in the Litigation, this provision is not implicated. We further note that
coverage under the Discovery Period applies solely with respect to Claims first made against an
Insured during the Discovery Period; the Policy does not provide for notices of potential Claims
during the Discovery Period. Policy, Sections III.A. and VII.B.

Wiley Rein & Fielding LLP

Boris Feldman, Esq.
Anthony C. Valiulis, Esq.
February 23, 2005
Page 3

permitted those actions to be initiated. In that regard, the Policy defines "Claim," in relevant part, as:

> . . . the following proceedings initiated against a Director or Officer for money damages or other relief, whether brought within or outside of the United States:

> (1)    any civil, arbitration or administrative proceeding commenced by: (a) service of a complaint or similar pleading, or (b) receipt of a notice of charges;

> (2)    any criminal proceeding commenced by the return of an indictment or an information;

> (3)    any administrative or regulatory investigation commenced by a formal order of investigation;

> (4)    any appeal from the above proceedings; or

> (5)    other written or verbal demand for money or services.

Policy, Section II.(A), as amended by Endorsement No. GIC-7425 (08/93). Because the Bankruptcy Court never allowed the proposed matters to proceed, they did not constitute a "Claim." Accordingly, no Claim against an Insured was first made during the Policy Period or Discovery Period, so the Litigation cannot relate back to a Claim made during the Policy Period or Discovery Period. Policy, Section V.C. Thus, the Litigation falls outside the coverage grant of the Policy.

We note that counsel for some insureds previously contended that the proposed lawsuit as originally presented by the Equity Committee formed as a result of Coram's bankruptcy proceeding constituted a Claim, contending that it was a "notice of charges" pursuant to Policy Section II.A.1.b., as amended. We do not believe that position to be well-founded, however, as that definition specifically incorporates a requirement that a proceeding be "commenced." As set forth above,

**Wiley Rein & Fielding** LLP

Boris Feldman, Esq.
Anthony C. Valiulis, Esq.
February 23, 2005
Page 4

the Bankruptcy Court never allowed that action to be commenced, and thus it never satisfied the Policy's definition of "Claim."[3]

Genesis is aware that, in response to Genesis's letter of March 8, 2001, Coram also contended that the proposed lawsuit "arose out of the same circumstance" as *Furst v. Feinberg*, No. 2:00cv05509 (D.N.J.) (the "Securities Action"), and thus constituted a single Claim with that action, first made during the Policy Period. Genesis respectfully disagrees. The Securities Action was filed by different plaintiffs and focused on an alleged scheme by Coram's directors and officers, among others, to drive Coram into bankruptcy in connection with an effort to extinguish shareholder equity in the company. *See* Third Amended Class Action Complaint, *Furst v. Feinberg,* No. 2:00cv05509 (D.N.J. Nov. 8, 2000), ¶ 3 (alleging that, defendants implemented "a scheme designed to perpetrate fraud upon the market . . . in order to artificially depress the trading price of [Coram] shares, and create the false impression that the stockholders' equity . . . was steadily decreasing in value, and . . . that it was completely worthless . . . . to justify a bankruptcy 'reorganization'"). The Litigation is not based on any such theory and, indeed, the complaint in that action is wholly silent as to any purported scheme to devalue Coram. Accordingly, the Litigation is unrelated to the Securities Action.

We note, however, that, even if the Trustee's Action did relate back to a Claim first made during the Policy Period or Discovery Period, a number of additional Policy terms and conditions would be implicated. In an abundance of caution, Genesis discusses potentially implicated Policy provisions below.

There is no coverage for Loss under the Policy in connection with any Claim arising out of Directors or Officers gaining in fact any profit or advantage to which they were not legally entitled. Policy, Section IV.A. In light of the allegations of the Complaint regarding the breach of the fiduciary duties of defendant Crowley for his own financial benefit, Genesis reserves the right to deny coverage based on this exclusion.

---

[3] Similarly, counsel previously contended that the proposed lawsuit constituted a Claim based on certain language from Policy Endorsement No. GIC-7473 (8/93) ("The Claim must be a demand for damages by an injured party but it does not have to be in writing."). However, this assertion (based on an endorsement that specifically states that it does not alter the scope of the Policy's provisions) does not address the fact that the proposed lawsuit was never permitted to proceed.

Wiley Rein & Fielding LLP

Boris Feldman, Esq.
Anthony C. Valiulis, Esq.
February 23, 2005
Page 5

The Policy also excludes coverage for any Claim arising out of the committing in fact of deliberate fraudulent, dishonest, or criminal acts. Policy, Section IV.B. In light of the allegations of the Complaint regarding the improper withholding of information by Mr. Crowley in connection with Coram's bankruptcy proceedings and securities filings, *see* Complaint, ¶¶ 25, 34, Genesis reserves the right to deny coverage based on this exclusion.

Further, the Policy precludes coverage for Loss in connection with any Claim:

> Which is insured in whole or in part by another valid policy or policies, including policies issued to an Outside Entity, regardless of whether or not any Loss arising from such Claim is collectible or recoverable under such other policy or policies; provided, however, this exclusion shall not apply to policies which are specifically excess of this Policy by reference hereto (including the Policy Number).

Policy, Section IV.C. Genesis reserves the right to deny coverage based on this exclusion. To the extent that you have not already done so, please notify any other relevant insurer of the Litigation. In addition, please provide us with copies of all other potentially relevant policies (including any successor policies or policies issued to Cerberus), as well as all correspondence to or from such other insurers regarding the availability of coverage for the Litigation.

We also note that the Trustee purports to bring the lawsuit pursuant to his authority as the Trustee of Coram's Bankruptcy Estates. Complaint, ¶ 3; *see also* Chapter 11 Trustee's Second Amended Joint Plan of Reorganization, § 5.3, *In re Coram Healthcare Corp.*, Nos. 00-3299 and 00-3300 (Bankr. D. Del. April 15, 2004) (providing that the Trustee has Coram's rights to prosecute all causes of action held by Coram). In that regard, the Policy excludes coverage for any Claim "[b]rought by, at the behest of, or with the assistance or active participation of, the Insured Entity or a Subsidiary (or any affiliated person), or any Director or Officer of the Insured Entity or a Subsidiary . . . ." Policy, Section IV.I. Genesis reserves the right to deny coverage based on this exclusion.

Wiley Rein & Fielding LLP

Boris Feldman, Esq.
Anthony C. Valiulis, Esq.
February 23, 2005
Page 6

The Policy only affords coverage for "Loss." That term is defined as:

> any amounts which the Directors or Officers are
> legally obligated to pay, such amounts which the
> Company is required to indemnify the Directors or
> Officers, or such amounts which the Company may
> legally indemnify the Directors or Officers, for
> Claims made against the Directors or Officers, or any
> amounts which the Company is legally obligated to
> pay for Securities Claims made against the Company,
> in excess of the applicable Retention, including
> damages, judgments, orders, Settlements, and Defense
> Costs; provided, however, Loss shall not include
> criminal or civil fines or penalties imposed by law,
> multiplied portions of damages in excess of actual
> damages, taxes, or any matter which may be deemed
> uninsurable under the law pursuant to which this
> Policy shall be construed.

Policy, Section II.F. Genesis reserves the right to deny coverage for amounts that
do not constitute "Loss." This reservation of rights includes the right to deny
coverage for the payment or disgorgement of amounts to which the defendants were
not legally entitled.

In addition, the Complaint focuses in large part on events occurring after January
27, 2001, the expiration of the Policy Period, and the Policy provides no coverage
for claims arising from Wrongful Acts committed after January 27, 2001. Policy,
Section III.A. The Litigation appears to be based in substantial part on alleged
Wrongful Acts after the Policy Period, including the failure to address the alleged
conflict of interest of Mr. Crowley. Thus, to the extent the Litigation does
constitute a Claim under the Policy, it is based in significant measure on non-
covered allegations. In that regard, the Policy provides:

> If both Loss covered by this Policy and other loss are
> incurred, either because a Claim includes both
> covered and non-covered matters, or because a Claim
> is made against both covered and non-covered parties,
> then the Directors, Officers, the Company and the

Wiley Rein & Fielding LLP

Boris Feldman, Esq.
Anthony C. Valiulis, Esq.
February 23, 2005
Page 7

> Insurer agree to use their best efforts to determine a
> fair and proper allocation of all such amounts. In
> making such determination, the parties shall take into
> account the relative legal and financial exposures, and
> the relative benefits obtained in connection with the
> defense and/or settlement, of and between the covered
> and non-covered parties and matters involved in the
> Claim. In the event the parties cannot agree to an
> appropriate allocation percentage for the Claim, then
> the Insurer shall be obligated to make an interim
> payment of the amount of Loss, including Defense
> Costs, which the parties agree is not in dispute until a
> final allocation is agreed upon or determined pursuant
> to the terms of this Policy.

Policy, Section V.G. Genesis reserves all rights under this provision.

\*    \*    \*    \*    \*

In light of the forgoing substantial coverage concerns, and in an abundance of
caution, Genesis has initiated a declaratory judgment action to establish its rights
and obligations under the Policy. A courtesy copy is included for your review.
Please advise us whether you are willing to accept service of the complaint on
behalf of your clients.

We note that the information available to Genesis is preliminary and may be
incomplete. If there is additional information that you would like Genesis to
consider in connection with this matter, please provide it to us. Genesis would be
pleased to consider any additional information and materials that you submit. This
letter, as well as all past, present and future communications, is sent pursuant to a
complete reservation of all of Genesis's rights under the Policy and at law.

Wiley Rein & Fielding LLP

Boris Feldman, Esq.
Anthony C. Valiulis, Esq.
February 23, 2005
Page 8

Sincerely yours,

Daniel J. Standish
Jason P. Cronic

# EXHIBIT 4

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2005 FEB 23  PM 4:48

GREGORY C. LANGHAM
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. **05-WM-335 (PAC)**

GENESIS INSURANCE COMPANY, a Connecticut corporation,

      Plaintiff,

vs.

DANIEL D. CROWLEY;
DONALD J. AMARAL;
WILLIAM J. CASEY;
L. PETER SMITH; and
SANDRA L. SMOLEY,

      Defendants.

BY _____ DEP. CLK

---

## COMPLAINT FOR DECLARATORY JUDGMENT

---

Genesis Insurance Company ("Genesis") brings this action for declaratory judgment against defendants Daniel D. Crowley, Donald J. Amaral, William J. Casey, L. Peter Smith, and Sandra L. Smoley, all of whom are former directors or officers of Coram Healthcare Corporation and/or its wholly-owed subsidiary Coram, Inc. (collectively, "Coram). Genesis seeks a determination that a directors and officers liability policy issued by Genesis to Coram does not provide coverage for the claim asserted against the defendants in the lawsuit captioned *Adams. v. Crowley, et al.*, No. 04-1565 (D. Del.) (the "Underlying Action"). In support of this Complaint, Genesis alleges as follows:

## NATURE OF ACTION

1.    This is an action by Genesis for a declaratory judgment concerning its rights and obligations under a policy of directors and officers liability insurance issued to Coram Healthcare Corporation.

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.  Genesis brings this action pursuant to 28 U.S.C. §§ 2201 and 2202.

3.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).  A substantial part of the events giving rise to this dispute occurred in this district.  The Genesis insurance policy that is the subject of this dispute was issued here to non-party Coram, whose principal place of business is in this district.

## PARTIES

4.    Genesis is a corporation engaged in the business of providing liability insurance. Genesis is organized and exists pursuant to the laws of the state of Connecticut with its principal place of business in the state of Connecticut.

5.    Defendant Daniel D. Crowley ("Crowley") is a citizen of California.  He was Chairman and Chief Executive Officer of Coram from November 1999 until March 2003.

6.    Defendant Donald J. Amaral ("Amaral") is a citizen of Nevada.  He joined Coram's Board in 1995 and served as Chairman from September 1997 through November 30, 1999.  From October 1995 through April 23, 1999, and from October 22, 1999, through November 30, 1999, he also served as Coram's Chief Executive Officer.

7.    Defendant William J. Casey ("Casey") is a citizen of California.  He joined Coram's Board in 1997.

2

8.    Defendant L. Peter Smith ("Smith") is a citizen of Illinois.  He joined Coram's Board in 1994.

9.    Defendant Sandra L. Smoley ("Smoley") is a citizen of California.  She joined Coram's Board on February 10, 2000.

## FACTUAL ALLEGATIONS

### The Genesis Policy

10.    Directors and Officers Liability Insurance Policy No. YXB001625A (the "Policy") (attached hereto as Exhibit A) was issued by Genesis to Coram Healthcare Corporation for the period from January 8, 1999, through January 27, 2001, as amended, with a discovery period for reporting Claims extending until January 27, 2002.  It has a limit of liability of $25,000,000.  It is a "claims-made" policy.  *See* Exhibit A at p. 1.

11.    Subject to all of its terms and conditions, the Policy affords specified coverage to Coram's directors and officers for "Loss" arising out of "Claims" for "Wrongful Acts," as those terms are defined, first made during the Policy Period.  It also affords specified coverage for "Claims" for "Wrongful Acts" first made during the Discovery Period, but only for "Wrongful Acts" committed before January 27, 2001.  Policy, Sections I and Section III.A.

12.    The Policy contains the following exclusion:

> The Insurer shall be liable to make any payment for Loss in connection with any Claim:
>
> *    *    *
>
> Arising out of, based upon or attributable to the Directors or Officers or the Company gaining in fact any profit or advantage to which they were not legally entitled.

Policy, Section IV.A.  This exclusion is referenced in this Complaint as the "Profit or Advantage Exclusion."

3

13.    The Policy contains the following provision:

> If either the Insurer or Insured Entity cancels this policy . . . or . . .
> chooses not to renew this Policy, for any reason other than the
> Company's nonpayment of premium or non-compliance with the
> terms of this Policy, then the Insured Entity shall have the right,
> upon payment of the additional premium . . . to an extension of the
> Policy Period for Claims first made during the period of one year
> after the effective date of such cancellation or nonrenewal *but only*
> *with respect to Wrongful Acts committed before such effective date*
> [January 27, 2001] and otherwise covered by this Policy.

Policy, Section III.A. (emphasis added).  This period is referred to in this Complaint as the

Discovery Period.

14.    The Policy also contains the following provision:

> If both Loss covered by this Policy and other loss are incurred,
> either because a Claim includes both covered and non-covered
> matters, or because a Claim is made against both covered and non-
> covered parties, then the Directors, Officers, the Company and the
> Insurer agree to use their best efforts to determine a fair and proper
> allocation of all such amounts.  In making such determination, the
> parties shall take into account the relative legal and financial
> exposures, and the relative benefits obtained in connection with the
> defense and/or settlement, of and between the covered and non-
> covered parties and matters involved in the Claim.  In the event the
> parties cannot agree to an appropriate allocation percentage for the
> Claim, then the Insurer shall be obligated to make an interim
> payment of the amount of Loss, including Defense Costs, which
> the parties agree is not in dispute until a final allocation is agreed
> upon or determined pursuant to the terms of this Policy.

Policy, Section V.G.

15.    The Policy contains the following definition of "Loss":

> "Loss" shall mean any amounts which the Directors or Officers are
> legally obligated to pay, such amounts which the Company is
> required to indemnify the Directors or Officers, or such amounts
> which the Company may legally indemnify the Directors or
> Officers, for Claims made against the Directors or Officers, or any
> amounts which the Company is legally obligated to pay for
> Securities Claims made against the Company, in excess of the
> applicable Retention, including damages, judgments, orders,
> Settlements, and Defense Costs; provided, however, Loss shall not

4

include criminal or civil fines or penalties imposed by law,
multiplied portions of damages in excess of actual damages; taxes,
or any matter which may be deemed uninsurable under the law
pursuant to which this Policy shall be construed.

Policy, Section II.F.

### The Underlying Action

16.     Coram is a provider of alternative-site infusion therapy. Infusion therapy involves

the intravenous administration of drug therapies for nutrition, anti-infection, HIV, blood factor,

pain management, chemotherapy, and other purposes.

17.     Coram filed a voluntary petition for relief under Title 11 of the United States

Code in the United States Bankruptcy Court for the District of Delaware on August 8, 2000. On

March 8, 2002, the Bankruptcy Court appointed Arlin Adams as Chapter 11 Trustee of Coram

(hereinafter, Adams is referred to as "Trustee"). The Bankruptcy Court entered an order

confirming the Trustee's Plan of Reorganization on November 1, 2004, and Coram is now a

private company.

18.     On December 29, 2004, pursuant to the approved Plan of Reorganization,

the Trustee brought suit against defendants Crowley, Amaral, Casey, Smith, and Smoley in the

United States District Court for the District of Delaware. The Underlying Action is captioned

*Adams v. Crowley, et al.*, No. 04-1565 (D. Del. 2004).

19.     On February 7, 2005, defendants Amaral, Casey, Smith, and Smoley moved to

transfer the Underlying Action to the United States District Court for the District of Colorado.

20.     The complaint in the Underlying Action alleges that Crowley failed to disclose

properly an employment agreement he had with one of Coram's lenders, Cerberus Partners

L.L.P. ("Cerberus") prior to entering into a November 30, 1999, employment agreement with

Coram. It further alleges that, when this assertedly incompletely-disclosed employment

5

relationship was revealed in connection with Coram's bankruptcy proceedings, the Bankruptcy Court refused to confirm Coram's first proposed plan of reorganization.

21.    The complaint in the Underlying Action further alleges that, after the proposed plan of reorganization was denied on December 21, 2000, Crowley continued to accept payments of $80,000 per month from Cerberus, despite his then position as Chairman and CEO of Coram. As a result of this continued relationship with Cerberus, the complaint asserts that the Bankruptcy Court again rejected Coram's second plan of reorganization on December 21, 2001, stating that Crowley's asserted conflict of interest and continued acceptance of payment from Cerberus breached "his duties of care, good faith and loyalty" to Coram.

22.    With respect to defendants Amaral, Casey, Smith, and Smoley (collectively hereinafter, the "Board Defendants"), the complaint alleges that those members of Coram's board failed to properly investigate Crowley's relationship with Coram's lender, failed to remedy the asserted conflict of interests once it was discovered, and, by doing so, "failed to act in good faith and meet even minimal standards of attention."

23.    The complaint further asserts that the foregoing alleged breaches of fiduciary duty caused Coram unspecified harm, and, as a result, the Trustee seeks "compensatory damages, disgorgement, punitive damages, costs, attorneys' fees, pre-judgment interests and such other relief as the Court may deem just and proper."

24.    Upon receiving notice of the Underlying Action, Board Defendants tendered the claim to Genesis under the Policy on December 31, 2004, almost four years after the expiration of the Policy and almost three years after the expiration of the Discovery Period.  After receipt of the complaint in the Underlying Action, and after a review of the allegations contained therein, Genesis determined that there was no coverage available under the Policy for the Underlying

6

Action because the Policy Period and Discovery Period had expired. Even assuming the Policy was triggered, Genesis also advised the Defendants, *inter alia*, that the Policy's Profit or coverage was barred to the extend the Policy's Personal Profit or Advantage Exclusion applied, that the Policy provided no coverage for alleged Wrongful Acts occurring after January 27, 2001, and that there could be no indemnity for any amounts sought by the Trustee that did not satisfy the Policy's definition of "Loss."

25.     By letter dated February 23, 2005, Genesis informed the Defendants of its coverage determination and advised the Defendants that it would initiate the present declaratory judgment action to determine the rights and obligations of the parties. Genesis also reserved all rights under the Policy at that time.

## CONTROVERSY AND RIPENESS

26.     Genesis has identified numerous reasons why coverage is precluded and/or limited under the Policy.

27.     Upon information and belief, the Defendants take issue with Genesis's coverage position.

28.     These coverage issues will directly govern Genesis's obligations under the Policy. This matter is therefore ripe for adjudication.

## COUNT I

### DECLARATORY JUDGMENT THAT THE UNDERLYING CLAIM WAS MADE AFTER THE END OF THE POLICY PERIOD AND THE DISCOVERY PERIOD

29.     Genesis incorporates by reference each of the allegations in paragraphs 1 through 28 of this Complaint.

30.     The Underlying Action was commenced on December 29, 2004. The Policy provides specified coverage for coverage for Claims first made during the Policy Period and

7

during the Discovery Period, but only to the extent the Claim is based on Wrongful Acts

occurring before January 27, 2001. Policy, Sections I. & Section III.A. The Policy Period was

January 8, 1999, to January 27, 2001, as amended, and the Discovery Period extended reporting

of Claims from January 27, 2001, to January 27, 2002. Policy, Declarations, Item 2.

Accordingly, the Underlying Action does not constitute a Claim first made during the Policy

Period or Discovery Period, and Genesis has no coverage obligation for the Underlying Action.

31.    Therefore, Genesis seeks a declaration that no coverage exists under the Policy

for the Underlying Action.

### COUNT II

### DECLARATORY JUDGMENT THAT THE PROFIT OR
### ADVANTAGE EXCLUSION BARS COVERAGE FOR THE UNDERLYING ACTION

32.    Genesis incorporates by reference each of the allegations in paragraphs 1 through

31 of this Complaint.

33.    The Underlying Action alleges that Crowley wrongfully received remuneration

from Cerberus during the course of his employment by Coram and that receipt of such

remuneration constituted a breach of Crowley's fiduciary duties owed to Coram.

34.    The United States Bankruptcy Court for the District of Delaware has determined

that, as a result of the profit or advantage resulting from his relationship with Cerberus, Crowley

failed to fulfill his fiduciary duties to Coram.

35.    The Policy's Profit or Advantage Exclusion bars coverage for Claims arising out

of Directors or Officers gaining in fact any profit or advantage to which the Directors or Officers

are not legally entitled.

36.    Therefore, Genesis seeks a declaration that coverage for the Underlying Action is

excluded under Section IV.A. of the Policy.

8

## COUNT III

### DECLARATORY JUDGMENT THAT THERE IS NO COVERAGE UNDER THE POLICY FOR WRONGFUL ACTS OCCURRING AFTER JANUARY 27, 2001

37.    Genesis incorporates by reference each of the allegations in paragraphs 1 through 36 of this Complaint.

38.    The Policy provides no coverage for claims arising from Wrongful Acts committed after January 27, 2001. Policy, Section III.A. Accordingly, to the extent there is any coverage available under the Policy, such coverage is limited only to Claims arising from Wrongful Acts occurring prior to January 27, 2001.

39.    The Underlying Action is based on allegations that, after Crowley's asserted conflict of interest was revealed in December 2000, that conflict (and resulting breach of fiduciary duty) continued for over a year thereafter, well after January 27, 2001. Similarly, the alleged breach of fiduciary duties committed by the Board Defendants by failing to address the asserted conflict likewise continued through 2001 and thereafter.

40.    Policy Section V.G. provides that, should a Claim that includes both covered and non-covered matters result in Loss as defined by the Policy, coverage is limited to the amount allocated to the covered aspects of the Claim, including coverage for Defense Costs.

41.    Accordingly, Genesis seeks a declaration that, to the extent there is any coverage available for the Underlying Action, it is limited to coverage for Wrongful Acts occurring prior to January 27, 2001, and, accordingly, any Loss incurred in connection with the Underlying Action would be subject to an allocation pursuant to Policy Section V.G.

9

<u>COUNT IV</u>

<u>DECLARATORY JUDGMENT THAT THERE IS NO COVERAGE UNDER
THE POLICY FOR ANY AMOUNTS THAT DO NOT CONSTITUTE "LOSS"</u>

42.    Genesis incorporates by reference each of the allegations in paragraphs 1
thorough 41 of this Complaint.

43.    To the extent there is any coverage available under the Policy for the Underlying
Action, it is limited to coverage for Loss arising from Claims for a Wrongful Act.  Policy,
Section I.

44.    The complaint in the Underlying Action seeks to recover amounts that Crowley
allegedly was not legally entitled to retain.

45.    The obligation to repay amounts wrongfully received does not constitute a
"Loss," and such amounts are not insurable under applicable law.

46.    Accordingly, Genesis seeks a declaration that, to the extent any relief sought by
the Trustee in the Underlying Action does not constitute a "Loss," there can be no coverage
under the Policy for such amounts.

<u>OTHER COVERAGE DEFENSES</u>

47.    Other Policy terms and conditions may ultimately be implicated even if coverage
were available under the Policy.  Nothing in this Complaint should be construed as a waiver by
Genesis of any other coverage defenses under the Policy, and Genesis reserves the right to raise
all other Policy terms and conditions as defenses to coverage as appropriate.  Further, Genesis
specifically adopts and incorporates herein its reservation of rights set forth in its letter of
February 23, 2005.

WHEREFORE, Genesis requests that the Court enter a declaration and judgment in its
favor:

10

A.     Declaring that, for the reasons set forth in Count I, the Underlying Action does not constitute a Claim made during the Policy Period or Discovery Period;

B.     Declaring that, for the reasons set forth in Count II, to the extent the Policy is implicated by the Underlying Action, no coverage exists based on the Profit or Advantage Exclusion;

C.     Declaring that, for the reasons set forth in Count III, to the extent the Policy is implicated by the Underlying Action, no coverage exists for Wrongful Acts occurring after January 27, 2001, and any coverage is subject to allocation pursuant to Policy Section V.G.;

D.     Declaring that, for the reasons set forth in Count IV, to the extent that the Policy is implicated, no coverage exists for amounts that do not constitute "Loss;"

E.     Awarding Genesis such additional declaratory and other relief as shall be found to be appropriate under the circumstances; and

F.     Awarding Genesis its fees and costs incurred in prosecuting this action.

DATED this 23rd day of February, 2005.

SHERMAN & HOWARD L.L.C.

By: _____
Leanne B. De Vos
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
(303) 299.8418
(303) 298.0940  (facsimile)
D.C. Box 12

and

OF COUNSEL:
Daniel J. Standish
Jason P. Cronic
Paul A. Dame
WILEY REIN & FIELDING LLP
1776 K Street, NW
Washington, DC 20006
(202) 719-7000
(202) 719-7049 (facsimile)

*Attorneys for Plaintiff Genesis
Insurance Company*

**Address of Plaintiff**
695 East Main, 4th Floor
Stamford, CT 06910

12

# EXHIBIT 5

UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2005 JUN 13  PM 4: 04

GREGORY C. LANGHAM
CLERK

BY_____DEP. CLK

| | |
|---|---|
| GENESIS INSURANCE COMPANY,<br>a Connecticut corporation,<br><br>      Plaintiff-Counterdefendant,<br><br>v.<br><br>DANIEL D. CROWLEY;<br>DONALD J. AMARAL;<br>WILLIAM J. CASEY;<br>L. PETER SMITH; and<br>SANDRA L. SMOLEY,<br><br>      Defendants-Counterclaimants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 05-cv-335-WDM-PAC

## DONALD J. AMARAL, WILLIAM J. CASEY, L. PETER SMITH, and SANDRA L. SMOLEY'S ANSWER AND COUNTERCLAIMS

### ANSWER

Defendants Donald J. Amaral, William J. Casey, L. Peter Smith and Sandra L. Smoley ("Outside Director Defendants") hereby answer the Complaint for Declaratory Judgment ("Complaint") of plaintiff Genesis Insurance Company ("Genesis"). To the extent not explicitly admitted, all allegations of the Complaint are denied. The headings used for the Answer are taken from the Complaint and are repeated below only for convenience of organization. The paragraph numbering in the answer refers to the corresponding paragraphs of the Complaint.

### NATURE OF ACTION

1.      With respect to the allegations contained in paragraph 1 of the Complaint, the Outside Director Defendants admit that Genesis purports to bring this action for declaratory judgment concerning Genesis's obligations under a policy of directors and officers liability insurance issued to Coram Healthcare Corporation ("Coram"). The Outside Director Defendants deny the substance of all claims.

## JURISDICTION AND VENUE

2.      With respect to the allegations contained in paragraph 2 of the Complaint, the Outside Director Defendants admit that this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 and that Genesis purports to allege claims arising under 28 U.S.C. §§ 2201 and 2202. The Outside Director Defendants, however, deny the substance of all claims asserted by Genesis.

3.      With respect to the allegations contained in paragraph 3 of the Complaint, the Outside Director Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the paragraph and, on that basis, deny them.

## PARTIES

4.      With respect to the allegations contained in paragraph 4 of the Complaint, the Outside Director Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the paragraph and, on that basis, deny them.

5.      With respect to the allegations contained in paragraph 5 of the Complaint, the Outside Director Defendants admit that defendant Daniel D. Crowley ("Mr. Crowley") was appointed as Chairman and Chief Executive Officer of Coram in November 1999, and continued to serve in those positions until at least March 2002. The Outside Director Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the paragraph and, on that basis, deny them.

6.      The Outside Director Defendants admit the allegations contained in paragraph 6 of the Complaint.

7.      The Outside Director Defendants admit the allegations contained in paragraph 7 of the Complaint.

8.      The Outside Director Defendants admit the allegations contained in paragraph 8 of the Complaint.

9.      The Outside Director Defendants admit the allegations contained in paragraph 9 of the Complaint.

## FACTUAL ALLEGATIONS

### The Genesis Policy

10.     With respect to the allegations contained in paragraph 10 of the Complaint, the Outside Director Defendants refer to the document for a full recital of its contents, which speaks for itself. Otherwise, the allegations in the paragraph are denied.

11.     With respect to the allegations contained in paragraph 11 of the Complaint, the Outside Director Defendants refer to the document for a full recital of its contents, which speaks for itself. Otherwise, the allegations in the paragraph are denied.

12.     The Outside Director Defendants admit that the allegations contained in paragraph 12 of the Complaint quote from the document identified in the Complaint as Directors and Officers Liability Insurance Policy No. YXB001625A (the "Policy"), which is attached as Exhibit A to the Complaint and speaks for itself. The Outside Director Defendants refer to the document for a full recital of its contents. Otherwise, the allegations in the paragraph are denied.

13.     The Outside Director Defendants admit that the allegations contained in paragraph 13 of the Complaint quote from the Policy, which is attached as Exhibit A to the Complaint and speaks for itself. The Outside Director Defendants refer to the document for a full recital of its contents. Otherwise, the allegations in the paragraph are denied.

14.     The Outside Director Defendants admit that the allegations contained in paragraph 14 of the Complaint quote from the Policy, which is attached as Exhibit A to the Complaint and speaks for itself. The Outside Director Defendants refer to the document for a full recital of its contents. Otherwise, the allegations in the paragraph are denied.

15.     The Outside Director Defendants admit that the allegations contained in paragraph 14 of the Complaint quote from the Policy, which is attached as Exhibit A to the Complaint and speaks for itself. The Outside Director Defendants refer to the document for a full recital of its contents. Otherwise, the allegations in the paragraph are denied.

### The Underlying Action

16.     The Outside Director Defendants admit the allegations contained in paragraph 16 of the Complaint for the time prior to March 2002. Otherwise, the allegations in the paragraph are denied.

17.     The Outside Director Defendants admit the allegations contained in paragraph 17 of the Complaint.

18.     The Outside Director Defendants admit the allegations contained in paragraph 18 of the Complaint.

19.     With respect to the allegations contained in paragraph 19 of the Complaint, the Outside Director Defendants admit that they moved to transfer *Adams v. Crowley, et al.*, No. 04-1565 (D. Del. 2004) (the "Underlying Action"), to the United States District Court for the District of Colorado. The Outside Director Defendants deny that they filed their motion on February 7, 2005.

20.     The Outside Director Defendants admit that the allegations contained in paragraph 20 summarize some allegations contained in the complaint filed in *Adams v. Crowley, et al.*, No. 04-1565 (D. Del. 2004) (the "Underlying Action"). The Outside Director Defendants refer to the complaint filed in the Underlying Action ("Underlying Complaint") for a full recital of its contents. Furthermore, the Outside Director Defendants deny the substance of all claims asserted in the Underlying Complaint.

21.     The Outside Director Defendants admit that the allegations contained in paragraph 21 summarize some allegations contained in the Underlying Complaint. The Outside Director Defendants refer to the document for a full recital of its contents. Furthermore, the Outside Director Defendants deny the substance of all claims asserted in the Underlying Complaint.

22.     The Outside Director Defendants admit that the allegations contained in paragraph 22 quote from the Underlying Complaint and summarize some allegations contained in the Underlying Complaint. The Outside Director Defendants refer to the document for a full

recital of its contents. Furthermore, the Outside Director Defendants deny the substance of all claims asserted in the Underlying Complaint.

23.     The Outside Director Defendants admit that the allegations contained in paragraph 23 quote from the Underlying Complaint and summarize some allegations contained in the Underlying Complaint. The Outside Director Defendants refer to the document for a full recital of its contents. Furthermore, the Outside Director Defendants deny the substance of all claims asserted in the Underlying Complaint.

24.     With respect to the allegations contained in paragraph 24 of the Complaint, the Outside Director Defendants admit that their counsel sent a copy of the Underlying Complaint to Genesis on December 31, 2004. The Outside Director Defendants, however, deny that they tendered their claim to Genesis on that date or that they tendered the claim almost four years after the expiration of the Policy and almost three years after the expiration of the Discovery Period. The Outside Directors are without knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of the paragraph and, on that basis, deny them. The Outside Director Defendants admit that Genesis advised them that it was denying coverage for several reasons in a letter dated February 23, 2005 ("Coverage Letter"). The Outside Directors refer to the Coverage Letter for a full recital of its contents. The Outside Director Defendants deny that Genesis advised them that Genesis believed coverage was barred for them because of the Policy's Personal Profit or Advantage Exclusion. Genesis advised the Outside Director Defendants only that Genesis believed that this exclusion barred coverage for Mr. Crowley. The Outside Director Defendants admit that Genesis advised them that Genesis believed that the Policy barred coverage for alleged Wrongful Acts occurring after January 27, 2001, and that there could be no indemnity for any amounts sought by the Trustee that did not satisfy the Policy's definition of "Loss." The Outside Director Defendants deny the merit of any grounds asserted in the Coverage Letter purportedly to deny them coverage by any applicable policy of insurance.

25.     With respect to the allegations contained in paragraph 25 of the Complaint, the Outside Director Defendants admit that Genesis sent a letter dated February 23, 2005, to their counsel. The Outside Director Defendants refer to the Coverage Letter for a full recital of its contents. Otherwise, the allegations in the paragraph are denied.

### CONTROVERSY AND RIPENESS

26.     The Outside Director Defendants deny the allegations contained in paragraph 26 of the Complaint.

27.     The Outside Director Defendants admit that they do not agree with the coverage position taken by Genesis.

28.     With respect to the allegations contained in paragraph 28 of the Complaint, the Outside Director Defendants are without information or belief sufficient to form a belief as to the allegations contained in the first sentence and, on that basis, deny them. The allegations contained in the second sentence in the paragraph constitute legal conclusions as to which no response is required; if one is, the allegations are denied.

### COUNT I

**Declaratory Judgment that the Underlying Claim Was Made After the End of the Policy Period and the Discovery Period**

29.     The Outside Director Defendants incorporate by reference their responses to the foregoing paragraphs of the Complaint as if fully set forth herein.

30.     With respect to the allegations contained in paragraph 30 of the Complaint, the Outside Director Defendants admit the allegations contained in the first sentence. The Outside Director Defendants deny all the remaining allegations. Furthermore, the Outside Director Defendants state that remaining allegations constitute legal conclusions as to which no response is required and that the Policy speaks for itself.

31.     With respect to the allegations in paragraph 31 of the Complaint, the Outside Director Defendants admit that Genesis is seeking a declaration that no coverage exists under

the Policy for the Underlying Action.  The Outside Director Defendants deny that Genesis is entitled to such a declaration and deny the substance of the claim asserted by Genesis.

**COUNT II**

**Declaratory Judgment that the Profit or Advantage Exclusion Bars Coverage for the Underlying Action**

32.    The Outside Director Defendants incorporate by reference their responses to the foregoing paragraphs of the Complaint as if fully set forth herein.

33.    The Outside Director Defendants admit that the allegations contained in paragraph 33 summarize some allegations contained in the Underlying Complaint.  The Outside Director Defendants refer to the Underlying Complaint for a full recital of its contents. Furthermore, the Outside Director Defendants deny the substance of all claims asserted in the Underlying Complaint.

34.    The Outside Director Defendants deny the allegations contained in paragraph 34 of the Complaint.

35.    The Outside Director Defendants deny the allegations contained in paragraph 35 of the Complaint.  Furthermore, the Outside Director Defendants state that the allegations constitute legal conclusions as to which no response is required and that the Policy speaks for itself.

36.    With respect to the allegations in paragraph 36 of the Complaint, the Outside Director Defendants admit that Genesis is seeking a declaration that coverage for the Underlying Action is excluded under Section IV.A of the Policy.  The Outside Director Defendants deny that Genesis is entitled to such a declaration and deny the substance of the claim asserted by Genesis.

-7-

## COUNT III

**Declaratory Judgment That There Is No Coverage Under the Policy for Wrongful Acts Occurring After January 27, 2001**

37.     The Outside Director Defendants incorporate by reference their responses to the foregoing paragraphs of the Complaint as if fully set forth herein.

38.     The Outside Director Defendants deny the allegations contained in paragraph 38 of the Complaint. Furthermore, the Outside Director Defendants state that the allegations in this paragraph are legal conclusions for which no response is required and that the Policy speaks for itself.

39.     The Outside Director Defendants deny the allegations contained in paragraph 39 of the Complaint. The Outside Director Defendants also state the allegations in the Underlying Complaint speak for themselves.

40.     The Outside Director Defendants deny the allegations contained in paragraph 40 of the Complaint. The Outside Director Defendants also state that the Policy speaks for itself

41.     With respect to the allegations in paragraph 41 of the Complaint, the Outside Director Defendants admit that Genesis is seeking a declaration that, to the extent there is any coverage available for the Underlying Action, it is limited to coverage for Wrongful Acts occurring prior to January 27, 2001, and, accordingly, any Loss incurred in connection with the Underlying Action would be subject to an allocation pursuant to Policy Section V.G. The Outside Director Defendants, however, deny that Genesis is entitled to such a declaration and deny the substance of the claim asserted by Genesis.

## COUNT IV

**Declaratory Judgment That There Is No Coverage under the Policy for Any Amounts That Do Not Constitute "Loss"**

42.     The Outside Director Defendants incorporate by reference their responses to the foregoing paragraphs of the Complaint as if fully set forth herein.

43.     The Outside Director Defendants deny the allegations contained in paragraph 43 of the Complaint. Furthermore, the Outside Director Defendants state that the allegations in this paragraph are legal conclusions for which no response is required and that the Policy speaks for itself.

44.     The Outside Director Defendants deny the allegations contained in paragraph 44 of the Complaint. Furthermore, the Outside Director Defendants refer to the Underlying Complaint for a full recital of its contents.

45.     The Outside Director Defendants deny the allegations contained in paragraph 45. Furthermore, the Outside Director Defendants state that the allegations in this paragraph are legal conclusions for which no response is required.

46.     With respect to the allegations in paragraph 46 of the Complaint, the Outside Director Defendants admit that Genesis is seeking a declaration that, to the extent any relief sought by the Trustee in the Underlying Action does not constitute a "Loss," there can be coverage under the Policy for such amounts. The Outside Director Defendants, however, deny that Genesis is entitled to such a declaration and deny the substance of the claim asserted by Genesis.

### OTHER COVERAGE DEFENSES

47.     The Outside Director Defendants state that the allegations in paragraph 47 of the Complaint constitute legal conclusions as to which no response is required. If a further response is required, the allegations are denied.

### PRAYER FOR RELIEF

48.     To the extent that any response is required to Genesis's prayer for relief, the Outside Director Defendants deny the allegations contained therein. Further, the Outside Director Defendants request a judgment in their favor on all claims in the Complaint; an award of the fees an costs incurred; and such other and further relief as this Court may deem just, fair, and appropriate.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Genesis fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

This action should be transferred to the United States District Court for the District of Delaware, pursuant to 28 U.S.C. § 1404.

### THIRD AFFIRMATIVE DEFENSE

Genesis's claims are barred in whole or in part by the doctrines of waiver, estoppel, ratification and/or unclean hands.

The Outside Director Defendants reserve the right to assert additional affirmative defenses once the precise nature of the relevant circumstances or events is determined through discovery, as allowed by any scheduling order of the Court and/or the Federal Rules of Civil Procedure.

## COUNTERCLAIMS

Defendants and cross-complainants Donald J. Amaral, William J. Casey, L. Peter Smith and Sandra L. Smoley ("Outside Director Defendants") hereby complain and allege as follows for their Cross-Complaint against plaintiff and cross-defendant Genesis Insurance Company ("Genesis"):

### JURISDICTION

1.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 1367.

### PARTIES

2.    Defendant and cross-complainant Donald J. Amaral is an individual residing in and a citizen of the state of Nevada.

3.    Defendant and cross-complainant William J. Casey is an individual residing in and a citizen of the state of California.

4.    Defendant and cross-complainant L. Peter Smith is an individual residing in and a citizen of the state of Illinois.

5.    Defendant and cross-complainant Sandra L. Smoley is an individual residing in and a citizen of the state of California.

6.    Plaintiff and cross-defendant Genesis is, upon information and belief, incorporated under the laws of Connecticut with its principal place of business located in the state of Connecticut and therefore a citizen of that state.

### FACTUAL ALLEGATIONS

#### The Genesis Policy

7.    Genesis issued Directors and Officers Liability Insurance Policy No. YXB001625A (the "Genesis Policy). A copy of the Genesis Policy is attached to the Complaint as Exhibit A. The Genesis Policy has a policy period of January 8, 1999, through January 27, 2001 (the "Policy Period"), with a discovery period until January 27, 2002 (the

"Discovery Period"). The Genesis Policy has an aggregate and per claim liability limit of $25,000,000.

8.      The Outside Director Defendants are former officers and/or directors of Coram Healthcare Corporation ("Coram") and are insured persons under the Genesis Policy

9.      The Genesis Policy provides that Genesis "will pay, on behalf of the Directors and Officers, Loss arising from Claims first made during the Policy (or Discovery) Period against the Directors or Officers, individually or collective, for a Wrongful Act . . . ." Genesis Policy I.A.

10.      The Genesis Policy defines a "Loss" as "any amounts which the Directors or Officers are legally obligated to pay . . . including damages, judgments, orders, Settlements, and Defense Costs." Genesis Policy, II.F. Defense Costs are defined by the Genesis Policy to "mean reasonable and necessary legal fees and expenses incurred in the investigation and/or defense of any Claim. . . ." Genesis Policy, II.C.

11.      The Genesis Policy obligates Genesis to advance Defense Costs upon request. In particular, the Genesis Policy states:

> The Insurer shall, upon request, advance Defense Costs prior to the final disposition of a Claim . . . . Any agreement by the Insurer to advance Defense Costs shall be on the condition that the parties for whom the Defense Costs are advanced provide a written undertaking satisfactory to the Insurer which states that in the event it is finally established that the Insurer has no liability under the Policy to the Directors, Officers or the Company, or any of them separately, for such Claim, they agree to repay to the Insurer upon demand all Defense Costs advanced on their behalf.

Genesis Policy, VI.B.

12.      The Genesis Policy defines a "Claim" as follows:

> "Claim" shall mean the following proceedings initiated against a Director or Officer for money damages or other relief, whether brought within or outside of the United States:
>
> (1) any civil, arbitration or administrative proceeding commenced by: (a) service of a complaint or similar pleading, or (b) receipt of a notice of charges;
> (2) any criminal proceeding commenced by the return of an indictment or an information;

> (3) any administrative or regulatory investigation commenced by a formal order of investigation;
> (4) any appeal from the above proceedings; or
> (5) other written or verbal demand for money or services.

Genesis Policy, Section II(A), amended by Endorsement Form No. GIC-7425.

13.     The Genesis Policy also provides that:

> More than one Claim based upon or arising out of the same Wrongful Act(s), or facts, circumstances or situations, or one or more series of similar, repeated, or continuous Wrongful Act(s), or facts, circumstances or situations, or one or more series of similar, repeated or continuous Wrongful Acts, shall be considered a single Claim . . . . Such single Claim shall be deemed to be first made on the date when the earliest Claim is first made, or on the date within the Policy Period in which notice of a potential Claim pursuant to Section VII.B. is given.

Genesis Policy, V.C. (the "Interrelated Wrongful Acts Provision").

14.     The Genesis Policy also provides a mechanism to provide notice of potential claims to Genesis:

> If, prior to the effective dates of the expiration of the Policy Period, the Directors, Officers or the Company first become aware of circumstances which may subsequently give rise to a Claim, and the Directors, Officers or the Company as soon as practicable during the Policy Period give written notice to the Insurer of the circumstances and the reasons for anticipating a Claim, then any Claim subsequently made based upon such circumstances (of which the Insurer receives proper notice under Section VII.A.) shall be deemed for the purposes of this Policy to have been first made during the Policy Period; provided, however, as a condition precedent for any coverage to arise hereunder, such notice must be specific and contain full particulars as to the facts and circumstances potentially giving rise to the Claim, including a narrative setting forth dates, names of the potential plaintiffs and affected Directors or Officers, names of other parties involved, the nature and scope of the anticipated Claim and all reasons why such a Claim is reasonably to be anticipated.

Genesis Policy, VII.B.

15.     The Genesis Policy covers Claims first made during the Discovery Period to the extent that such Claims concern Wrongful Acts committed before the expiration of the Policy Period.  Genesis Policy, I and III.A.

## Claims against the Outside Director Defendants

**The Trustee's Suit**

16.    On or about March 8, 2002, the United States Bankruptcy Court for the District of Delaware appointed Arlin Adams as Chapter 11 Trustee of Coram (the "Trustee").

17.    On or about October 27, 2004, the Bankruptcy Court signed an order, deemed entered as of November 1, 2004, confirming the Trustee's Plan of Reorganization.

18.    On or about December 29, 2004, the Trustee filed a complaint against the Outside Director Defendants and Crowley, captioned *Adams v. Crowley, et al.*, No. 04-1565 (D. Del.) (the "Trustee's Suit").

19.    On or about January 5, 2005, notice of the Trustee's Suit was sent to Genesis. A copy of this notice is attached hereto as Exhibit A.

20.    The Trustee's Suit makes the following allegations against the Outside Director Defendants:

a.    "By allowing Coram to enter into an employment agreement with Crowley without first investigating Crowley's relationship with Cerberus, the [Outside Director Defendants] did not make an adequate investigation of material information reasonable available to them and breached their duties of good faith and due care."

b.    "The [Outside Director Defendants] violated their fiduciary duties by allowing Feinberg, who had a conflict of interest, to negotiate the terms of the Second Amendment to Crowley's employment agreement without any meaningful review by independent and unconflicted directors of the fairness of the Second Amendment to Coram and its shareholders."

c.    "The [Outside Director Defendants] continued to breach their duties even after receiving actual knowledge of Crowley's conflict of interest."

21.    On or about February 23, 2005, Genesis informed the Outside Director Defendants of its conclusion that the Genesis Policy did not cover losses related to the Trustee's Suit. At the same time, Genesis instituted this litigation seeking a declaration that the

-14-

Genesis Policy does not provide coverage for the claims asserted in the Trustee's Suit. Genesis has also refused to and has failed to provide Defense Costs for costs incurred by the Outside Director Defendants in defending themselves against the Trustee's Suit.

22.     National Fire Insurance Company also issued a Directors and Officers Liability Insurance Policy No. 872-47-42 to Coram. An endorsement to that policy lists the policy period as January 27, 2001, through January 27, 2004. The Outside Director Defendants are insured under the National Fire Insurance Company policy. National Fire Insurance Company has denied coverage for the Trustee' Suit because the events underlying in the allegations in Trustee's Suit either occurred prior to January 27, 2001, or arose out or related to wrongful acts that occurred prior to January 27, 2001.

23.     Genesis's denial of Defense Costs in connection with the Trustee's Suit constitutes a breach of contract and violates various duties and obligations that Genesis owes to the Outside Director Defendants pursuant to the Genesis Policy for the following reasons.

**The Securities Class Action**

24.     On or about November 15, 2000, within the Policy Period, two former shareholders of Coram filed an amended class action complaint against the Outside Director Defendants and others ("Class Action Suit"). The Class Action Suit, captioned *Furst v. Feinberg, et al.*, No. 2:00cv05509 (D.N.J.), asserted claims under the federal securities laws and for breach of fiduciary duty arising from the decline in Coram's stock price and bankruptcy petition.

25.     Notice of the Class Action Suit was sent to Genesis on or about November 20, 2000. A copy of this notice is attached hereto as Exhibit B.

26.     On or about March 21, 2001, a second amended class action complaint was filed in the Class Action Suit. The second amended complaint contained additional allegations against the Outside Director Defendants, including allegations involving the same underlying course of events that are at issue in the Trustee's Suit.

27.     The second amended complaint made the following allegations:

a.     Crowley failed to disclose his consulting agreement with Cerberus Partners L.P. ("Cerberus") when he was hired as a consultant for Coram and then as Coram's CEO and Chairman.  Cerberus, at the time, held a substantial amount of Coram's debt.

b.     Stephen Feinberg ("Feinberg"), a Cerberus partner and Coram director, improperly renegotiated Crowley's employment agreement with Coram in early 2000.

c.     The Outside Director Defendants "relied on Crowley for information, judgment and strategic and tactical direction, without knowledge that Crowley was secretly in the pay of, agent for and acting under the direction of Cerberus, and had thereby abandoned the fiduciary duties of care, loyalty and good faith which he owed to Coram."

d.     "The acts of the Officer and Director defendants [including the Outside Director Defendants] complained of herein were and are in breach of their fiduciary duty of loyalty to Plaintiffs and the Class, in that these defendants knew that their actions involved improper self-dealing and other acts in derogation of the fiduciary duties owed by them, as officers and directors of Coram . . . ."

28.     The Class Action Suit was eventually dismissed with prejudice, a decision affirmed by the United States Court of Appeals for the Third Circuit in or about December 2002.

29.     Genesis paid Defense Costs incurred in connection with the Class Action Suit on behalf of the Outside Director Defendants, including Defense Costs incurred in conjunction with responding to the second amended class action complaint.

30.     Noticed of the second amended complaint in the Class Action Suit was provided during the Discovery Period.  The Trustee's Suit "relates back" to the second amended complaint in the Class Action Suit pursuant to the Genesis Policy's Interrelated Wrongful Acts Provision, and the Outside Director Defendants are entitled to coverage for Losses, as well as Defenses Costs, under the Genesis Policy for the Trustee's Suit.

31.     In the alternative, the second amended complaint constituted a notice of circumstance, as defined in Section VII.B. of the Genesis Policy, such that the Outside Director

-16-

Defendants are entitled to coverage for Losses, as well as Defenses Costs, under the Genesis Policy for the Trustee's Suit.

**The Proposed Equity Committee Derivative Complaint**

32.     On or about August 8, 2000, Coram filed a voluntary petition for relief under Title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware. On or about October 18, 2000, the United States Trustee appointed an Official Committee of Equity Security Holders (the "Equity Committee") to represent the interests of Coram's common shareholders.

33.     On or about February 6, 2001, the Equity Committee filed a motion with the Bankruptcy Court seeking leave to file an adversary proceeding. Specifically, the Equity Committee sought leave to file a derivative suit against Daniel D. Crowley ("Crowley"), among others, based, in part, on an alleged conflict of interest suffered by Crowley while he served as Coram's Chief Executive Officer and Chairman of the Board ("Proposed Derivative Suit"). On or about February 26, 2001, the Bankruptcy Court denied the Equity Committee's motion without prejudice.

34.     Written notice of the Equity Committee's motion was sent to Genesis in or about February 2001, within the Discovery Period.

35.     On or about March 8, 2001, Genesis acknowledged receiving notice of the Proposed Derivative Suit, but Genesis denied that the Proposed Derivative Suit constituted a Claim under the Genesis Policy.

36.     Throughout 2001, as part of the on-going bankruptcy proceedings, the Equity Committee continued to move for permission to bring the Proposed Derivative Suit. During discovery, the Equity Committee began expanding its inquiry, and it appeared that the Equity Committee hoped to expand the Proposed Derivative Complaint to include claims against the Outside Director Defendants. Genesis was informed of the Equity Committee's actions and apparent intent in or about October 2001.

37.     On or about December 3, 2001, Genesis agreed to advance defense costs related to the Proposed Derivative Complaint.

38.     On or about December 28, 2001, the Equity Committee filed a renewed motion for leave to file the Proposed Derivative Suit. This renewed motion specifically sought leave to assert claims against the Outside Director Defendants for breach of fiduciary duty.

39.     On or about January 24, 2002, within the Discovery Period, notice of the Equity Committee's renewed motion for leave to file the Proposed Derivative Suit was sent to Genesis. A copy of this notice is attached hereto as Exhibit C.

40.     The Proposed Derivative Suit constituted a Claim because it was a "notice of charges," or, in the alternative, a "written . . . demand for money." Notice of the Proposed Derivative Suit was provided during the Discovery Period and concerned alleged Wrongful Acts committed before the expiration of the Genesis Policy Period. The entirety of the Trustee's Suit "relates back" to the Proposed Derivative Suit pursuant to the Genesis Policy's Interrelated Wrongful Acts Provision, and the Outside Director Defendants are entitled to coverage for Losses, as well as Defense Costs, under the Genesis Policy for the Trustee's Suit.

## COUNTERCLAIM I

### Breach of Contract

41.     The Outside Director Defendants reallege each and every allegation of their Cross-Complaint as if fully set forth herein.

42.     The Genesis Policy constitutes a contract of insurance.

43.     All conditions that the Outside Director Defendants were to perform under the Genesis Policy were fulfilled and/or excused by the conduct of Genesis.

44.     By their actions, as described above, Genesis breached the contract of insurance.

45.     As a result of said breaches, the Outside Director Defendants are entitled to damages in amounts to be proved at trial.

## PRAYER FOR RELIEF

WHEREFORE, defendants and cross-complainants the Outside Director Defendants pray for the following relief:

A.  For all contractual and compensatory damages, economic and non-economic, in amounts to be proved at trial;

B.  For all pre- and post-judgment interest, statutory and moratory, permitted by law;

C.  For attorneys' fees and costs of suit herein;

D.  For declaratory judgment that Donald J. Amaral, William J. Casey, L. Peter Smith and Sandra L. Smoley are entitled to coverage for the claims in the Trustee's Suit under the Genesis Policy, including indemnity for those claims and legal fees and costs reasonable incurred in defending the claims asserted against them in the Trustee's Suit; and

E.  For such other and further relief as this Court deems just and proper.

## JURY DEMAND

**THE OUTSIDE DIRECTOR DEFENDANTS DEMAND A JURY TRIAL ON ALL CLAIMS TRIABLE BY A JURY.**

Dated: June 13, 2005

Respectfully submitted,

Bruce A. Featherstone
Featherstone DeSisto LLP
600 17th Street #2400
Denver, CO 80202
(303) 626-7100
(303) 626-7101 (facsimile)
BFeatherstone@featherstonelaw.com

Attorneys for Defendants and
Counterclaimants Donald J. Amaral, William
J. Casey, L. Peter Smith and Sandra L.
Smoley

Of Counsel:

Boris Feldman, Esq.
Peri Nielsen, Esq.
Shelby K. Pasarell, Esq.
WILSON SONSINI GOODRICH &
ROSATI
650 Page Mill Road
Palo Alto, CA 94304-1050
Tel:    (650) 493-9300

**CERTIFICATE OF SERVICE**

The undersigned certifies that on June 13, 2005, copies of the foregoing **DONALD J. AMARAL, WILLIAM J. CASEY, L. PETER SMITH, and SANDRA L. SMOLEY'S ANSWER AND COUNTERCLAIMS** was served on the following via U.S. Mail:

Leanne B. De Vos
SHERMAN & HOWARD L.L.C.
Attorneys & Counselors at Law
633 Seventeenth Street, Suite 3000
Denver, CO 80202

Stanley L. Garnett
Janet S. Drake
Brownstein Hyatt & Farber, P.C.
410 Seventeenth Street, 22nd Floor
Denver, CO 80202-4437

Matthew J. Rita
Holme, Roberts & Owen, LLP-Denver CO
United States District Court Box 07
1700 Lincoln Street
#4100
Denver, CO 80203

# EXHIBIT 6

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Settlement Agreement") is made and entered into this fifth day of April, 2006, by and between ARLIN M. ADAMS (the "Trustee"), in his capacity as CHAPTER 11 TRUSTEE TO THE BANKRUPTCY ESTATES OF CORAM HEALTHCARE CORPORATION ("CHC") and CORAM, INC. ("CI" and together with CHC, collectively "Coram") and the following former members of the Coram Board of Directors: DONALD J. AMARAL, a citizen of the State of Nevada, WILLIAM J. CASEY, a citizen of the State of California, L. PETER SMITH, a citizen of the State of Illinois, and SANDRA L. SMOLEY, a citizen of the State of California (collectively the "Outside Directors").

WHEREAS, on December 29, 2004, the Trustee commenced an action against defendant Daniel J. Crowley, Coram's former Chairman, President and CEO, and the Outside Directors, in the United States District Court for the District of Delaware at Case No. 04-1565-SLR (the "Delaware Action");

WHEREAS, the Delaware Action alleges that Crowley and the Outside Directors breached their fiduciary duties to Coram;

WHEREAS, the Outside Directors notified Genesis Insurance Company ("Genesis") of the Delaware Action but Genesis has refused to defend them;

WHEREAS, the Trustee and the Outside Directors, without any admission of liability, desire to avoid the expense and uncertainty of further litigation and to resolve any and all disputes that have been raised or could be raised in the Delaware Action by entering into this Settlement Agreement; and

1

**WHEREAS**, this Settlement Agreement is subject to approval by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

**NOW, THEREFORE**, in consideration of the promises set forth in this Settlement Agreement, which the parties agree constitute good and sufficient consideration, and subject to the terms and conditions set forth below, and intending to be legally bound, the Trustee and the Outside Directors agree as follows:

1.    The Outside Directors consent to the entry of judgment in the Delaware Action against them in favor of the Trustee in the amount of $9,550,000 (the "Judgment").

2.    Within five business days of the execution of this Settlement Agreement and receipt by the Trustee of the financial information from the Outside Directors as set forth below, the Trustee will file a motion with the Bankruptcy Court to approve this Settlement Agreement.

3.    The Outside Directors hereby assign to the Trustee all of their rights and any and all causes of action any or all of them may have arising out of, or under, any of the directors' and officers' liability insurance policies obtained by Coram for their benefit, including but not limited to the primary policy issued by Genesis (Policy No. YXB001625A), for the period January 8, 1999 through January 27, 2001 (the "D&O Policy"), and any further causes of action based on the handling of the Outside Directors' claims under such policies.

4.    The Trustee agrees that he will not seek to execute on the Judgment on any assets of the Outside Directors other than the claims assigned in paragraph 3 above and the directors' and officers' liability insurance policies, including the D&O Policy.

2

PHDATA 1354393_2

5.      This settlement is contingent upon the Outside Directors providing the Trustee in writing with accurate and complete information substantiating their representations regarding the Outside Directors' executable assets, which the Trustee has reasonably relied upon in negotiating this Settlement Agreement.

6.      Any financial information provided by the Outside Directors that is marked "Confidential" by the Outside Directors shall not be disclosed by the Trustee or his attorneys to any third party without the consent of the Outside Directors except that: (a) the Trustee may, if necessary, submit such financial information to the Bankruptcy Court in support of his motion to approve this Settlement Agreement, but shall request that he be permitted to do so under seal; and (b) the Trustee may comply with any order or direction of the Bankruptcy Court regarding such information.

7.      The Outside Directors shall continue to defend the action for a declaratory judgment filed against them by Genesis in the U.S. District Court for the District of Colorado (Civil Action No. 05-cv-335) (the "Coverage Action") and to prosecute their counterclaim for breach of the D&O Policy in the Coverage Action until this Settlement Agreement is approved by the Bankruptcy Court. Thereafter, the parties shall use their best efforts to have the Trustee substituted as a party-in-interest for the Outside Directors in the Coverage Action.

8.      The Trustee shall make reasonable efforts to prosecute in the Coverage Action the Outside Directors' claims under the D&O Policy for attorneys' fees and costs incurred in the Delaware Action and the Coverage Action. The Trustee shall not be required to appeal any ruling of the trial court in the Coverage Action relating to the Outside Directors' claim for attorneys'

3

fees and costs and the Trustee shall be permitted to compromise such claim with the approval of the Outside Directors, which shall not be unreasonably withheld.

9.      Within ten (10) days of the Bankruptcy Court's approval of this Settlement Agreement, the parties shall cause the consent judgment to be entered in the Delaware Action.  If the Bankruptcy Court does not grant the Motion to Approve Settlement, this Settlement Agreement is null, void and of no effect.  If the Bankruptcy Court grants the Motion to Approve Settlement but only with modifications, the parties agree to negotiate in good faith in an effort to reach agreement to satisfy any concerns the Bankruptcy Court might express.  Failing such agreement, the Settlement Agreement will be null and void and the parties will return to their prior positions.

10.     Upon approval of this Settlement Agreement by the Bankruptcy Court, each of the Outside Directors agrees to cooperate with the Trustee in connection with the Coverage Action and the continuing Delaware Action against defendant Daniel Crowley and shall comply with all reasonable requests of the Trustee.

11.     The Trustee and the Outside Directors represent that they enter into this settlement freely and voluntarily and with and upon the advice of counsel.

12.     No covenants, agreements, representations or warranties of any kind have been made by any party hereto, except as expressly set forth herein.  This Settlement Agreement constitutes the entire agreement between the parties relating to the subject matter hereof, and all prior negotiations and discussions with respect to the subject matter of this Settlement

4

Agreement have been and are merged and integrated into, and superseded by this Settlement Agreement.

13.    This Settlement Agreement may not be altered, amended, modified, terminated or otherwise changed in any respect whatsoever except by a writing signed by the Trustee and the Outside Directors.

14.    This Settlement Agreement shall be binding upon and inure to the benefit of the Trustee (in his capacity as Trustee only and not personally) and the Outside Directors, and their respective agents, representatives, attorneys, partners, employees, predecessors, successors, heirs, assigns, executors, administrators, and any other persons who may in any fashion claim an interest in the subject matter hereof through any of the parties.

15.    This Settlement Agreement shall be construed and enforced under the law of the State of Delaware.

16.    This Settlement Agreement may be signed in counterpart copies, each of which shall be deemed to be an original document, and all of which shall together be deemed to constitute a single document: Facsimile copies shall be deemed to be originals.

**[balance of page intentionally left blank]**

5

PHDATA 1354393_2

IN WITNESS WHEREOF, the parties hereto have executed this Settlement Agreement as of the date stated at the outset.

WITNESS:

_____

ARLIN M. ADAMS

_____
Arlin M. Adams, as Chapter 11 Trustee of Coram Healthcare Corp. and Coram, Inc.

WITNESS:

_____

DONALD J. AMARAL

_____
Donald J. Amaral

WITNESS:

_____

WILLIAM J. CASEY

_____
William J. Casey

WITNESS:

_____

L. PETER SMITH

_____
L. Peter Smith

WITNESS:

_____

SANDRA L. SMOLEY

_____
Sandra L. Smoley

6

PHDATA 1354393_2

04/02/2006  10:13    775-749-5407          DON AMARAL                    PAGE  02

IN WITNESS WHEREOF, the parties hereto have executed this Settlement

Agreement as of the date stated at the outset.

WITNESS:                           **ARLIN M. ADAMS**

_____            _____
                                   Arlin M. Adams, as Chapter 11 Trustee of
                                   Coram Healthcare Corp. and Coram, Inc.

WITNESS:                           **DONALD J. AMARAL**

_____            _____
                                   Donald J. Amaral

WITNESS:                           **WILLIAM J. CASEY**

_____            _____
                                   William J. Casey

WITNESS:                           **L. PETER SMITH**

_____            _____
                                   L. Peter Smith

WITNESS:                           **SANDRA L. SMOLEY**

_____            _____
                                   Sandra L. Smoley

6

PHDATA 1354393_2

IN WITNESS WHEREOF, the parties hereto have executed this Settlement Agreement as of the date stated at the outset.

WITNESS:                                    **ARLIN M. ADAMS**

_____                     _____
                                            Arlin M. Adams, as Chapter 11 Trustee of
                                            Coram Healthcare Corp. and Coram, Inc.

WITNESS:                                    **DONALD J. AMARAL**

_____                     _____
                                            Donald J. Amaral

WITNESS:                                    **WILLIAM J. CASEY**

_~Marcia Puett~_____                       _~W. J. Casey~_____
                                            William J. Casey

WITNESS:                                    **L. PETER SMITH**

_____                     _____
                                            L. Peter Smith

WITNESS:                                    **SANDRA L. SMOLEY**

_____                     _____
                                            Sandra L. Smoley

6

PHDATA 1354393 2

*To: Boris Feldman*

IN WITNESS WHEREOF, the parties hereto have executed this Settlement

Agreement as of the date stated at the outset.

WITNESS:                                    **ARLIN M. ADAMS**

_____                     _____
                                            Arlin M. Adams, as Chapter 11 Trustee of
                                            Coram Healthcare Corp. and Coram, Inc.

WITNESS:                                    **DONALD J. AMARAL**

_____                     _____
                                            Donald J. Amaral

WITNESS:                                    **WILLIAM J. CASEY**

_____                     _____
                                            William J. Casey

WITNESS:                                    **L. PETER SMITH**

_____                     _____
                                            L. Peter Smith

WITNESS:                                    **SANDRA L. SMOLEY**

_____                     _____
                                            Sandra L. Smoley

6

PHDATA 1354393_2

IN WITNESS WHEREOF, the parties hereto have executed this Settlement
Agreement as of the date stated at the outset.

WITNESS:                                ARLIN M. ADAMS

_____         _____
                                        Arlin M. Adams, as Chapter 11 Trustee of
                                        Coram Healthcare Corp. and Coram, Inc.

WITNESS:                                DONALD J. AMARAL

_____         _____
                                        Donald J. Amaral

WITNESS:                                WILLIAM J. CASEY

_____         _____
                                        William J. Casey

WITNESS:                                L. PETER SMITH

_____         _____
                                        L. Peter Smith

WITNESS:                                SANDRA L. SMOLEY

_____         _____
Sandra L. Smoley                        Sandra L. Smoley

6

PHDATA 1354393_2

# EXHIBIT 7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-00335-WDM-PAC

GENESIS INSURANCE COMPANY,

　　　　Plaintiff,

　　v.

DANIEL D. CROWLEY, *et al.*,

　　　　Defendants.

## MOTION OF ARLIN M. ADAMS, CHAPTER 11 TRUSTEE OF THE BANKRUPTCY ESTATES OF CORAM HEALTHCARE CORPORATION AND CORAM, INC., TO SUBSTITUTE AS A PARTY

## INTRODUCTION

Arlin M. Adams, a former judge of the United States Court of Appeals for the Third Circuit and the post-confirmation Chapter 11 Trustee (the "Trustee") of the bankruptcy estates of Coram Healthcare Corporation and its wholly-owned subsidiary, Coram, Inc. (collectively, "Coram"), has entered into an agreement settling the Trustee's claims against Coram's former outside directors, Donald J. Amaral, William J. Casey, L. Peter Smith and Sandra L. Smoley (collectively, the "Outside Directors"), which settlement agreement has been approved by the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court"). Pursuant to that settlement agreement, the Outside Directors have assigned to the Trustee all of their rights under the directors' and officers' liability insurance policy issued to Coram by Genesis Insurance Company ("Genesis"), the plaintiff/counterclaim-defendant in this action.

Because coverage under the above-referenced policy for the settled claims is at issue in this case, and the Trustee is now the real party in interest by virtue of his settlement with the Outside Directors, the Trustee respectfully moves this Court to enter an Order substituting him as a party in place of the Outside Directors, pursuant to Rule 25 of the Federal Rules of Civil Procedure.

## RULE 7.1A CERTIFICATION

Pursuant to D.C.COLO.LCivR 7.1A, counsel for the Trustee hereby certify that they have attempted in good faith to resolve this matter by conferring with counsel for the other parties. Counsel for the originally named defendants do not oppose the Trustee's substitution. However, counsel for Genesis have indicated that they are not authorized to consent to this motion.

## BACKGROUND

**The Trustee Is Appointed**

1.     On August 8, 2000, Coram filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the Delaware Bankruptcy Court.  At a hearing held on February 12, 2002, the Delaware Bankruptcy Court granted two motions seeking the appointment of a Chapter 11 trustee to assume control over the debtors' property and affairs pursuant to Section 1104 of the Bankruptcy Code.  The Delaware Bankruptcy Court approved the United States Trustee's appointment of Arlin M. Adams as Trustee on March 7, 2002.

2.     By order entered as of November 1, 2004, after a lengthy confirmation trial, the Court confirmed the Trustee's Second Amended Plan of Reorganization (the "Trustee's Plan"), which became effective on December 1, 2004.  *In re Coram Healthcare Corp.*, 315 B.R. 321 (Bankr. D. Del. 2004).

2

**The Delaware Action Is Filed**

3.      On December 29, 2004, in accordance with the confirmed Trustee's Plan, the Trustee filed a civil action in the United States District Court for the District of Delaware, Case No. 04-1565 (the "Delaware Action"), asserting that Coram's former CEO, Daniel D. Crowley ("Crowley"), and the Outside Directors had breached their fiduciary duties to Coram. A true and correct copy of the Complaint in the Delaware Action is attached hereto as Exhibit A and incorporated herein.

**Coram's D&O Policy**

4.      Coram had purchased from Genesis, the plaintiff in this action, a directors' and officers' liability insurance policy (Policy No. YXB001625A), which, as amended, covered the period from January 8, 1999 through January 27, 2001, with a discovery period for reporting claims extending until January 27, 2002 (the "D&O Policy"). The D&O Policy has an aggregate limit of liability of $25 million. There are also excess insurance policies with several other insurance carriers covering the same period, raising the aggregate insurance limit of liability to $100 million.

**Genesis Denies Coverage and Sues**

5.      Genesis has denied coverage for the claims asserted against Crowley and the Outside Directors in the Delaware Action, and it has refused to pay for the defense of Crowley and the Outside Directors as required by the D & O Policy.

6.      On February 23, 2005, Genesis filed this action against Crowley and the Outside Directors, seeking a declaratory judgment. On June 13, 2005, the Outside Directors filed an answer and a counterclaim for breach of contract against Genesis (Docket No. 18).

3

**The Trustee Moves to Intervene**

7.    On June 8, 2005, the Trustee filed a motion to intervene as an additional defendant (Docket No. 16) (the "Intervention Motion"). On August 31, 2005, the Honorable Patricia A. Coan, United States Magistrate Judge, issued a report and recommendation (the "Recommendation") that the Intervention Motion be denied (Docket No. 35). The Trustee filed objections to that Recommendation (Docket Nos. 36, 37 and 39).

**The Settlement Agreement**

8.    On or about April 5, 2006, the Trustee and the Outside Directors entered into a written agreement (the "Settlement Agreement") settling the claims asserted in the Delaware Action as to the Outside Directors only, subject to the approval of the Delaware Bankruptcy Court. Pursuant to the Settlement Agreement, the Outside Directors assigned all of their rights against Genesis to the Trustee. A true and correct copy of the Settlement Agreement is attached hereto as Exhibit B and incorporated herein.

9.    On April 24, 2006, after notice to all parties in interest (including Genesis), Chief Judge Mary F. Walrath of the Delaware Bankruptcy Court approved the Settlement Agreement, finding that the settlement was fair and reasonable. A true and correct copy of the Order approving the Settlement Agreement is attached hereto as Exhibit C and incorporated herein.

10.    By status report dated April 27, 2006 (Docket No. 56), the Outside Directors advised this Court of their Settlement Agreement with the Trustee—which, as stated above, included assignment to the Trustee of all of the Outside Directors' rights under the D&O Policy issued to Coram by Genesis.

4

**Intervention Becomes Moot**

11.     With knowledge of the Settlement Agreement, on May 5, 2006 this Court entered an Order (Docket No. 62) denying as moot the Intervention Motion. The Order also stated that the August 31, 2005 Recommendation and the Trustee's objections thereto were likewise moot.

## ARGUMENT

12.     Rule 25(c) of the Federal Rules of Civil Procedure expressly provides for substitution "[i]n case of any transfer of interest." Substitution under Rule 25(c) is appropriate where, as here, contractual rights giving rise to a claim are assigned while the cause of action is pending. *See United States v Jones Coal Co.*, 368 F.2d 217 (6th Cir. 1966) (concluding that substitution of trustee to whom claim had been assigned was proper); *Kilbourn v. Western Surety Co.*, 187 F. 2d 567, 572 (10th Cir. 1951) (noting that Rule 25 "authorizes a substitution of the assignee of the cause of action, who takes his assignment while the action is pending"); *Ashley v. Watt*, 549 F. Supp 1044, 1046 (E.D. Wis. 1982) (granting motion to substitute assignee of oil and gas lease as plaintiff because assignee was real party in interest).

13.     Pursuant to the Settlement Agreement, *see* Ex. B, and the Delaware Bankruptcy Court's corresponding Order (which has become final), *see* Ex. C, all of the Outside Directors' rights under the D&O Policy at issue in this case have been assigned to the Trustee. As a result, the Trustee is now the real party in interest and, for that reason alone, he should be substituted as a party in place of the Outside Directors. *See* Fed. R. Civ. P. 17(a).

14.     In light of the special role of a bankruptcy trustee, formal substitution by the Trustee as a party—rather than the continued prosecution of this case by the Trustee in the name of the Outside Directors—is particularly appropriate here. When "causes of action vest in the

5

bankruptcy trustee after initiation of the lawsuit, Rule 25(c) ensures that the proper person litigates the claims." *Hutchinson v. Delaware Savings Bank FSB*, 410 F. Supp. 2d 374, 382 (D.N.J. 2006); *see also Bauer v. Commerce Union Bank*, 859 F.2d 438 (6th Cir. 1988) (concluding that, despite objection of plaintiff debtor, substitution of bankruptcy trustee as plaintiff was proper, because tort claim was property of bankruptcy estate).

15.    It is beyond dispute that the Outside Directors' rights under the D&O Policy are now the property of Coram's bankruptcy estate. Unlike the Outside Directors, the Trustee has a fiduciary duty to Coram's creditors and former shareholders in litigating the coverage dispute with Genesis. Indeed, any settlement involving the Outside Directors' rights to insurance coverage under the D&O Policy would now have to be approved by the Delaware Bankruptcy Court. Therefore, the Trustee should be formally substituted as a party in this action so that he can fully and properly protect the interests of Coram's creditors and former shareholders in the proceeds of the D&O Policy.

## CONCLUSION

For all of the foregoing reasons, the Trustee respectfully prays for the entry of an order (a) formally substituting the Trustee as a party in place of the Outside Directors, and (b) granting such other and further relief as the Court deems just and proper under the circumstances.

Pursuant to D.C.COLO.LCivR 7.1F, a proposed order is attached hereto as Exhibit D.

6

Respectfully submitted this 11th day of May, 2006.

 _s/ Matthew J. Rita_____
Matthew J. Rita
Michael J. Hofmann
HOLME ROBERTS & OWEN LLP
1700 Lincoln, Suite 4100
Denver, Colorado 80203
Telephone: 303-866-0536
Facsimile: 303-866-0200
E-mail: *matt.rita@hro.com*
          *michael.hofmann@hro.com*

Wilbur L. Kipnes
Barry E. Bressler
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103-7286
Telephone: 215-751-2000
Facsimile: 215-751-2205
E-mail: *wkipnes@schnader.com*
          *bbressler@schnader.com*

*Attorneys for Arlin M. Adams,*
*Chapter 11 Trustee of the Bankruptcy*
*Estates of Coram Healthcare Corporation*
*and Coram, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of May, 2006, I electronically filed the foregoing MOTION OF ARLIN M. ADAMS, CHAPTER 11 TRUSTEE OF THE BANKRUPTCY ESTATES OF CORAM HEALTHCARE CORP. AND CORAM, INC., TO SUBSTITUTE AS A PARTY with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following attorneys of record at the listed e-mail addresses:

Daniel James Standish, Esq.
Jason P. Cronic, Esq.
Paul Albert Dame, Esq.
WILEY, REIN & FIELDING, LLP
1776 K Street, N.W.
Washington, DC 20006
dstandish@wrf.com
jcronic@wrf.com
pdame@wrf.com

Leanne B. De Vos, Esq.
Doran Lee Matzke, Esq.
SHERMAN & HOWARD, LLC
633 Seventeenth Street, #3000
Denver, CO 80202
ldevos@sah.com
dmatzke@sah.com

Janet Stansberry Drake, Esq.
Stanley L. Garnett, Esq.
BROWNSTEIN, HYATT & FARBER, PC
410 17th Street, #2200
Denver, CO 80202
jsdrake@bhf-law.com
sgarnett@bhf-law.com

Bruce A. Featherstone, Esq.
Featherstone DeSisto LLP
600 Seventeenth Street, #2400
Denver, CO 80202
bfeatherstone@featherstonelaw.com

William Lee Senter, Esq.
SENTER, GOLDFARB & RICE, LLC
1700 Broadway, #1700
Denver, CO 80290
wsenter@sgrllc.com

s/ Terry Tucker

# EXHIBIT 8

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 05-CV-335-WDM- PAC

GENESIS INSURANCE COMPANY,
a Connecticut corporation,

       Plaintiff and Counterclaim Defendant,

v.

DANIEL D. CROWLEY,

       Defendant,

DONALD J. AMARAL;
WILLIAM J. CASEY;
L. PETER SMITH;
and SANDRA L. SMOLEY,

       Defendants and Counterclaimants,

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA,

       Third-Party Defendant.

---

## GENESIS INSURANCE COMPANY'S LIMITED OBJECTION
## TO MOTION OF ARLIN M. ADAMS TO SUBSTITUTE AS A PARTY

---

By his motion, Arlin Adams (the "Trustee") asserts that he is entitled to substitute into

this litigation as a party on behalf of defendants Amaral, Casey, Smith and Smoley (collectively,

"the Outside Directors"), by virtue of a putative settlement reached between the Trustee and the

Outside Directors in *Adams. v. Crowley, et al.*, No. 04-1565 (D. Del.) (the "Underlying Action").

Genesis does not oppose the Trustee entering the case as a party, but files this limited objection

in order to (1) make clear that it is not waiving any of its rights under the Genesis policy at issue

and at law arising from the Outside Directors' unauthorized settlement or the Trustee's attempt

to assert putative rights pursuant to that settlement, and (2) oppose the release of the Outside

Directors as parties to the action.

## ARGUMENT

**I.      The Substitution of the Trustee as a Party Does Not Diminish Genesis's
         Rights Under the Policy and at Law**

Colorado law provides that "where . . . the party claiming a right to indemnity enters into

a stipulated judgment with the claimant, and enters an agreement that absolves itself of further

liability, the claimant has no right of action against the supposed indemnitor." *Am. Mfrs. Mut.*

*Ins. Co. v. Seco/Warwick Corp.*, 266 F. Supp. 2d 1259, 1268 (D. Colo. 2003) (citing *Serna v.*

*Kingston Enters.*, 72 P.3d 376, 380-81 (Colo. Ct. App. 2002)).  That is the case here – the

underlying settlement does not impose any personal liability on the Outside Directors, as it limits

the Trustee's only source of recovery to any available insurance proceeds. *See* Motion To

Substitute As A Party, Ex. B., ¶ 4.  Thus, to the extent the Trustee's pending motion is granted,

Genesis reserves the right to contend that the Trustee has no viable claim to the proceeds of the

Genesis policy.

Genesis likewise reserves the right to contest the nature and overall reasonableness of the

settlement, as it imposes no liability on the Outside Directors and was consummated only

through contrived and orchestrated "negotiations" in which the Outside Directors lacked any

genuine economic interest.  Further, while the Trustee contends that the bankruptcy court has

determined that the putative settlement was "reasonable," Genesis notes that the issue before that

court was whether the settlement was reasonable from the perspective of *Coram's estate* (i.e.,

whether the settlement amount made sense from the bankruptcy claimants' perspective), not

from the perspective of the Outside Directors or Genesis. *See* Motion of the Chapter 11 Trustee

for Approval of Settlement With Outside Directors, ¶¶ 39-42(contending that settlement was

reasonable from the perspective of Coram's bankruptcy estate) (Attached as Exhibit A to May

25, 2006 Declaration of Jason P. Cronic ("Cronic Decl."); *see also Houbigant, Inc. v. Federal*

*Ins. Co.*, 374 F.3d 192, 205 (3d Cir. 2004) (bankruptcy court's determination of reasonableness

of settlement not sufficient to bind insurer that was not a party to the settlement).[1]

## II.    The Outside Directors Should Remain As Defendants To Genesis's Claim For Declaratory Relief And To Ensure The Orderly Continuation of this Case

Based on the Outside Directors' assignment of their rights, the Trustee seeks to substitute

as a party. Although the assignment is invalid and otherwise unenforceable for numerous

reasons, Genesis does not object to the Trustee joining the action as a real party in interest in

asserting the Outside Directors' counterclaim for breach of contract against Genesis. With

respect to Genesis's affirmative claim for declaratory relief, however, the Outside Directors are

still identified insureds under the Policy and, therefore, continue to be appropriate defendants as

to that claim. Moreover, according to the terms of the underlying settlement, the Outside

Directors retain a financial interest in this litigation, as they stand to recover legal fees and costs

should the Trustee prevail on their breach of contract claim against Genesis. *See* Motion To

Substitute As A Party, Ex. B, ¶ 7. Such an ongoing interest further supports keeping the Outside

Directors as parties, rather than wholly substituting the Trustee in their place. *See, e.g., FDIC v.*

*Tisch*, 89 F.R.D. 446, 448-49 (E.D.N.Y. 1981) (denying substitution in favor of joinder of a

proposed substitute where original party retained financial interest in outcome of litigation).

---

[1] In addition, Genesis reserves all rights to rely upon the plain language of the policy at issue in this case, which precludes both unauthorized settlements and the unauthorized assignment of rights under the policy. *See* Genesis Policy, Section VI(A) (prohibiting unauthorized settlements) and Section VIII(F) (prohibiting unauthorized assignment of rights under the policy) (Exhibit B to the Cronic Declaration).

Retention of the Outside Directors as parties also is warranted to ensure the orderly

continuation of this case. Each of the Outside Directors already has provided sworn

interrogatory responses and potential times for their depositions as parties to this action have

been identified. *See* Cronic Decl., Ex. C-F (verification for interrogatories); Ex. G (Deposition

Schedule). If they were replaced as parties, the Outside Directors would no longer be required to

participate in discovery or to appear at any trial as parties, and could only be required to do so to

the extent they are subject to the subpoena power of this Court. Such a development could result

in unnecessary delay and other problems for the orderly continuation of the litigation.[2]

In such situations, federal courts considering substitution pursuant to Fed. R. Civ. P.

25(c) where a transferee of a party's rights seeks to substitute into an ongoing action on behalf of

that party, have the option simply to join that transferee as a party and keep the existing party in

the case as well. *See Prop-Jets, Inc. v. Chandler*, 575 F.2d 1322 (10th Cir. 1978) ("Substitution

of a successor in interest or its joinder as an additional party under Rule 25(c) is generally within

the sound discretion of the trial court.); *Elca Enterprises, Inc. v. Sisco Equip. Rental & Sales,

Inc.*, 53 F.3d 186, 190 (8th Cir 1995) ("[Rule 25(c)] expressly permits parties to continue in an

action, even if they do not remain the real party in interest, as long as the cause of action itself

survives the transfer to the new party."); *see also Tisch*, 89 F.R.D. at 448 ("[I]t is within the

power of the court to continue the action in its original posture, to order substitution of the party

to whom interest has been transferred, or to join the transferee as a party") (citing *E.I. duPont de

Nemours & Co. v. Lyles and Lang Constr. Co.*, 219 F.2d 328 (4th Cir. 1955); *Sun-Maid Raisin

Growers v. California Packing Corp.*, 273 F.2d 282 (9th Cir. 1959); 7C Charles Alan Wright,

---

[2] Preventing delays of this kind is particularly important in light of the discovery deadlines set at the Scheduling Conference of May 24, 2006. *See* Docket Entry # 69 (Courtroom Minutes/Minute Order for proceedings held before Magistrate Judge Patricia A. Coan on May 24, 2006).

4

Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 1958 (2d ed. 1986 & Supp. 2005)).

The Trustee can be granted party status without the need for removing the Outside Directors from the litigation. This is particularly appropriate here, as the Trustee cannot provide testimony in the Outside Directors' stead regarding their personal knowledge of underlying events, nor can he explain their prior individual discovery responses. Nor is keeping the Outside Directors as parties to this action inequitable, as they are not wholly devoid of any interest in the outcome of this action. Accordingly, Genesis respectfully requests that the Outside Directors remain parties to the action.

## CONCLUSION

Genesis Insurance Company does not object to the Trustee joining this case as a party, but respectfully reserves the right to raise appropriate defenses to the Trustee's efforts to pursue a claim against Genesis. Moreover, for the reasons discussed above, Genesis respectfully submits that the Outside Directors should remain as parties to this action.

Respectfully submitted,

Leanne B. De Vos
SHERMAN & HOWARD, LLC
Attorneys & Counselors at Law
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
(303) 299-8418
(303) 298-0940 (facsimile)

_____s/ Paul A. Dame_____
Daniel J. Standish
Jason P. Cronic
Paul A. Dame
WILEY REIN & FIELDING LLP
1776 K Street, NW
Washington, DC 20006
(202) 719-7000
(202) 719-7049 (facsimile)

Dated: May 25, 2006

*Attorneys for Plaintiff and Counterclaim
Defendant Genesis Insurance Company*

6

## Certificate of Service

I hereby certify that on May 25, 2006, the foregoing Limited Objection to Motion of

Arlin M. Adams to Substitute as a Party, accompanying Declaration of Jason P. Cronic and

attached exhibits were electronically filed with the Clerk of the Court using the CM/ECF system,

which will send notification of the filing to the following e-mail addresses:

Bruce A. Featherstone
Featherstone DeSisto LLP
600 17th Street #2400
Denver, CO 80202
*bfeatherstone@featherstonelaw.com*

William L. Senter
Senter Goldfarb & Rice L.L.C.
1700 Broadway, Suite 1700
Denver, CO 80290
*wsenter@sgrllc.com*

Stanley L. Garnett
Brownstein Hyatt & Farber, P.C.
410 Seventeenth Street
Twenty-Second Floor
Denver, CO 80202-4437
*sgarnett@bhf-law.com*

Elliot R. Peters
Keker & Van Nest LLP
710 Sansome Street
San Francisco, CA  94111
*erp@kvn.com*

Matthew J. Rita
Holme Roberts & Owen LLP
1700 Lincoln, Suite 4100
Denver, Colorado 80203
*matt.rita@hro.com*

and that a true and accurate copy of the same was sent to non-CM/ECF participants via United

States mail, first class, postage prepaid to:

Boris Feldman
Peri Nielsen
Wilson Sonsini Goodrich & Rosati, P.C.
650 Page Mill Road
Palo Alto, CA 94304

*s/ Paul A. Dame*

7

# EXHIBIT 9

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-00335-WDM-PAC

GENESIS INSURANCE COMPANY,

        Plaintiff,

v.

DANIEL D. CROWLEY, and
ARLIN M. ADAMS, Chapter 11 Trustee of the Bankruptcy Estates of
Coram Healthcare Corporation and Coram, Inc.,

        Defendants.

---

### ORDER

This matter coming before the Court on the Motion of Arlin M. Adams, Chapter 11 Trustee of the Bankruptcy Estates of Coram Healthcare Corporation and Coram, Inc., to Substitute as a Party, the Court being sufficiently advised in the premises, and finding that the showing(s) required by Fed. R. Civ. P. 25 have been made, it is hereby

    **ORDERED** that said motion is **GRANTED**; and it is further

    **ORDERED** that Arlin M. Adams, as Chapter 11 Trustee of the Bankruptcy Estates of Coram Healthcare Corporation and Coram, Inc., is hereby **SUBSTITUTED** in this civil action for defendants Donald J. Amaral, William J. Casey, L. Peter Smith, and Sandra L. Smoley, per the revised caption above.

        June 22, 06                  BY THE COURT:

                                         S/ PATRICIO ACDAN
                                         United States ~~District~~/Magistrate Judge

EXHIBIT 10

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

*Cx. 10*

| | | |
|---|---|---|
| ARLIN M. ADAMS, as Chapter 11 Trustee of the Bankruptcy Estates of Coram Healthcare Corp. and Coram, Inc. and not individually, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. _____ |
| GENESIS INSURANCE COMPANY, | ) ) | JURY TRIAL DEMANDED |
| Defendant. | ) ) ) | |

## COMPLAINT

Plaintiff, Arlin M. Adams, as the Chapter 11 Trustee of the bankruptcy estates of Coram Healthcare Corporation ("CHC") and its wholly-owned subsidiary Coram, Inc. ("CI") (collectively "Coram"), by way of complaint against Genesis Insurance Company ("Genesis"), states:

## PARTIES

1.      Coram is the leading provider of alternative-site infusion therapy in the United States. Infusion therapy involves the intravenous administration of drug therapies for nutrition, anti-infection, HIV, blood factor, pain management, chemotherapy and other purposes.

2.      On August 8, 2000, Coram filed a voluntary petition for relief under Chapter 11 of the United States Code §§ 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

3.      At a hearing held on February 12, 2002, the Bankruptcy Court granted two motions seeking the appointment of a Chapter 11 trustee to assume control over Coram's

property and affairs pursuant to Section 1104 of the Bankruptcy Code.  On March 7, 2002, the

Bankruptcy Court entered an order approving the appointment of Arlin M. Adams, former judge

of the United States Court of Appeals for the Third Circuit, as Chapter 11 Trustee of Coram (the

"Trustee").

       4.       At all times relevant hereto, CHC was a Delaware corporation.

       5.       CI is a Delaware corporation.

       6.       The Trustee lives and works in the Commonwealth of Pennsylvania.

       7.       Genesis is a Connecticut corporation with principal places of business in

Connecticut and is authorized to do business in Delaware.

### JURISDICTION AND VENUE

       8.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as the

action is between citizens of different states and the matter in controversy exceeds $75,000,

exclusive of interest and costs.

       9.       Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1409.

### FACTUAL ALLEGATIONS

**A.**      **The Outside Directors' Failure to Investigate**
           **and Address Crowley's Conflict of Interest.**

       10.      On December 21, 2000, the Bankruptcy Court denied confirmation of Coram's

first proposed plan of reorganization.  The Bankruptcy Court held that Coram had not proposed

its plan in good faith because its CEO, Daniel D. Crowley ("Crowley"), had an actual conflict of

interest, which he failed to disclose, due to his separate employment contract with one of

Coram's largest creditors, Cerberus Partners, L.P. ("Cerberus"), which required that Crowley

obey the instructions of Cerberus and under which Crowley was being paid almost $1 million per

year.  A true and correct copy of the Bankruptcy Court's decision is attached hereto as Exhibit A.

11.    Following denial of confirmation of the first plan, Coram's Board of Directors formed a Special Committee of independent directors, consisting of Coram's four outside directors: Donald J. Amaral; William J. Casey; L. Peter Smith; and Sandra L. Smoley (the "Outside Directors"). The Special Committee retained Harrison J. Goldin Associates, L.L.C. ("Goldin"), a financial advisory firm, as an independent restructuring advisor. Coram filed a motion to appoint Goldin on February 1, 2001, which the Bankruptcy Court approved on February 26, 2001.

12.    As approved by the Bankruptcy Court, Goldin's assignment was to advise the Special Committee regarding Crowley's relationship with Cerberus and potential revisions to the plan of reorganization that had been rejected.

13.    Goldin prepared a report of his investigation and Coram incorporated his recommendations into Coram's second proposed plan of reorganization.

14.    On December 21, 2001, the Bankruptcy Court issued a written opinion denying confirmation of the Debtors' second plan. *In re Coram Healthcare Corp.*, 271 B.R. 228 (Bankr. D. Del. 2001), a true and correct copy of the Bankruptcy Court's opinion is attached as Exhibit B. After hearing testimony concerning events since December 2000, the Bankruptcy Court concluded:

> Nothing, in fact, has changed since the first confirmation hearing. Crowley continues to receive almost $1 million a year from one of the Debtors' largest creditors, while, serving as the Debtors' CEO and President. Under his agreement with Cerberus, he is required to obey its instructions or risk having the agreement terminated and losing his $1 million. This is an actual conflict of interest, as we concluded at the first confirmation hearing.

*Id.* at *17-18.

15.    The Bankruptcy Court rejected Coram's argument that Crowley's conflict of interest had caused no harm to Coram. To that end, the Bankruptcy Court found that:

3

> there is absolutely no evidence from which the Court can conclude
> that the Debtors have suffered no harm from Crowley's continued
> conflict of interest. Mr. Goldin's assertion that there must be no
> harm since the disclosure of the relationship because no harm was
> caused by Crowley when the relationship was hidden is not logical,
> nor is it borne out by the facts. Crowley did cause harm to the
> Debtors while his relationship with Cerberus was hidden and there
> is no reason to assume he did not cause harm to the Debtors when
> that relationship was disclosed.

*Id.* at * 27.

16.    In its opinion, the Bankruptcy Court noted that one of the Outside Directors "testified that Goldin was hired to 'sprinkle holy water on the situation' and make everything all right." *Id.* at *15.

17.    The Bankruptcy Court found that the Special Committee had taken no action in response to the denial of confirmation of Coram's first plan other than hiring Goldin and reviewing his report. The Bankruptcy Court explained, "[s]ignificantly, it did not conduct any investigation of Crowley's conflict of interest, did not require that Crowley cease accepting any compensation from Cerberus and did not even ask Crowley if the conflict persisted." *Id.*

18.    The Bankruptcy Court stated that Coram "should have required that Crowley sever all agreements with Cerberus as a condition of continued employment" and concluded that the "don't ask, don't tell" approach adopted by the Special Committee did not fulfill its fiduciary duty and that the Special Committee's hiring of Goldin neither cured the conflict nor evidenced good faith. *Id.* at *29, 33.

19.    In its later opinion confirming the plan of reorganization proposed by the Trustee, the Bankruptcy Court made it clear that Crowley's conflict was the reason that Coram remained in bankruptcy:

> As we recognized at the conclusion of the first confirmation
> hearing, Crowley's consultation agreement with Cerberus created
> an actual conflict of interest that tainted the Debtors' restructuring
> of its debt, the Debtors' negotiation of a plan, and the Debtors'

4

> ultimate emergence from bankruptcy. The delay (and the
> additional expenses incurred by the Debtors inherent in that delay)
> is largely attributable to that conflict.

*In re Coram Healthcare Corp.*, 315 B.R. 321, 347-48 (Bankr. D. Del. 2004), a true and correct

copy of which is attached hereto as Exhibit C.

**B.**     **The Confirmation of the Trustee's Plan.**

20.    Shortly after the Bankruptcy Court rejected Coram's second plan of

reorganization, the Trustee was appointed.

21.    On May 1, 2003, the Trustee filed a proposed plan of reorganization that provided

for a breach of fiduciary duty lawsuit against Crowley and the Outside Directors.

22.    In accordance with the Court's order entered as of November 1, 2004, the

Bankruptcy Court confirmed the Trustee's Second Amended Plan of Reorganization (the

"Plan"), which became effective on December 1, 2004 (the "Effective Date").

**C.**     **The Trustee's D&O Action.**

23.    On December 29, 2004, in accordance with the confirmed Plan, the Trustee filed

an action in the United States District Court for the District of Delaware, Civil Action No. 04-

1565 (SLR) (the "D&O Action"), asserting that Crowley and the Outside Directors breached

their fiduciary duties to Coram. A true and correct copy of the Complaint in the D&O Action is

attached as Exhibit D.

24.    In the complaint commencing the D & O Action, the Trustee alleged that the

Outside Directors breached their fiduciary duties to Coram by, *inter alia*: (a) making no

inquiries and approving Crowley's employment as CEO without investigating Crowley's

relationship with Cerberus or learning that Crowley was receiving nearly $1 million per year

from Cerberus; (b) failing to take adequate remedial action after the Bankruptcy Court rejected

the Debtors' first plan as a result of Crowley's conflict; (c) failing to inquire as to whether Crowley continued to receive payments from Cerberus after the Bankruptcy Court denied confirmation of the first plan; and (d) hiring Goldin, not to give truly independent advice, but rather to "sprinkle holy water" on the situation.

25.     In the D&O Action, the Trustee seeks to recover more than $100 million in damages, including more than $40 million in reorganization expenses incurred by Coram after the first plan was rejected and the substantial diminution in Coram's value that resulted from the delay in its emerging from bankruptcy.

**D.     The D&O Policy Issued By Genesis.**

26.     Coram purchased from Genesis a Directors' and Officers' Liability Policy (Policy No. YXB001625A) (the "D&O Policy), which, as amended, covered the period from January 8, 1999 through January 27, 2001 (the "Policy Period") and had a discovery period for reporting claims extending until January 27, 2002 (the "Discovery Period"). The D&O Policy has an aggregate limit of liability of $25 million. A true and correct copy of the D&O Policy is attached as Exhibit E.

27.     The Outside Directors notified Genesis of the D&O Action and requested that Genesis defend their interests.  Genesis declined.

28.     Under the D&O Policy, Genesis agreed to pay:  (a) claims made during the Policy Period based on a "Wrongful Act" of Coram's officers and directors, (b) claims made during the Discovery Period based on a "Wrongful Act" of Coram's officers and directors during the policy period, (c) claims made after the Policy Period that were based on potential claims of which notice was provided during the Policy Period, and (d) claims made after the Policy Period that were based on or arising out of the same acts that were already subject to claims made during the Policy Period.

6

29.     The definition of a "Wrongful Act" under the D&O Policy includes "any actual or alleged act, omission, misstatement, misleading statement, neglect, error or breach of duty" of Coram's directors or officers in their capacity as directors or officers of Coram.  (D&O Policy § II.L.)

30.     The Trustee's claims in the D&O Action that the Outside Directors breached their fiduciary duties by, *inter alia*, failing to properly investigate Crowley's relationship with Cerberus and adopting a "don't ask, don't tell" approach to Crowley's conflict of interest constitute "Wrongful Act[s]" for which Genesis is required to provide coverage pursuant to the D&O Policy.

**E.     Genesis Was Timely Notified of the Claims in the D&O Action.**

31.     The D&O Policy requires that Genesis be given written notice as soon as practicable of any claim first made during the Policy Period or the Discovery Period and in no event later than thirty (30) days after the expiration of the Policy Period or Discovery Period. (D&O Policy § VII.A.)

32.     Genesis was timely notified of the claims in the D&O Action.

33.     The D&O Policy provides that claims based upon or arising out of similar facts or circumstances shall be considered a single claim deemed to be made when the earliest claim is filed or notice of a potential claim is given. The Policy states:

> More than one Claim based upon or arising out of the same Wrongful Act(s), or facts or circumstances or situations, or one or more series of similar, repeated or continuous Wrongful Acts, shall be considered a single Claim, and only one Retention shall be applicable to such single Claim. Such single Claim shall be deemed to be first made on the date when the earliest Claim is first made, or on the date within the Policy Period in which notice of a potential Claim pursuant to Section VII.B.is given.

(D&O Policy § V.C.)

7

34.    On November 8, 2000, Coram shareholders brought a class action suit against Crowley and the Outside Directors (and others) in the United States District Court for the District of New Jersey, alleging securities fraud and breach of fiduciary duty. *See Furst v. Feinberg, et al.*, No. 2:00-cv-5509. Coram notified Genesis of the *Furst* case during the Policy Period and Genesis agreed to defend the action.

35.    On March 21, 2001, the *Furst* plaintiffs filed a Second Amended Complaint to include specific claims against Crowley and the Outside Directors based upon Crowley's conflict. A true and correct copy of the Second Amended Complaint in *Furst* is attached as Exhibit F.

36.    Coram notified Genesis of the Second Amended Complaint during the Discovery Period. Genesis defended Crowley and the Outside Directors in *Furst*.

37.    The factual allegations in the D&O Action are virtually identical to those in the Second Amended Complaint in *Furst*:

| *FURST v. FEINBERG*<br>*Second Amended Complaint:* | *DELAWARE ACTION*<br>*The Trustee's Complaint:* |
|---|---|
| "Cerberus, acting through Feinberg, hired Crowley in August, 1989 [sic], to be a full-time employee of Cerberus with cash compensation of $1 million per year and opportunities for substantial additional bonuses." ¶ 36. | "In July 1999, Crowley and Cerberus entered into an oral agreement pursuant to which Crowley agreed to work exclusively for Cerberus for three years at a salary of $80,000 per month plus expenses and the possibility of substantial bonuses if Cerberus' investments on which Crowley had consulted were profitable." ¶ 13. |
| "As soon as Crowley was hired to work full time for Cerberus, Feinberg recommended that Coram hire Crowley as a 'consultant.'" ¶ 36. | "In August 1999, after Crowley and Cerberus had made their oral agreement, Feinberg recommended to the Board that Coram hire Crowley as a 'consultant' or 'CEO coach' to work with the newly-elevated CEO, Richard Smith." ¶ 14. |

8

| | |
|---|---|
| "Feinberg, a member of the Coram Board of Directors, did not disclose to the board the compensation terms of Crowley's employment agreement with Cerberus nor did he disclose that Crowley had agreed to work full time for Cerberus under the direction of Feinberg and that all of Crowley's benefits could be terminated by Feinberg if Crowley did not follow his instructions." ¶ 38. | "Feinberg disclosed to the Board that Crowley had a relationship with Cerberus, but provided no information about that relationship . . . [Coram's Directors] approved the retention of Crowley as a consultant to CEO Richard Smith without knowing Crowley's obligations to Cerberus, the nature of his work for Cerberus, and the terms of his compensation from Cerberus. ¶ 15. |
| "Crowley was hired by Coram for a three-year term, effective November 30, 1999, as Chairman of the Board, President and Chief Executive Officer." ¶ 40. | "On November 17, 1999, the Board approved a three-year employment agreement with Crowley, which he signed the next day." ¶ 21. |
| "On or about the same day that Crowley agreed to employment terms with Coram, Crowley and Cerberus executed a written employment agreement that reflected the earlier terms . . . and confirmed that Crowley agreed to devote 'his entire business time, attention, skill and energy exclusively' to Cerberus by performing duties to be assigned by Feinberg, in exchange for a base salary of $80,000 a month ($960,000 a year) plus the potential for Crowley to receive sizeable bonuses." ¶ 41. | "The Crowley/Cerberus Employment Agreement provides that Crowley would devote 'his entire business time, attention, skill and energy exclusively to the business of the Employer [Cerberus]' by performing duties to be assigned by Feinberg. Cerberus agreed to pay Crowley a base salary of $960,000 and the potential for bonuses. The Employment Agreement also provided that Cerberus could terminate Crowley for cause if Crowley did not follow Cerberus' reasonable instructions." ¶ 22. |
| "Neither Crowley nor Feinberg disclosed to Coram and its Board of Directors that Crowley was being paid nearly $1 million a year, plus expenses, and potential bonuses, by Cerberus." ¶ 44. | "As was the case with the oral agreement between Crowley and Cerberus, neither Crowley nor Feinberg disclosed the existence or the terms of their written agreement to the Board of Coram, and no member of the Board of Coram made any inquiry about the terms of the Crowley/Cerberus relationship." ¶ 23. |

9

| | |
|---|---|
| "Feinberg recommended to Coram's Board of Directors . . . that Coram hire Crowley's consulting company, Dynamic Health Care Solutions (Dynamic) to act as a 'consultant' to Coram." ¶ 42. | "Coram retained Crowley's wholly-owned consulting company, Dynamic Health Care Solutions, L.L.C., to act as a 'consultant' to Coram." ¶ 26. |
| [A] renegotiated agreement . . . was finalized in April 2000.  It was signed on behalf of Coram by Feinberg, who was not an officer of Coram." ¶ 60.  Feinberg arranged for Coram to bind itself to pay Crowley huge (potentially $13 million or more) incentive bonuses for one year's work." ¶ 8. | "Even though the other members of the Board had been informed that Crowley had a 'relationship' with Cerberus, they allowed Feinberg to conduct the negotiations with Crowley, made no inquiry concerning that relationship, nor made any independent review of Feinberg's negotiations with Crowley. ¶ 28.<br><br>"The Second Amendment provided a new bonus structure that was far greater than the maximum $1.9 million bonus that Crowley received under the employment agreement with Coram he had signed just four months earlier." ¶ 29. |
| "Consistent with these arrangements, Crowley used his position as Chairman and Chief Executive Officer at Coram to run Coram in a manner that benefited Cerberus and injured Coram… [Crowley] had thereby abandoned the fiduciary duties of care, loyalty and good faith which he owed to Coram." ¶ 9. | "Crowley, as an officer and director, owed Coram fiduciary duties of care, loyalty, disclosure, and good faith, including the duty to disclose actual and potential conflicts of interest.  As found by the Bankruptcy Court, Crowley breached those duties." ¶ 49. |

| | |
|---|---|
| "The Officer and Director Defendants had a fiduciary duty to act in the best interests of the Plaintiffs and the Class, in connection with all activities relating to Coram common stock, and in connection with the activities of Coram under their supervision and control." ¶ 87.<br><br>"Defendants breached their fiduciary duties to the Plaintiffs and the Class by working instead to orchestrate the scheme of fraud described herein . . . ." ¶ 90. | "The conduct of the outside directors, individually and as the Special Committee, was an egregious breach of their fiduciary duties and was consciously indifferent to the foreseeable results of the breach." ¶ 66. |

38.     Since the D&O Action and *Furst* are based upon and arise out of the same facts and circumstances, the D&O Action and the Second Amended Complaint in *Furst* constitute a single claim that was deemed to be first made within the Discovery Period based upon conduct occurring during the Policy Period, rendering notice timely under the D&O Policy.

39.     On February 6, 2001, during the Discovery Period, the Official Committee of Equity Security Holders in the Coram bankruptcy (the "Equity Committee") filed a motion seeking leave to file a derivative suit against Crowley and others based upon the Bankruptcy Court's finding that Crowley had a conflict. Coram provided notice of the motion to Genesis on or about February 20, 2001, during the Discovery Period.

40.     On December 28, 2001, the Equity Committee filed a renewed motion for leave to file a derivative claim against Crowley and the Outside Directors. Coram notified Genesis of the renewed motion on January 24, 2002, within the Discovery Period.

41.     Since the D&O Action and the Equity Committee's motions are both grounded in Crowley's conflict and the Outside Directors' failure to address that conflict, notice of the Delaware Action is deemed to have been made within the Discovery Period when Genesis received notice of the motions.

11

42.     The D&O Policy contains the following provision regarding notice of potential

claims:

> [i]f, prior to the effective date of the expiration of the Policy
> Period, the Directors, Officers or the Company first become aware
> of circumstances which may substantially give rise to a Claim, and
> the Directors, Officers or the Company as soon as practicable
> during the Policy Period give written notice to the insurer of the
> circumstances and the reasons for anticipating a Claim, then any
> Claim subsequently made based upon such circumstances… shall
> be deemed for the purposes of this Policy to have been first made
> during the Policy Period.

(D&O Policy § VII.B.)

43.     By letter from Coram's general counsel, David Schwab, to Genesis dated January

24, 2001 (during the Policy Period), Coram reported the Bankruptcy Court's finding that

Crowley had an actual conflict and advised Genesis that the Outside Directors faced potential

claims for breach of fiduciary duty arising out of Crowley's conflict as a result of the Outside

Directors' failure to inquire about or limit that conflict.  In section 7 of the letter, Coram

informed Genesis that:

> the Equity Committee in the Chapter 11 alleged that the Debtors
> failed to disclose fully to the creditors in the Disclosure Statement
> all of [sic] financial relationships that existed between Mr.
> Crowley and Cerberus Partners. In addition, certain portions of the
> transcript of the December 21, 2000 hearing in the Bankruptcy
> Court raise the implication that the officers and directors of the
> Debtors may have been negligent in failing to obtain such
> information from Mr. Crowley upon his employment with the
> organization and later in connection with their consideration of
> filing of the bankruptcy petitions. With this information, a
> stockholder or creditor of the Debtors may attempt to assert some
> sort of securities fraud, breach of fiduciary duty, negligence or
> other claim directly or derivatively against the Insureds for the
> failure to disclose this relationship, inquire about it, limit it or
> otherwise take notice of these facts in the operation of the
> organization or the filing of the bankruptcy petitions and the
> formulation and negotiation of the plan of reorganization that was
> proposed in the bankruptcy proceedings.

A true and correct copy of Mr. Schwab's January 24, 2001 letter is attached as Exhibit G.

44.     The transcript of the Bankruptcy Court's December 21, 2000 decision was attached to Mr. Schwab's letter and Genesis acknowledged receipt of the letter.

45.     Because the Delaware Action is based upon and arises out of the same facts and circumstances as the notice of provided in the January 24, 2001 letter, the Trustee's claim is deemed for the purposes of the D&O Policy to have first been made during the Policy Period.

**F.    The Settlement of the Trustee's Claims Against the Outside Directors in the D&O Action.**

46.     Under the D&O Policy, Genesis agreed to pay on behalf of Coram's directors or officers any "Loss" arising from claims first made during the policy or discovery period based on a "Wrongful Act" of Coram's directors or officers. (D&O Policy § I.A.)

47.     On or about April 5, 2006, after protracted negotiations, the Trustee and the Outside Directors entered into a written agreement settling the claims against the Outside Directors asserted in the D&O Action, subject to the approval of the Bankruptcy Court (the "Settlement Agreement"). Pursuant to the Settlement Agreement: (a) judgment shall be entered against the Outside Directors in the amount of $9.55 million; and (b) the Outside Directors shall assign all of their rights against Genesis to the Trustee. A true and correct copy of the Settlement Agreement is attached hereto as Exhibit H.

48.     The settlement amount is reasonable in view of the amount of the damages the Trustee intends to assert in the D&O Action, including hard dollar reorganization costs of in excess of $40 million and expert testimony that Coram's remaining in bankruptcy caused a substantial decline in its value.

49.     On April 24, 2006, after notice to all parties in interest, including Genesis, the Bankruptcy Court approved the Settlement Agreement, finding that the settlement was fair and reasonable. A true and correct copy of the Order approving the settlement is attached hereto as Exhibit I.

50.    Despite repeated requests by the Outside Directors, Genesis, having abandoned its insureds by refusing to defend them, then refused to engage in meaningful settlement negotiations with the Trustee on their behalf.

## FIRST COUNT
### (Breach of Insurance Contract)

51.    The Trustee repeats the allegations contained in paragraphs 1 through 50 as if set forth at length herein.

52.    Section VI.A. of the D&O Policy provides that Coram's directors and officers may not settle any claim without the prior written consent of Genesis, "which consent shall not be unreasonably withheld."

53.    Genesis unreasonably withheld its consent to the settlement.

54.    By abandoning its insureds, Genesis is not entitled to rely upon the consent to settlement clause of the D&O Policy.

55.    The settlement is a fair and reasonable compromise of the Trustee's claims against the Outside Directors and was the product of extensive negotiations by experienced counsel.

56.    Counsel for the Outside Directors kept Genesis contemporaneously advised of the progress of the negotiations and time and time again invited Genesis to participate, but Genesis rejected his requests out of hand.

57.    The Trustee's claims in the D&O Action that the Outside Directors breached their fiduciary duties constitute "Wrongful Act[s]" for which Genesis is required to provide coverage pursuant to the D&O Policy.

58.    Genesis' refusal to pay the settlement on behalf of the Outside Directors constitutes a breach of its obligations under the D&O Policy.

14

WHEREFORE, the Trustee demands that judgment be entered against Genesis in

the amount of $9,550,000.00, together with interest, attorneys' fees, costs of suit and that he be

granted such other and further relief as the Court deems just and equitable.


Dated: May 31, 2006                          SCHNADER HARRISON SEGAL
                                                 & LEWIS LLP


                                        By
                                          Richard A. Barkasy (#4683)
                                          Michael J. Barrie (#4684)
                                          824 Market Street Mall, Suite 1001
                                          Wilmington, DE  19801
                                          (302) 888-4554 (telephone)
                                          (302) 888-1696 (telecopier)


Barry E. Bressler, Esq.
Wilbur L. Kipnes, Esq.
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA  19103-7286
(215) 751-2000 (telephone)
(215) 751-2205 (telecopier)
                            Of Counsel.

EXHIBIT 11

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-00335-WDM-PAC

GENESIS INSURANCE COMPANY,

       Plaintiff,

   v.

DANIEL D. CROWLEY, and
ARLIN M. ADAMS, Chapter 11 Trustee of the
Bankruptcy Estates of Coram Healthcare
Corporation and Coram, Inc.,

       Defendants.

---

**MOTION OF ARLIN M. ADAMS, CHAPTER 11 TRUSTEE OF THE
BANKRUPTCY ESTATES OF CORAM HEALTHCARE CORPORATION
AND CORAM, INC. FOR CHANGE OF VENUE TO THE DISTRICT OF
DELAWARE PURSUANT TO D.C. COLO.LCivR. 7.1(A)**

---

For the reasons set forth in the accompanying memorandum of law and the

declarations of Barry E. Bressler and Boris Feldman, Arlin M. Adams, Trustee (the "Trustee") of

the bankruptcy estates of Coram Healthcare Corporation and Coram, Inc. (collectively,

"Coram"), respectfully moves this Court to enter an changing venue of this case to the District of

Delaware.

Pursuant to D.C.COLO.LCivR 7.1(F), a proposed order is attached hereto.

CHDATA 35990_1

## RULE 7.1A CERTIFICATION

Pursuant to D.C.COLO.LCivR 7.1(A), undersigned counsel for the Trustee hereby certifies that counsel for the Trustee has attempted in good faith to resolve this matter by conferring with counsel for the other parties. Defendant, Daniel D. Crowley, does not oppose this Motion. Plaintiff, Genesis Insurance Company, and third-party defendant, National Union Fire Insurance Company of Pittsburgh, Pa., do not consent to this Motion.

Respectfully submitted this 30th day of June, 2006.

/s/ Michael J. Hofmann
Matthew J. Rita
Michael J. Hofmann
HOLME ROBERTS & OWEN LLP
1700 Lincoln Street, Suite 4100
Denver, Colorado 80203
Telephone: 303-866-0536
Facsimile: 303-866-0200
Email: matt.rita@hro.com
Email: michael.hofmann@hro.com
**D.C. Box No. 07**

Wilbur L. Kipnes
Barry E. Bressler
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103-7286
Telephone: 215-751-2000
Facsimile: 215-751-2205
Email: wkipnes@schnader.com
         bbressler@schnader.com

2

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of June, 2006, I electronically filed the (i) MOTION OF ARLIN M. ADAMS, CHAPTER 11 TRUSTEE OF THE BANKRUPTCY ESTATES OF CORAM HEALTHCARE CORP. AND CORAM, INC., FOR CHANGE OF VENUE TO THE DISTRICT OF DELAWARE, (ii) MEMORANDUM IN SUPPORT OF ARLIN M. ADAMS, CHAPTER 11 TRUSTEE OF THE BANKRUPTCY ESTATES OF CORAM HEALTHCARE CORPORATION AND CORAM, INC. FOR CHANGE OF VENUE TO THE DISTRICT OF DELAWARE, (iii) DECLARATION OF BARRY E. BRESSLER IN SUPPORT OF MOTION OF ARLIN M. ADAMS, CHAPTER 11 TRUSTEE OF THE BANKRUPTCY ESTATES OF CORAM HEALTHCARE CORP. AND CORAM, INC., FOR CHANGE OF VENUE TO THE DISTRICT OF DELAWARE, and (iv) DECLARATION OF BORIS FELDMAN with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following attorneys of record at the listed email addresses:

Daniel James Standish, Esq.
Jason P. Cronic, Esq.
Paul Albert Dame, Esq.
Wiley, Rein & Fielding, LLP
1776 K Street, N.W.
Washington, DC 20006
dstandish@wrf.com
jcronic@wrf.com
pdame@wrf.com

Leanne B. De Vos, Esq.
Doran Lee Matzke, Esq.
Sherman & Howard, L.L.C.- Denver
United States District Court Box 12
633 Seventeenth Street, #3000
Denver, CO 80202
ldevos@sah.com
dmatzke@sah.com

Janet Stansberry Drake, Esq.
Stanley L. Garnett, Esq.
Brownstein, Hyatt & Farber, P.C.
410 17th Street, #2200
Denver, CO 80202-4437
jsdrake@bhf-law.com
sgarnett@bhf-law.com

Bruce A. Featherstone, Esq.
Featherstone DeSisto LLP
600 Seventeenth Street, #2400
Denver, CO 80202
bfeatherstone@featherstonelaw.com

William Lee Senter, Esq.
Senter, Goldfarb & Rice, LLC
1700 Broadway, #1700
Denver, CO 80290
wsenter@sgrllc.com

/s/ Jackie DeLay
HOLME ROBERTS & OWEN LLP
1700 Lincoln Street, Suite 4100
Denver, CO 80203
Telephone: 303-866-0650
Email: jackie.delay@hro.com

CHDATA 35990_1

EXHIBIT 12

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Magistrate Judge Patricia A. Coan**

Civil Action No.  05-cv-00335-WDM-PAC          **FTR - PAC COURTROOM A-501**

**Date:** May 24, 2006          **Deputy Clerk:** Ben Van Dyke

GENESIS INSURANCE COMPANY,          Jason P. Cronic
a Connecticut corporation,          Leanne B. De Vos

          Plaintiff/Counterclaim Defendant,

v.

DANIEL D. CROWLEY,          Janet S. Drake

          Defendant/Third-Party Plaintiff,

DONALD J. AMARAL,          Frank C. Porada
WILLIAM J. CASEY,          Matthew J.  Rita
L. PETER SMITH, and
SANDRA L. SMOLEY,

          Defendants/Counterclaimants,

v.

NATIONAL UNION FIRE INSURANCE COMPANY,          William L. Senter

          Third-Party Defendant.

---

**COURTROOM MINUTES / MINUTE ORDER**

**Scheduling/Status Conference**

**8:35 a.m.          Court in session.**

Court calls case.  Appearances of counsel.

**ORDERED:    Parties will file a deposition schedule by June 30, 2006.**

<u>DEADLINES</u>:

Joinder of Parties/Amendment to Pleadings: July 10, 2006.

**Civil Action No. 05-cv-00335-WDM-PAC**
**Date: May 24, 2006**

Fact and Expert Discovery Deadline: September 15, 2006.

Dispositive Motions Deadline: October 2, 2006.

28 U.S.C. § 636(c) [Consent to a Magistrate Judge] deadline: September 25, 2006.

Parties with an affirmative position Rule 26(a)(2) Information: July 14, 2006.

Responsive Rule 26(a)(2) Information: August 14, 2006.

Rebuttal Rule 26(a)(2) Information: September 1, 2006.

Written discovery is to be served by June 5, 2006.

Responses to written discovery are due by July 3, 2006.

Daniel Crowley shall be limited to 35 Requests for Production of Documents, total including subparts. The total includes Requests for Production of Documents previously served.

The outside directors shall be limited to 35 Requests for Production of Documents, total including subparts. The total includes Requests for Production of Documents previously served.

National Union Fire Insurance Company shall be limited to 35 Requests for Production of Documents, total including subparts.

Plaintiff shall be limited to 70 Requests for Production of Documents, total including subparts. The total includes Requests for Production of Documents previously served.

The settlement conference set for October 26, 2006 at 1:30 p.m. remains set.

**FINAL PRETRIAL CONFERENCE** set for December 21, 2006 is vacated and reset for **February 14, 2007 at 8:30 a.m.,** in Courtroom A-501, of the Alfred A. Arraj Courthouse.

A Proposed Final Pretrial Order is due no later than five days before the final pretrial conference. Judge Miller's procedures and proposed Order format can be downloaded from the Court's website at www.co.uscourts.gov .

**ORDERED:    Parties will file a second amended scheduling order by May 31, 2006.**

**ORDERED:    Parties are directed to www.cod.uscourts.gov and shall fully comply with the procedures of the judicial officer assigned to try this case on the merits.**

**9:10 a.m.       Court in recess.**

Total time in court:    35 minutes.

Hearing concluded.

# EXHIBIT 13

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.  05-CV-00335-WDM- PAC

GENESIS INSURANCE COMPANY,

        Plaintiff and Counter Defendant,

v.

DANIEL D. CROWLEY,

        Defendant and Third-Party Plaintiff,

and

ARLIN M. ADAMS,
Chapter 11 Trustee of the Bankruptcy Estates of
Coram Healthcare Corporation and Coram, Inc.,

        Defendant and Counterclaimant.

NATIONAL UNION FIRE INSURANCE COMPANY
COMPANY OF PITTSBURGH, PA,

        Third-Party Defendant.

---

## [PROPOSED] DEPOSITION SCHEDULE

---

    Pursuant to this Court's May 24, 2006, Minute Order, the parties provide the following

proposed deposition schedule, consistent with the existing scheduling order entered in this case:

| *Name of Deponent* | *Date of Deposition* | *Length* |
|---|---|---|
| Daniel D. Crowley | The deposition of Mr. Crowley will proceed between July 15 and the September 15 Discovery Cut-Off. | Mr. Crowley's deposition is anticipated to be completed in 7 hours or less, consistent with Fed. R. Civ. Pro. 30(d). |
| Donald J. Amaral<br><br>William J. Casey<br><br>L. Peter Smith<br><br>Sandra L. Smoley | Depositions of Defendants Amaral, Case, Smith and Smoley will proceed between July 15 and the September 15 Discovery Cut-Off. | All depositions are anticipated to be completed in 7 hours or less, consistent with Fed. R. Civ. Pro. 30(d). |
| Arlin M. Adams, Chapter 11 Trustee of the Bankruptcy Estates of Coram Healthcare and Coram, Inc. | His health permitting, the deposition of Mr. Adams will proceed between September 1 and the September 15 Discovery Cut-Off. | The Trustee's deposition is anticipated to be completed in 7 hours or less, consistent with Fed. R. Civ. Pro. 30(d). |
| Genesis 30(b)(6) Designee<br><br>and<br><br>Michael B. Zartman, Martin G. Hacala, Michael McFadden, and Mark Eastman | The Genesis deposition(s) will proceed between the between July 15 and the September 15 Discovery Cut-Off.<br><br>The Trustee's counsel have indicated an interest in taking the depositions of Messrs. Zartman, Hakala, McFadden, and Eastman. The identification of those individuals as possible deponents is without prejudice to Genesis's objection to the taking of those depositions or Genesis's position that some or all are non-parties. | Genesis's deposition is anticipated to be completed in 7 hours or less, consistent with Fed. R. Civ. Pro. 30(d). |

| National Union 30(b)(6) Designee | National Union's 30(b)(6) deposition(s) will proceed between the July 15 and the September 15 Discovery Cut-Off. | National Union's deposition is anticipated to be completed in 7 hours or less, consistent with Fed. R. Civ. Pro. 30(d). |
|---|---|---|
| Non-Parties | The parties agree to work together to schedule non-party depositions at a mutually convenient time between July 15 and the September 15 Discovery Cut-Off | Each non-party deposition is anticipated to be completed in 7 hours or less, consistent with Fed. R. Civ. P. 30(d). |

Counsel have conferred regarding potential dates and locations for the various

depositions.  Counsel are in the process of working with the witnesses to set specific deposition

dates.


_____s/_____
Lewis K. Loss
Thomas J. Judge
Thompson, Loss & Judge, LLP
1919 Pennsylvania Avenue, N.W.
Suite M-200
Washington, D.C.  20006-3458
(202) 772-5170
(202) 772-5180 (facsimile)

Leanne De Vos
Sherman & Howard, LLC
Attorneys & Counselors at Law
633 Seventeenth Street, Suite 300
Denver, Colorado  80202
(303) 299-8418
(303) 298-0940 (facsimile)

*Attorneys for Plaintiff and Counterclaim
Defendant Genesis Insurance Company*

_____s/_____
Matthew J. Rita
Holme Roberts & Owen LLP
1700 Lincoln, Suite 4100
Denver, Colorado 80203
Telephone: 303-866-0536
Facsimile: 303-866-0200

Barry E. Bressler
Wilbur L. Kipnes
Schnader Harrison Segal & Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103-7286

*Attorneys for Defendant and Counterclaim
Plaintiff Arlin M. Adams, Chapter 11 Trustee
of the Bankruptcy Estates of Coram Healthcare
Corporation and Coram, Inc.*

3

_____s/_____
Stanley L Garnett
Meghan Frei Berglind
Brownstein Hyatt & Farber, P.C.
410 Seventeenth Street
Twenty-Second Floor
Denver, CO 80202-4437
(303) 223-1100
(303) 223-1111 (facsimile)

OF COUNSEL:

Elliot Peters
Laurie Carr Mims
Keker & Van Nest LLP
710 Sansome Street
San Francisco, CA  94111

*Attorneys for Defendant Daniel D. Crowley*

_____s/_____
William L. Senter
Senter Goldfarb & Rice L.L.C.
1700 Broadway, Suite 1700
Denver, CO 80290
(303) 320-0509
(303) 320-0210 (facsimile)

*Attorney for Third-Party Defendant National*
*Union Fire Insurance Company*

4