IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| ARLIN M. ADAMS, as Chapter 11 Trustee of the Bankruptcy Estates of Coram Healthcare Corp. and Coram, Inc. and not individually, | ) ) ) ) ) ) |  |
| Plaintiff, | ) ) |  |
| v. | ) ) | Civil Action No. 1:06-cv-00364-SLR |
| GENESIS INSURANCE COMPANY, | ) ) | JURY TRIAL DEMANDED |
| Defendant. | ) ) ) |  |

---

**BRIEF IN OPPOSITION TO GENESIS INSURANCE COMPANY'S
MOTION TO DISMISS OR STAY**

---

Richard A. Barkasy (#4683)
Michael J. Barrie (#4684)
SCHNADER HARRISON SEGAL
& LEWIS LLP
824 N. Market Street, Suite 1001
Wilmington, DE 19801
Telephone: (302) 888-4554
Facsimile: (302) 888-1696

Barry E. Bressler
Wilber L. Kipnes
SCHNADER HARRISON SEGAL
& LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA, 19103-7286
Telephone: (215) 751-2000
Facsimile: (215) 751-2205

*Of Counsel*

*Attorneys for Plaintiff,
Arlin M. Adams, as Chapter 11 Trustee of the
Bankruptcy Estates of Coram Healthcare Corporation
and Coram, Inc.*

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

PROCEDURAL HISTORY AND BACKGROUND.........................................................2

    A.    The Rejection of Coram's First Plan by the Delaware
        Bankruptcy Court...........................................................................2

    B.    The Debtor's Second Failed Plan ................................................3

    C.    The Confirmation of the Trustee's Plan......................................4

    D.    The Trustee's Claims Against the Outside Directors
        in the Delaware D&O Action. ......................................................5

    E.    The Genesis Directors' and Officers' Liability Insurance Policy...............5

    F.    Genesis' Declaratory Judgment Action in Colorado. ................ 6

    G.    The Trustee's Settlement with the Outside Directors. ...............7

    H.    The Trustee's Action Against Genesis to Recover the
        $9.55 Million Settlement Amount. ..............................................8

    I.    The Substitution of the Trustee as a Party in the
        Colorado Case in Place of the Outside Directors........................8

ARGUMENT ......................................................................................................................9

    A.    The First-Filed Rule is Not Applicable Because the
        Trustee's Claims in this Case Are Not Part of the Colorado Action. ..........9

    B.    Even Assuming Arguendo that the First-Filed Rule was Applicable,
        it Should Not Be Followed Under the Circumstances of This Case. ........15

        1.    The Outside Directors' Filed the Colorado Action
            To Prevent the Outside Directors from Filing Their
            Own Case in Delaware. ...............................................15

C.    Alternatively, the Court Should Stay this Case Pending
Disposition of Genesis' Claims Against the Outside Director
in the Colorado Action.................................................................................19

CONCLUSION...........................................................................................................20

CHDATA 36588_1

## TABLE OF AUTHORITIES

*APV North America, Inc. v. Sig Simonazzi North America, Inc.*,
    295 F. Supp. 2d 393 (D. Del. 2002) ................................................................ 10-11

*Burlington N. R. Co. v. Strong*, 907 F.2d 707 (7th Cir. 1990) .........................................14

*Cap Gemini Ernst & Young U.S., LLC v. Arentowicz*,
    No. 04-0299, 2004 U.S. Dist. LEXIS 11337 (S.D.N.Y.  June 23, 2004)  ..............10

*Chubb & Son, Inc. v. Kimes*,
    No. 92-363, 1992 U.S. Dist. LEXIS 4703 (D.N.J. Apr. 6, 1992)...........................11

*Church of Scientology v. U.S. Dep't. of Army*, 611 F2d 738 (9th Cir. 1979)  ..................16

*Commercial Union Ins. Cos. v. Torbaty,* 955 F. Supp. 1162 (E.D. Mo. 1997) ................15

*Computer Assoc. Int'l v. Altai, Inc.*, 893 F. 2d 26 (2d Cir. 1990).......................................9

*Congress Credit Corp. v. A.J.C. Int'l, Inc.*, 42 F.3d 686 (1st Cir. 1994)............................9

*Continental Ins. Cos. v. Wickes Cos., Inc.*
    No. 90-8215, 1991 U.S. Dist. LEXIS 12426 (S.D.N.Y. Sept. 6, 1991) .................16

*Daugherty v. Allstate Ins. Co.*, 55 P.3d 224 (Colo. App. 2002) ........................................12

*Drugstore-Direct, Inc. v. Cartier Div. of Richemont N. Am., Inc.*,
    350 F. Supp. 2d 620 (E.D. Pa. 2004) ............................................................. 16-17

*EEOC v. University of Pennsylvania*, 850 F.2d 969 (3d Cir. 1988) ...................... 9, 15-16

*Employers' Ins. of Wausau v. News Corp.*,
    No. 06-1602, 2006 U.S. Dist. LEXIS 51335 (S.D.N.Y. July 27, 2006)..................16

*Envirometrics Software, Inc. v. Georgia-Pacific Corp.*,
    No. 97-243, 1997 U.S. Dist. LEXIS 17659 (D. Del. Nov. 4, 1997).......................15

*Flatiron Paving Co. v. Southwest Fire Ins. Co.,* 812 P.2d 668 (Colo. App. 1990) ...........12

*FMC Corp. v. AMVAC Chem. Corp.,* 379 F. Supp. 2d 733 (E.D. Pa. 2005).............. 15-17

*Hunt Mfg Co. v. Fiskars Oy Ab*,
    No. 97-2460, 1997 U.S. Dist. LEXIS 15457 (E.D. Pa. Sept. 30, 1997).................17

*Imperial Casualty & Indemnity Co. v. Town of Ayer*,
    139 F.R.D. 569 (D. Mass. 1991).........................................................................14

CHDATA 36588_1

*In re Coram Healthcare Corp.,* 271 B.R. 228 (Bankr. D. Del. 2001) ............................ 3-4

*In re Coram Healthcare Corp.*, 315 B.R. 321 (Bankr. D. Del. 2004) ................................4

*Maertin v. Armstrong World Indus., Inc*., 241 F. Supp. 2d 434 (D.N.J. 2002) ...................9

*Northwest Airlines, Inc. v. American Airlines, Inc*., 989 F. 2d 1002 (8th Cir. 1993) ........15

*Optical Recording Corp. v. Capitol-EMI Music, Inc.,*
    803 F. Supp. 971 (D. Del. 1992)...........................................................................17

*Peoples Mortgage Corp. v. Kansas Bankers Surety Trust Co.,*
    No. 01-2414, 2002 U.S. D. Lexis 684 (D. Kan. Jan. 9, 2002) ............................12

*Smith v. SEC,* 129 F.3d 356 (6th Cir. 1997) .......................................................................9

*Thermal Dynamics Corp. v. Union Carbide Corp.,*
    214 F. Supp. 773 (S.D.N.Y. 1963) .......................................................................9

CHDATA 36588_1

## <u>INTRODUCTION</u>

On December 29, 2004, Arlin M. Adams, as Chapter 11 Trustee (the "Trustee") of the bankruptcy estates of Coram Healthcare Corp. ("CHC") and Coram, Inc. ("CI," and together with CHC, "Coram") brought a lawsuit in this Court against Coram's former CEO and former outside directors (the "Outside Directors"), C.A. No. 04-1565(SLR), asserting that they breached their fiduciary duties to Coram (the "D&O Action"). On April 5, 2006, he settled the D&O Action with the Outside Directors for $9.55 million, subject to approval by the United States Bankruptcy Court for the District of Delaware, which he obtained on April 25, 2006. (The D&O Action continues against Daniel Crowley ("Crowley"), the former CEO.) Pursuant to the settlement agreement approved by the Bankruptcy Court (1) judgment in the D&O Action was entered in favor of the Trustee and against the Outside Directors, and (2) the Outside Directors assigned to the Trustee all of their rights against Genesis Insurance Company ("Genesis"). Genesis refused to pay the settlement and the Trustee instituted this action on May 31, 2006. The Trustee sues as a judgment creditor seeking to execute on an asset of the judgment debtors - the Genesis D&O policy.

Genesis contends that a declaratory judgment action it started on February 23, 2005, some 14 months before the Trustee settled with the Outside Directors, in which it sought a declaration that the D&O policy did not cover the Outside Directors (and former CEO) against the Trustee's claims in the D&O Action, is identical to this case. Genesis asks this Court to dismiss the case on the basis of the "first-filed" rule.

The "first-filed" rule does not apply because the two cases are not identical. In order to recover the settlement amount from Genesis, the Trustee must show that (1) the D&O policy covers the claims against the Outside Directors in the D&O Action, and (2) Genesis unreasonably refused to consent to the settlement. It is true that the first issue is the subject of the Colorado declaratory judgment action but the second issue plainly is not. The Trustee has moved to transfer the Colorado case to this Court, which Genesis opposes. That motion is pending. But even if the Colorado court retains jurisdiction over the coverage issues, this Court should decide the reasonableness of the Trustee's settlement of a case pending in this Court based on claims that the Outside Directors breached their fiduciary duties under Delaware law to a Delaware corporation.

## PROCEDURAL HISTORY AND BACKGROUND

A.    **The Rejection of Coram's First Plan by the Delaware Bankruptcy Court.**

On August 8, 2000 (the "Petition Date"), CHC and CI, both Delaware corporations, filed voluntary petitions for relief in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") under Chapter 11 of Title 11 of the United States Code §§ 101, *et seq.* (the "Bankruptcy Code"). On December 21, 2000, after an extensive confirmation hearing, Chief Judge Mary F. Walrath denied confirmation of the Debtors' first proposed plan of reorganization (the "First Plan"), finding that Crowley had an actual conflict of interest because of his separate employment contract with one of Coram's largest creditors, Cerberus Partners, L.P. ("Cerberus"). That employment agreement, under which Crowley received compensation of $1 million per year, required Crowley to obey Cerberus' instructions.

CHDATA 36588_1

Consequently, the Bankruptcy Court found that Coram had not proposed the First Plan in good faith, a requirement of plan confirmation under the Bankruptcy Code.  A true and correct copy of the transcript of the Bankruptcy Court's decision is annexed as Exhibit A.

**B.    The Debtor's Second Failed Plan.**

Following the failed First Plan, Coram's Board of Directors formed a special committee of independent directors, consisting solely of the Outside Directors (the "Special Committee").  With Bankruptcy Court approval, the Special Committee retained the financial advisory firm Harrison J. Goldin Associates, L.L.C. ("Goldin") as an independent restructuring advisor to advise it in connection with Crowley's relationship with Cerberus and potential revisions to the rejected First Plan.  Goldin issued a report containing recommendations for a modified plan, which Coram adopted and incorporated into a second proposed plan of reorganization (the "Second Plan").

On December 21, 2001, following another protracted confirmation hearing, the Bankruptcy Court rejected the Second Plan.  Issuing a written opinion, *In re Coram Healthcare Corp.,* 271 B.R. 228 (Bankr. D. Del. 2001) (a true and correct copy of which is annexed as Exhibit B), Chief Judge Walrath concluded:

> Nothing, in fact, has changed since the first confirmation hearing.  Crowley continues to receive almost $1 million a year from one of the Debtors' largest creditors, while, serving as the Debtors' CEO and President.  Under his agreement with Cerberus, he is required to obey its instructions or risk having the agreement terminated and losing his $1 million.  This is an actual conflict of interest, as we concluded at the first confirmation hearing.

*Id* at 235.

CHDATA 36588_1

Chief Judge Walrath found that the Special Committee had taken no action in the wake of the rejection of the First Plan, other than hiring Goldin and reviewing his report. "Significantly, it did not conduct any investigation of Crowley's conflict of interest, did not require that Crowley cease accepting any compensation from Cerberus and did not even ask Crowley if the conflict persisted." *Id* at 234. At the very least, Coram "should have required that Crowley sever all agreements with Cerberus as a condition of continued employment." *Id* at 238. After noting the testimony of one of the Outside Directors that "Goldin was hired to 'sprinkle holy water on the situation' and make everything all right," *id* at 235, Chief Judge Walrath concluded that the "don't ask, don't tell" approach adopted by the Special Committee did not fulfill its fiduciary duty, *id* at 238, and that the Special Committee's hiring of Goldin neither cured the conflict nor evidenced good faith. *Id* at 240.

**C.**     **The Confirmation of the Trustee's Plan.**

On May 2, 2003, the Trustee filed a proposed plan of reorganization that provided for, among other things, his prosecution of a breach of fiduciary duty action against Crowley and the Outside Directors for the benefit of Coram's unsecured creditors and CHC's former common shareholders. Following a third lengthy confirmation hearing, the Bankruptcy Court confirmed the Trustee's Second Amended Plan of Reorganization (the "Trustee's Plan"), which became effective on December 1, 2004 (the "Effective Date"). *See In re Coram Healthcare Corp.*, 315 B.R. 321 (Bankr. D. Del. 2004), a true and correct copy of which is attached as Exhibit C. This Court denied the Official Committee of Equity Security Holders' request for a stay of the confirmation

4

order by Order entered on November 30, 2004 and the United States Court of Appeals for the Third Circuit affirmed by Order dated December 14, 2004.

**D.    The Trustee's Claims Against the Outside
        Directors in the D&O Action.**

In his Complaint in the D&O Action, the Trustee alleged that the Outside Directors breached their fiduciary duties by, *inter alia*:  (a) making no inquiries and approving Crowley's employment as CEO without investigating Crowley's relationship with Cerberus or learning that Crowley was receiving nearly $1 million per year from Cerberus; (b) failing to take adequate remedial action after Coram's First Plan was rejected as a result of Crowley's conflict; (c) failing to inquire as to whether Crowley continued to receive payments from Cerberus after confirmation of the first plan was denied; and (d) hiring Goldin, not to give truly independent advice, but rather to "sprinkle holy water" on the situation.  A true and correct copy of the Complaint in the D&O Action is attached as Exhibit D.

The Trustee seeks a recovery of more than $100 million in damages, consisting of the more than $40 million in additional reorganization expenses Coram incurred after the rejection of the First Plan and the substantial diminution in Coram's value resulting from the delay in emerging from bankruptcy.

**E.    The Genesis Directors' and Officers'
        Liability Insurance Policy.**

Coram purchased from Genesis a Directors' and Officers' Liability Policy (Policy No. YXB001625A) (the "Policy"), which, as amended, covered the period from

January 8, 1999 through January 27, 2001, with a discovery period for reporting claims extending until January 27, 2002.  Under the Policy, Genesis agreed to pay (a) claims made during the policy period based on wrongful acts of Coram's officers and directors, (b) claims made during the discovery period based on wrongful acts of Coram's officers and directors during the policy period, (c) claims made after the policy period that were based on potential claims of which notice was provided during the policy period, and (d) claims made after the policy period that were based on or arising out of the same acts that were already subject to claims made during the policy period.  The Policy has an aggregate limit of liability of $25 million.[1]

**F.**    **Genesis' Declaratory Judgment Action in Colorado.**

The Outside Directors promptly notified Genesis of the D&O Action and asked Genesis to defend them.  On February 23, 2005, immediately *before* it notified the Outside Directors that it was denying coverage, Genesis commenced an action in the District of Colorado seeking a declaratory judgment that the Policy does not provide coverage for the claims the Trustee asserted in the D&O Action (the "Colorado Action").  A true and correct copy of the complaint in the Colorado Action is attached as Exhibit E.  Later that day, Genesis sent counsel for the Outside Directors and Crowley a letter (1) rejecting their request that Genesis provide a defense; and (2) requesting that counsel accept service of the Complaint.  (A true and correct copy of the February 23, 2005 letter from Jason Cronic, Esquire to Boris Feldman, Esquire and Anthony C. Valiulis, Esquire is attached as Exhibit F.)

---

[1] There are also excess policies available bringing the aggregate D&O Insurance possibly available to $100 million.

G.    __The Trustee's Settlement with the Outside Directors.__

The Trustee, Genesis, Crowley and the Outside Directors agreed to conduct a joint mediation of the D&O Action and the Colorado Action before a private mediator.  The mediation, which was held in Washington, D.C. on December 5 and December 6, 2005, did not result in a settlement.

Despite repeated requests by counsel for the Outside Directors, Genesis refused to engage in meaningful settlement discussions with the Trustee, while simultaneously leaving the Outside Directors to fend for themselves in defending the Colorado Action and the D&O Action.  Following extensive negotiations, on April 5, 2006, the Trustee and the Outside Directors entered into a written settlement agreement (the "Settlement Agreement"), subject to approval by the Bankruptcy Court.  Pursuant to the terms of the Settlement Agreement: (a) judgment would be entered against the Outside Directors in the amount of $9.55 million; and (b) the Outside Directors would assign all of their rights against Genesis to the Trustee.  A true and correct copy of the Settlement Agreement is attached as Exhibit G.  On April 24, 2006, after notice to all parties-in-interest, including Genesis and its Washington, D.C. counsel, and an opportunity for a hearing, Chief Judge Walrath entered an order approving the Settlement Agreement, finding that the settlement was "fair" and "reasonable."  A true and correct copy of the Bankruptcy Court's order approving the settlement is attached as Exhibit H.

Following approval of the Settlement Agreement by the Bankruptcy Court, a judgment in the amount of $9.55 million was entered against the Outside

CHDATA 36588_1

Directors in Delaware in this Court.  A true and correct copy of the judgment is attached

as Exhibit I.

**H.      The Trustee's Action  Against Genesis to Recover
         the $9.55 Million Settlement Amount.                    **

Despite Chief Judge Walrath's determination that the settlement was

"fair" and "reasonable," Genesis continued to refuse to consent to the settlement,

asserting that it was objectively unreasonable.  Consequently, on May 31, 2006, the

Trustee filed this action to recover the $9.55 million settlement amount.  A true and

correct copy of the Trustee's Complaint in this matter is attached as Exhibit J.  The

Trustee brought the D&O Action in this Court because (1) Delaware is his "home state;"

(2) the settlement was of a case pending in this Court that asserted breach of fiduciary

duty claims under Delaware law; and (3) the reasonableness of the settlement can only be

determined by reference to Delaware law, practice in this Court and Delaware juries.

**I.      The Substitution of the Trustee As a Party in the
         Colorado Case in Place of the Outside Directors.**

After Genesis started the Colorado Action, the Trustee sought to intervene

to protect his interests in the coverage action as the plaintiff in the D&O Action, but

Genesis successfully opposed that motion.  After the Settlement Agreement was

approved by the Bankruptcy Court, the Trustee filed a motion to substitute as a party for

the Outside Directors in the Colorado Action.  After initial limited objection by Genesis,

that motion was granted on June 22, 2006.  The Trustee did <u>not</u> seek to become a party in

his own right.

CHDATA 36588_1

As noted above, on June 30, 2006, the Trustee filed a motion to transfer venue of the Colorado Action to this Court. Genesis has opposed the Trustee's venue motion, which is pending.

## ARGUMENT

### A.    The First-Filed Rule is Not Applicable Because the Trustee's Claims in This Case Are Not Part of the Colorado Action.

The first-filed rule only applies when a district court is faced with "proceedings involving the same parties and the same issues already before another district court." *EEOC v. University of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988), *aff'd* 493 U.S. 182 (1990); *see also Maertin v. Armstrong World Indus., Inc.,* 241 F. Supp. 2d 434, 452-53 (D.N.J. 2002) (the cases must involve the same parties and issues). A court abuses its discretion when it applies the first-filed rule and enjoins a party from proceeding in another suit "that is not truly duplicative of the suit before it." *Smith v. SEC,* 129 F.3d 356, 361 (6th Cir. 1997). For an action to be duplicative of another, so as to warrant its dismissal under the first-filed rule, "the one must be materially on all fours with the other." *Congress Credit Corp. v. A.J.C. Int'l, Inc.,* 42 F.3d 686, 689 (1st Cir. 1994); *see also Computer Assoc. Int'l v. Altai, Inc.,* 893 F. 2d 26, 29 (2d Cir. 1990) (improper to enjoin in a related proceeding where a claim therein would not have been a compulsory counterclaim); *Thermal Dynamics Corp. v. Union Carbide Corp.,* 214 F. Supp. 773, 776 (S.D.N.Y. 1963) (the issues "must have such an identity that a determination in one action leaves little or nothing to be determined in the other").

CHDATA 36588_1

It is not sufficient to invoke the first-filed rule that both actions involve the same contract.  For example, in *Cap Gemini Ernst & Young U.S., LLC v. Arentowicz*, No. 04-0299, 2004 U.S.Dist. Lexis 11337 (S.D.N.Y.  June 23, 2004), a former vice president of Cap Gemini had previously filed a lawsuit in New Jersey state court for unlawful termination and a judgment declaring that the arbitration provisions in his employment contract were invalid because they were unconscionable.  Cap Gemini removed the case to the United States District Court for the District of New Jersey.  Thereafter, Cap Gemini filed an action in the United States District Court for the Southern District of New York seeking a declaratory judgment that the former vice president was required to arbitrate his claims pursuant to his employment contract.  The New York court denied the employee's motion to dismiss, holding that the first-filed rule did not apply because the New Jersey action and the New York action did not encompass the same issues:

> The Court finds that the issues in the two cases are clearly not the same.  The New Jersey action seeks relief under the anti-discrimination laws of New Jersey; the instant case involves compelling arbitration.  Although both do seek declaratory judgments, the declaration sought in the New Jersey case concerns whether the agreement is unconscionable under New Jersey law while the declaration sought in this Court is one that arbitration should proceed in New York City.

*Id.* at *6-7.

The first-filed rule requires a complete identity of issues, and a mere factual relationship between the two actions is insufficient.  For instance, in *APV North America, Inc. v. Sig Simonazzi North America, Inc.*, 295 F. Supp. 2d 393 (D. Del. 2002), Sig Simonazzi had filed an action in the Eastern District of Texas involving five patents.

CHDATA 36588_1

APV's later action in the District of Delaware sought a declaratory judgment of non-

infringement and invalidity as to the five patents involved in the Texas case, but also

asserted patent infringement claims relating to two additional patents.  In denying Sig

Simonazzi's motion to dismiss, the Delaware court held the first-filed rule inapplicable

because the cases were not identical:

> In this case, however, the addition of the APV patents not
> only involves claims not asserted in Texas, but it also
> involves facts not involved in the Texas action.
> Specifically, the additional APV patents involve the entire
> structure of a bakery conveyor, while the Sig Simonazzi
> patents deal more specifically with the magnetic grids for
> holding the baking pans to the conveyor.  Thus, while the
> inventions are not entirely unrelated, they do involve
> different technologies and thus, different facts.

*Id.* at *9-10; *See also Chubb & Son, Inc. v. Kimes,* No. 92-363, 1992 U.S. Dist. LEXIS

4703, at *7-8 (D.N.J. Apr. 6, 1992) (first-filed rule did not apply where first action in

California sought payment of a fire insurance claim and the subsequent New Jersey case

alleged that the insured engaged in terroristic threats and other wrongful conduct to

attempt to induce payment of the policy proceeds since the actions involved "distinct

legal issues").

      Genesis' contention that this case is identical to the Colorado Action fails

because the reasonableness of the settlement between the Trustee and the Outside

Directors is not and cannot be part of the Colorado Action.  In this case, the Trustee

asserts that his settlement with the Outside Directors is reasonable.  This claim did not

exist when Genesis filed the Colorado Action or when the Outside Directors filed their

answer and counterclaim.  Under Colorado law, which Genesis contends applies to all

CHDATA 36588_1

questions involving the Policy, it is well-settled that an indemnification claim against an insurer under a policy of insurance does not accrue until the amount of the underlying claim against the insured is fixed by a settlement or judgment. *Peoples Mortgage Corp. v. Kansas Bankers Surety Trust Co.*, No. 01-2414, 2002 U.S. D. LEXIS 684, at *15 (D. Kan. Jan. 9, 2002) (applying Colorado law); *Daugherty v. Allstate Ins. Co.*, 55 P.3d 224, 226 (Colo. App. 2002); *Flatiron Paving Co. v. Southwest Fire Ins. Co.,* 812 P.2d 668, 670 (Colo. App. 1990). The duty to indemnify is separate and distinct from the duty to defend. A claim for a breach of the duty to defend accrues as soon as the insured learns of the breach and expends money to conduct the defense. *Peoples Mortgage Corp.* 2002 U.S. Dist. LEXIS 684, at *12.

Genesis' complaint in the Colorado Action set forth with specificity the grounds upon which it contends that it is not required to provide coverage for the claims against the Outside Directors. Since the settlement would not occur for another 14 months, the complaint obviously says nothing about the settlement. Genesis did not seek leave to amend its complaint in the Colorado Action and the deadline for doing so expired on July 10, 2006.

Genesis contends that the Trustee's demand for payment of the settlement is encompassed in the counterclaim filed by the Outside Directors more than a year before the Settlement Agreement was executed. As noted, the Trustee's claim did not accrue until the settlement was approved by the Bankruptcy Court and the amount of the Outside Directors' liability was fixed.

CHDATA 36588_1

The Outside Directors' breach of contract counterclaim in the Colorado Action included a prayer for contractual and compensatory damages, but that counterclaim could not include causes of action that did not exist. When they filed the counterclaim, the Outside Directors had incurred damages in the form of legal expenses as a result of Genesis' refusal to defend them and that cause of action had accrued. If the Trustee prevails on the Outside Directors' counterclaim in the Colorado Action, he will recover the defense costs expended by the Outside Directors, but he cannot recover the settlement amount.

Genesis relies on the fact that the prayer for relief in the Outside Directors' counterclaim sought a declaratory judgment that Genesis is required to indemnify them for the Trustee's claims in the D&O Action. If the Trustee, as assignee of the Outside Directors, is successful, that declaratory judgment would establish that the Policy covers the Outside Directors for the Trustee's claims. That declaratory judgment would not establish the amount of Genesis' obligation. Genesis surely would agree that the entry of a declaratory judgment for coverage would not preclude it from later asserting that a settlement subsequently entered into by the Outside Directors without its consent was "objectively unreasonable." The predominate difference between this action and Colorado Action is that this case involves the amount of Genesis' obligation to the Outside Directors and the Colorado Action does not.

Contrary to Genesis' rhetoric, the Trustee has not improperly split a cause of action. The Trustee's claim for payment of the $9.55 million settlement amount was not a compulsory counterclaim in the Colorado action because the claim had not accrued

CHDATA 36588_1

at the time that the Outside Directors filed their counterclaim. Rule 13(a) is limited to claims that the pleader has "at the time of serving the pleading." Thus, a party is not required to assert a counterclaim that has not matured as of the time he serves his answer. *Burlington N. R. Co. v. Strong*, 907 F.2d 707, 712 (7th Cir. 1990).

The case of *Imperial Casualty & Indemnity Co. v. Town of Ayer,* 139 F.R.D. 569 (D. Mass. 1991), makes the point.  In that case, the Town of Ayer filed a complaint for a declaratory judgment that its law enforcement liability insurer was obligated to provide coverage to the Town in connection with certain lawsuits against the Town.  After the Town of Ayer filed the lawsuit against its insurer, it settled the lawsuits that had been filed against it.  The insurer then brought a separate breach of contract action against the Town of Ayer, alleging that the Town failed to give notice of settlement opportunities in the underlying cases.  The Town of Ayer moved to dismiss the insurer's complaint, asserting that the insurer's breach of contract claims were compulsory counterclaims in the Town's declaratory judgment action.  The court denied the motion, explaining that "the claim that forms the basis of this action, the alleged breach of the insurance contract via the settlement negotiations, did not arise until a time subsequent to the time by which the defendant was required to file an answer in the declaratory judgment action." *Id.* at 571.

Genesis now contends that it is not liable to the Trustee for the $9.55 settlement amount because the settlement was objectively unreasonable.  This issue was not in existence when the Colorado Action was filed and cannot be asserted in that case. Since this case involves issues and facts not encompassed by the Colorado Action, the

CHDATA 36588_1

first-filed rule is inapplicable and Genesis' motion to dismiss this action should be

denied.

**B.     Even Assuming Arguendo that the First-Filed Rule Was Applicable,
It Should Not Be Followed Under the Circumstances of This Case.**

**1.     The Outside Directors' Filed the Colorado Action
To Prevent the Outside Directors from Filing Their
Own Case in Delaware.**

The first-filed rule should not be applied where the "first-filing party

plaintiff instituted suit in one forum in anticipation of the opposing party's imminent suit

in another, less favorable, forum." *EEOC*, 850 F.2d at 976; s*ee also Envirometrics

Software, Inc. v. Georgia-Pacific Corp.,* No. 97-243, 1997 U.S. Dist. LEXIS 17659, at *7-

8 (D. Del. Nov. 4, 1997). There is no requirement that a court find that the first-filing

plaintiff was motivated solely by forum shopping for that court to apply the exception to

the first filed rule. *FMC Corp. v. AMVAC Chem. Corp.,* 379 F. Supp. 2d 733, 747 (E.D.

Pa. 2005). The rule should not be applied when at least one of the filing party's motives

is to preempt an imminent action. *Id.* When a declaratory judgment action is the first-

filed case, a "red flag" is raised because a declaratory judgment action may be more

indicative of a "preemptive strike" than a suit for damages or equitable relief. *Northwest

Airlines, Inc. v. American Airlines, Inc.*, 989 F. 2d 1002, 1007 (8th Cir. 1993);

*Commercial Union Ins. Cos. v. Torbaty,* 955 F. Supp. 1162, 1163 (E.D. Mo. 1997).

There is no question that Genesis, headquartered in Connecticut and

represented by two law firms in Washington, D.C., was at least partially motivated to file

in Colorado by a desire to avoid having the insurance coverage issues decided in

Delaware.  Genesis filed its declaratory judgment in Colorado *before* it notified the

Outside Directors that it was denying coverage.  Genesis did so to prevent the Outside

Directors (and Crowley) from filing their own action against Genesis for breaching its

duty to defend them in Delaware, the Outside Directors' preferred forum.  Since the

circumstances show that Genesis filed its declaratory judgment action in anticipation of

an action by the Outside Directors, the first-filed rule should not be applied in any event.

*See Employers' Ins. of Wausau v. News Corp.,* No. 06-1602, 2006 U.S. Dist. LEXIS

51335, at *20-22 (S.D.N.Y. July 27, 2006) (first-filed rule not applicable where insurers

filed declaratory judgment action on February 28, 2006, but did not advise the defendants

that coverage had been denied until March 2, 2006); *Continental Ins. Cos. v. Wickes Cos.,*

*Inc.* No. 90-8215, 1991 U.S. Dist. LEXIS 12426, at *15-17 (S.D.N.Y. Sept. 6, 1991)

(departure from first-filed rule warranted where insurance company filed a declaratory

judgment action before notifying the insured of its decision to deny coverage).

      Because the first-filed rule is grounded on equitable principles, it is not

rigid or inflexible and should not be mechanically applied. *EEOC,* 850 F.2d at 976-978.

"[F]undamental fairness dictates the need for 'fashioning a flexible response to the issues

of concurrent jurisdiction.'  *Id.* at 977 (quoting *Church of Scientology v. U.S. Dep't. of*

*Army,* 611 F2d 738, 750 (9th Cir. 1979).  As a result, exceptions to the first-filed rule are

not rare and are made when justice or expediency requires.  *FMC,* 379 F. Supp. 2d at

744; *Drugstore-Direct, Inc. v. Cartier Div. of Richemont N. Am., Inc.,* 350 F. Supp. 2d

620, 623 (E.D. Pa. 2004).  For example, the district court in a later filed action may

decline to defer to a first-filed lawsuit if is in a better position to preserve judicial

resources and avoid duplication, such as where the court has familiarity with the subject

CHDATA 36588_1

matter of the case as a result of its experience in prior litigation. *Optical Recording Corp. v. Capitol-EMI Music, Inc.*, 803 F. Supp. 971, 973-74 (D. Del. 1992).

The Court should depart from the first-filed rule because it is in a much better position than the Colorado court to determine whether the settlement of the Trustee's claims against the Outside Directors was reasonable. The settled claims were part of an action in this Court and the settlement was approved by the Bankruptcy Court in this District. The claims are based in large part on the events of Coram's Chapter 11 bankruptcy case, which proceeded and is still pending in Delaware.

Further, the Court may depart from the first-filed rule if the balance of convenience favors the second forum. *FMC Corp.,* 379 F. Supp. 2d at 744; *Drugstore-Direct, Inc.,* 350 F. Supp. 2d at 623; *Hunt Mfg Co. v. Fiskars Oy Ab*, No. 97-2460, 1997 U.S. Dist. LEXIS 15457, at *6-7 (E.D. Pa. Sept. 30, 1997). There is no question that Delaware is a far more convenient forum than Colorado for the litigation of the dispute regarding the reasonableness of the settlement. The Trustee, who recently celebrated his 85th birthday and underwent quadruple bypass surgery, lives in suburban Philadelphia and works primarily in Center City Philadelphia. (Bressler Decl., ¶¶ 6-8.) The Trustee's law firm has an office in Wilmington, directly across the street from the federal courthouse. Delaware is also more convenient for Genesis, which is a Connecticut corporation having its principal place of business in Connecticut (Complaint in Colorado Action, ¶ 4) and whose lead attorneys in all of these actions are from Washington, D.C.

Colorado has little or no connection to this dispute. The judgment upon which the Trustee is seeking to collect in this case was entered by this Court, not the

CHDATA 36588_1

Colorado District Court.  None of the relevant witnesses reside in Colorado – indeed, not

one the depositions scheduled in the Colorado Action will be conducted in Colorado.

(Bressler Decl., ¶¶ 11-12.)  Even if the Policy will be interpreted under Colorado law,

The Policy is a standard D&O Policy; there is nothing unique about it.  Genesis has not

shown that there are any complex issues of Colorado law that this Court would be unable

to resolve.  Further, it is clear that Delaware law regarding the fiduciary duties of

corporate directors will be employed to measure the strength of the Trustee's claims

against the Outside Directors in determining[2] whether the amount of the settlement was

reasonable.  Indeed, Genesis has retained an expert from Delaware to testify in the

Colorado case.

Genesis' contention that the Trustee engaged in forum shopping by filing

this action is preposterous.  Unlike Genesis, which filed its declaratory judgment action

in Colorado as a "preemptive strike" for tactical reasons, the Trustee filed his action to

recover the $9.55 million settlement in its natural home, the District where the judgment

upon which he is suing was entered, the District where his claims against the Outside

Directors was being litigated, and the District in which the Bankruptcy Court considered

and approved the settlement.

Given that the balance of convenience weighs clearly in favor of the

litigation of the dispute regarding the reasonableness of the settlement in Delaware, the

Court should not apply the first-filed rule, even if it were otherwise applicable.

---

[2] As the Delaware Bankruptcy Court has previously had to do from the plaintiff's point of
view.

**C.    Alternatively, the Court Should Stay This Case Pending Disposition of Genesis' Claims Against the Outside Directors in the Colorado Action.**

In addition to contending that the settlement is not reasonable, Genesis will defend this action by raising the same coverage issues that are set forth in its declaratory judgment complaint in the Colorado Action.  Any concern over duplication between the lawsuits and inconsistent rulings would be eliminated if the Colorado court transfers the Colorado Action to this court, or if this court by the entry of an order: (1) determines that the issues relating to the reasonableness of the settlement be adjudicated in this case; and (2) stays this case pending the adjudication of the coverage issues raised by Genesis against the Outside Directors in its declaratory judgment complaint in the Colorado Action.  Thus, to the extent that the Court concludes that the first-filed rule warrants the grant of some relief, it should stay this action on such terms, not dismiss it.

CHDATA 36588_1

## <u>CONCLUSION</u>

For the foregoing reasons, the Trustee request that the Court deny Genesis's motion.

Dated:  August 11, 2006                    Respectfully submitted,


  /s/ Michael J. Barrie
Richard A. Barkasy (#4683)
Michael J. Barrie (#4684)
SCHNADER HARRISON SEGAL
    & LEWIS LLP
Suite 1001
824 N. Market Street Wilmington,
DE  19801
Telephone: (302) 888-4554
Facsimile:  (302) 888-1696

*Of Counsel*

Barry E. Bressler
Wilber L. Kipnes
SCHNADER HARRISON SEGAL
    & LEWIS LLP
Suite 3600
1600 Market Street
Philadelphia, PA, 19103-7286
Telephone: (215) 751-2000
Facsimile: (215) 751-2205

*Attorneys for Plaintiff,*
*Arlin M. Adams, as Chapter 11*
*Trustee of the Bankruptcy Estates of*
*Coram Healthcare Corporation and*
*Coram, Inc.*

CHDATA 36588_1

## <u>CERTIFICATE OF SERVICE</u>

I, Michael J. Barrie, certify that I am not less than 18 years of age and that on August 11, 2006, I caused to be electronically filed with the Court the Brief In Opposition to Genesis Insurance Company's Motion to Dismiss Or Stay using CM/ECF, which will send notification of such filing to the following:

Carmella P. Keener, Esq.
ROSENTHAL, MONHAIT & GODDESS, P.A.
919 N. Market St., Suite 1401
Citizens Bank Center
Wilmington, DE 19801

Dated:  August 11, 2006                    SCHNADER HARRISON SEGAL
                                               & LEWIS LLP


                                     By:  /s/ Michael J. Barrie
                                          Michael J. Barrie (#4684)
                                          824 Market Street Mall, Suite 1001
                                          Wilmington, Delaware 19801
                                          (302) 888-4554 (telephone)
                                          (302) 888-1696 (facsimile)

# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

In re:                              )
                                    )
CORAM RESOURCES NETWORK, INC.,)
and CORAM INDEPENDENT PRACTICE)  Case No. 99-2889
ASSOCIATION, INC.,                  )         (MFW)
                                    )
                Debtors.            )

                              Bankruptcy Courtroom
                              No. 1, Sixth Floor
                              Marine Midland Plaza
                              824 Market Street
                              Wilmington, Delaware


                              Thursday, December 21, 2000
                              1:35 p.m.


BEFORE:  THE HONORABLE MARY F. WALRATH,
         United States Bankruptcy Judge


                 -- Transcript of Proceedings --


                      WILCOX & FETZER
        1330 King Street - Wilmington Delaware  19801

                      (302) 655-0477

37

1    point with another plan or sale or some other vehicle

2    that I think there is no basis to conclude will result in

3    anything other than creditors getting less and the

4    equityholders still getting nothing.

5           So, Your Honor, if the issue is that

6    somebody did something wrong, and I'm not suggesting

7    that, and I'm certainly not endorsing that view, but if

8    that's the point, there is redress in the courts, but I

9    don't think that the answer is to put this company out of

10   business.

11          Thank you.

12          THE COURT:  Well, I'm in a difficult

13   situation.  I would like to sidestep my duties, but I

14   think I have to determine in deciding whether to confirm

15   this plan under 1129(a)(3), I must conclude that it is

16   proposed in good faith and that the plan proponents have

17   acted in good faith.  I just do not want to be in a

18   position to conclude on this record that that is so.  I

19   cannot conclude on this record that that is so.

20          I think that the contractual relationship

21   between Cerberus and the CEO, Mr. Crowley, did taint the

22   process, and I think that, if anything, the ultimate

23   fairness of the process in bankruptcy is a paramount

24   principle to be protected by the Bankruptcy Court.

39

1        Maybe we would be at the same place today

2    if that contractual relationship had not been there, if

3    it had been disclosed to all parties, but I don't know

4    that and I don't think anybody will know that.

5        We are at a terrible place.  The Equity

6    Committee, even on its numbers, which I agree with the

7    Creditors' Committee's counsel and their valuation expert

8    and the cross-examination of the Equity Committee expert

9    does point out the questionable nature of that valuation.

10       I think under any of the numbers the

11   company is insolvent today.  But I don't think I can

12   confirm a plan based on that fact because I think that

13   because of the process being tainted by this relationship

14   which began in November of 1999, and perhaps in August of

15   1999, has so tainted the debtors' restructuring of its

16   debt, the debtors' negotiations towards a plan, even the

17   debtors' restructuring of its operations.

18       I think on that point I think it is a shame

19   that Mr. Crowley and perhaps Cerberus and the debtor

20   itself is tainted in this manner because I think there is

21   evidence that Mr. Crowley did do a good job operationally

22   in helping the debtor turn around.  But I can't conclude

23   that the debtor might not have done even better had there

24   not been this relationship.  I don't know.  That's the

1    problem.  I don't know what would have happened without

2    this actual conflict of interest.  I do think it's an

3    actual conflict of interest.

4               I think that the actions of Mr. Crowley to

5    hide the relationship, and I think that EC-20 did show an

6    intent to hide the relationship and to hide his request

7    for additional compensation in Winterland in exchange for

8    his efforts here did at least evidence that he, himself,

9    believed that this relationship should not be disclosed

10   and, therefore, did, in fact, taint his ability to serve

11   as CEO of the debtor.

12              Whether it opens up a Pandora's box or

13   encourages other noteholders or other parties in future

14   bankruptcies to try the same thing, I'm not as concerned

15   about that, but I just do not want my name confirming a

16   plan where this type of activity occurred for a year

17   before the plan was proposed for confirmation.  I just

18   cannot conclude that it's proposed in good faith for

19   those reasons.

20              I do not have the ability to suggest a

21   different plan.  I do not have the ability to give an

22   exemption from Stark II.

23              So I leave it to the debtor to see where it

24   goes from here for now.  I'll look for a form of order if

30

1   someone wants to present me with one.

2              MR. MINUTI:  We will, Your Honor.

3              THE COURT:  We'll stand adjourned.

4              MR. LEVY:  Thank you, Your Honor.

5              (The hearing was then concluded at

6   3:35 p.m.)

7                        - - - - -

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

31

```
1   State of Delaware    )
                         )
2   County of New Castle )

3

4
                    C E R T I F I C A T E
5

6
            I, Kathleen E. White, Registered Professional
7   Reporter and Notary Public, do hereby certify that the
    foregoing record, pages 1 to 91, inclusive, is a true and
8   accurate transcript of my stenographic notes taken on
    Thursday, December 21, 2000, in the above-captioned
9   matter before the Federal Bankruptcy Court.

10          IN WITNESS WHEREOF, I have hereunto set my hand
    and seal this 24th day of December, 2000, in
11  New Castle County.

12

13
                        KATHLEEN E. WHITE,
14                      Notary Public-Reporter

15

16

17

18

19

20

21

22

23

24
```

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ARLIN M. ADAMS, Chapter 11 Trustee of the Post-Confirmation Bankruptcy Estates of CORAM HEALTHCARE CORPORATION, a Delaware Corporation, and of CORAM, INC., a Delaware Corporation, | Case No. _____ 0 4 - 1 5 6 5 |
| Plaintiff, | |
| v. | |
| DANIEL D. CROWLEY; DONALD J. AMARAL; WILLIAM J. CASEY; L. PETER SMITH; AND SANDRA L. SMOLEY, | JURY TRIAL DEMANDED |
| Defendants. | |

2004 DEC 29  PM 4: 25
FILED U.S. DISTRICT COURT
DISTRICT OF DELAWARE

## COMPLAINT

Plaintiff, Arlin M. Adams, as Chapter 11 Trustee of the Post-Confirmation Bankruptcy Estates of Coram Healthcare Corporation and its wholly owned subsidiary Coram, Inc. (collectively "Coram"), brings this action for breaches of fiduciary duty against Daniel D. Crowley, the former Chairman and CEO of Coram and a member of its Board of Directors ("Crowley"), and former Board members Donald J. Amaral, William J. Casey, L. Peter Smith, and Sandra L. Smoley arising out of Crowley's conflict of interest and breach of his duty of loyalty. Before he entered into a November 30, 1999 employment agreement with Coram, Crowley had already entered into an Employment Agreement with Cerberus Partners L.L.P. ("Cerberus"), one of Coram's three major lenders, under which Cerberus paid Crowley $80,000 per month. The head of Cerberus, Stephen Feinberg, sat on Coram's Board. Crowley did not

disclose to Coram's Board the existence of his Employment Agreement with Cerberus or its terms. Although the Board was aware that Crowley had some "relationship" with Cerberus, the other Board members failed to exercise any business judgment or otherwise make any good faith attempt to fulfill their fiduciary duties to Coram and its stockholders in connection with Crowley's employment. They made no inquiries and approved Crowley's employment agreement with Coram without investigating or learning that Crowley was receiving $80,000 each month from Cerberus. The Board's inaction continued even after the existence of the conflict was brought to their attention.

When these facts were brought to light in connection with Coram's bankruptcy proceeding, the Bankruptcy Court on December 21, 2000, refused to confirm Coram's proposed plan of reorganization, finding that it was not submitted in good faith because Crowley had an actual conflict of interest that tainted Coram's operations and proposed restructuring. Despite this clear finding, Crowley continued for the next year to accept $80,000 per month from Cerberus, and the Board took no remedial action whatsoever and did not inquire whether Crowley continued to receive these payments. To the contrary, the Board attempted to ratify and bless their own breaches of fiduciary duty by retaining an independent advisor whose assignment, in the words of defendant Amaral, was "to sprinkle holy water" on the situation. On December 21, 2001, the Bankruptcy Court rejected this cynical and bad faith ploy and refused to confirm Coram's second proposed plan of reorganization. The Court found that "nothing had changed," and that the breaches by Crowley and these directors caused damages to Coram. Crowley's failure to disclose his conflict of interest and his continued acceptance of payment from Cerberus and from Coram were breaches of his duties of care, good faith and loyalty to Coram and its shareholders. By approving Crowley's retention without even basic inquiry into

Crowley's relationship with Cerberus and then seeking to allow Crowley to continue to receive $80,000/month from Cerberus, the other members of the Board consciously and intentionally abdicated all responsibility to consider appropriately Crowley's employment arrangements and failed to act in good faith and meet even minimal standards of attention. These serious and persistent breaches of fiduciary duty caused harm to Coram and its shareholders. The Trustee brings this action to recover those damages for the benefit of Coram's former shareholders and unsecured creditors.

## PARTIES

1.      On March 7, 2002, the United States Bankruptcy Court for the District of Delaware entered an order appointing plaintiff Chapter 11 Trustee of Coram and Coram, Inc. At the time, Coram was a publicly-traded company. On October 27, 2004, the Bankruptcy Court signed an order, deemed entered as of November 1, 2004, confirming the Trustee's Plan of Reorganization. All appeals from the confirmation order have been withdrawn, and the Trustee's plan has been implemented. Coram is now a private company owned by its former lenders.

2.      Coram is a Delaware corporation with its principal place of business in Colorado. Coram is a leading provider of alternative-site infusion therapy in the United States. Infusion therapy involves the intravenous administration of drug therapies for nutrition, anti-infection, HIV, blood factor, pain management, chemotherapy and other purposes.

3.      Defendant Daniel D. Crowley ("Crowley") is a citizen of California. He was Chairman and Chief Executive Officer of Coram from November 1999 until March 2003.

4.     Defendant Donald J. Amaral ("Amaral") is not a citizen of Pennsylvania, Delaware, or Colorado and is, on information and belief, a citizen of Nevada. He joined Coram's Board in 1995 and served as Chairman from September 1997 through November 30, 1999. From October 1995 through April 23, 1999, and from October 22, 1999 through November 30, 1999, he also served as Coram's Chief Executive Officer.

5.     Defendant William J. Casey ("Casey") is not a citizen of Pennsylvania, Delaware, or Colorado and is, on information and belief, a citizen of California. He joined Coram's Board in 1997.

6.     Defendant L. Peter Smith ("Smith") is not a citizen of Pennsylvania, Delaware, or Colorado and is, on information and belief, a citizen of Illinois. He joined Coram's Board in 1994.

7.     Defendant Sandra L. Smoley ("Smoley") is not a citizen of Pennsylvania, Delaware, or Colorado and is, on information and belief, a citizen of California. She joined Coram's Board on February 10, 2000.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332, as the action is between citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs.

9.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1409.

## FACTUAL ALLEGATIONS

10.     From approximately 1997 on, Cerberus, together with Goldman Sachs Credit Partners L.P. ("Goldman Sachs") and Wells Fargo Foothill ("Foothill"), owned all of Coram's debt and are collectively referred to as "the Noteholders." Cerberus owned approximately 38%. Cerberus is a substantial investor in the debt of numerous distressed companies.

11.     On May 6, 1998, Coram and the Noteholders entered into a Securities Exchange Agreement negotiated between then-CEO Amaral for Coram and Stephen Feinberg ("Feinberg"), head of Cerberus, for the Noteholders. The Securities Exchange Agreement allowed the Noteholders a seat on Coram's Board. The Noteholders designated Feinberg as their representative on the Board.

12.     In April 1999, Amaral resigned as Coram's CEO for unanticipated personal reasons. He was replaced as CEO by his second-in-command, Richard M. Smith. Amaral remained Chairman of the Board.

13.     In early 1999, Cerberus retained Crowley as a consultant to advise Cerberus in connection with its investments, especially in the health care field. Cerberus agreed to pay Crowley $10,000 per day plus expenses on a project by project basis. In July 1999, Crowley and Cerberus entered into an oral agreement pursuant to which Crowley agreed to work exclusively for Cerberus for three years at a salary of $80,000 per month plus expenses and the possibility of substantial bonuses if Cerberus' investments on which Crowley had consulted were profitable.

14.    In August 1999, after Crowley and Cerberus had made their oral agreement, Feinberg recommended to the Board that Coram hire Crowley as a "consultant" or "CEO coach" to work with the newly-elevated CEO, Richard Smith.

15.    Feinberg disclosed to the Board that Crowley had a relationship with Cerberus, but provided no information about that relationship. Notwithstanding their knowledge that "a relationship" existed between Crowley and Cerberus, none of Coram's directors asked any questions or requested any materials about that relationship. They approved the retention of Crowley as a consultant to CEO Richard Smith without knowing Crowley's obligations to Cerberus, the nature of his work for Cerberus, and the terms of his compensation from Cerberus. The directors agreed to pay Crowley $40,000 per month for his consulting services.

16.    In October 1999, Richard Smith claimed that Coram had constructively terminated him as CEO. In late October 1999, the Board determined to treat his departure as a resignation but also agreed that he was entitled to benefits under his employment agreement.

17.    On October 29, 1999, Crowley wrote to Amaral asking that Amaral consider hiring him in connection with Coram's ongoing "restructuring process." A copy of the October 29, 1999 letter is attached as Exhibit "A."

18.    The Noteholders offered Coram a six-month interest accrual holiday if Crowley were hired as CEO, which amounted to a cash savings to Coram of approximately $11 million. Crowley and Amaral began negotiations no later than early November 1999.

19.    On November 12, 1999, while he was negotiating with Amaral to be Coram's CEO, Crowley sent a "Personal & Confidential" letter to Feinberg requesting additional compensation from Cerberus to induce him to become CEO of Coram. At the time, Crowley was Chairman of Winterland, also a Cerberus investment. Crowley's letter, a copy of which is attached as Exhibit "B," seeks additional compensation from Cerberus for his work at Coram in the form of an increased share of the profits at Winterland.

20.    On November 15, 1999, Amaral and the Noteholders agreed on the terms of the interest forbearance agreement.

21.    On November 17, 1999, the Board approved a three-year employment agreement with Crowley, which he signed the next day. The agreement is dated as of November 30, 1999. It provides for a base annual salary of $650,000, potential bonuses of between $390,000, and $1,950,000 depending on Coram's EBIDTA, a minimum 24-month severance period, options to purchase one million shares of Coram stock at then market rates, and an acquisition bonus upon a change of control. Amaral signed the agreement for Coram. A copy of Crowley's employment agreement with Coram is attached as Exhibit "C."

22.    On November 19, 1999, Crowley executed an executive Employment Agreement with Cerberus effective as of August 1, 1999, a copy of which is attached as Exhibit "D." The Agreement does not state that Crowley had the previous day signed an employment agreement to be Coram's Chairman and CEO, although it does mention Coram. The Crowley/Cerberus Employment Agreement provides that Crowley would devote "his entire business time, attention, skill and energy exclusively to the business of the Employer [Cerberus]" by performing duties to be assigned by Feinberg. Cerberus agreed to pay Crowley a base salary

of $960,000 and the potential for bonuses.  The Employment Agreement also provided that
Cerberus could terminate Crowley for cause if Crowley did not follow Cerberus' reasonable
instructions.

23.    As was the case with the oral agreement between Crowley and Cerberus,
neither Crowley nor Feinberg disclosed the existence or the terms of their written agreement to
the Board of Coram, and no member of the Board of Coram made any inquiry about the terms of
the Crowley/Cerberus relationship.

24.    Coram's corporate policy provided that actual conflicts of interest must be
avoided and that any action creating a potential conflict of interest must be disclosed and
approved in advance.  Crowley did not seek approval for his Employment Agreement with
Cerberus.

25.    Crowley signed the management letter to Coram's outside auditors for the
year ending December 31, 1999, and stated:  "There are no instances where any officer or
employee of [Coram] has an interest in a company, with which [Coram] does business that
would be considered a 'conflict of interest,' that has not been disclosed or waived.  Such an
interest would be contrary to [Coram] policy."  A copy of the management letter is attached as
Exhibit "E."  At the time he signed the management letter, Crowley was party to an undisclosed
Employment Agreement with one of Coram's three lenders.

26.    Coram retained Crowley's wholly-owned consulting company, Dynamic
Health Care Solutions, L.L.C., to act as a "consultant" to Coram.  Coram paid fees to Dynamic in
excess of $1 million.

27.    On February 28, 2000, Crowley wrote to the Board asking for additional compensation.  The letter, a copy of which is attached as Exhibit "F," states:

> It is also clear to me, that the assignment and the terms I accepted in November 1999 did *not* reflect the activity required to "stabilize" Coram and get it on solid footing.  This is more than just a nineteen (19) hour a day "workout".  Clearly, Coram will take longer, involve more, and will need me to stay "on task" for much longer than we envisioned when I said, "Yes".  The risks for me as a professional are also substantially different that those involved with just fixing the day to day problems of Coram.  Had the Board engaged a firm like J.Alix the charge to do the same work at Coram would have been multiples of what I am being compensated.

Crowley did not disclose that while he was working what he claims were more than 19-hour days for Coram, Cerberus was paying him $80,000 a month.

28.    In response to Crowley's demand for additional compensation, Feinberg and Crowley negotiated an amendment to Crowley's November 30, 1999 Employment Agreement, which was executed as of April 6, 2000, and signed by directors Feinberg and L. Peter Smith.  Even though the other members of the Board had been informed that Crowley had a "relationship" with Cerberus, they allowed Feinberg to conduct the negotiations with Crowley, made no inquiry concerning that relationship, nor made any independent review of Feinberg's negotiations with Crowley.  Nor did the Board retain a compensation consultant or other independent expert to review and opine regarding the fairness of Crowley's compensation under the Employment Agreement.  A copy of the Second Amendment to Employment Agreement is attached as Exhibit "G."

29.    The Second Amendment provided a new bonus structure that was far greater than the maximum $1.9 million bonus that Crowley received under the employment agreement with Coram he had signed just four months earlier.  Under the new arrangement, Crowley could claim a bonus of up to 25% of the amount by which EBIDTA for 2000 exceeded $14 million, and an additional $5 million bonus if 2000 EBIDTA exceeded $35 million.

30.    At the time Crowley and Feinberg negotiated the amendment to Crowley's Employment Agreement with Coram, Crowley anticipated that Coram would be restructured by filing a bankruptcy petition under Chapter 11 with a proposed plan of reorganization that would eliminate the public shareholders without any payment to them.

31.    Between November 30, 1999, when Crowley became CEO, and July 31, 2000, Crowley caused Coram to pay the Noteholders approximately $60 million.

32.    Feinberg resigned from the Board of Coram in July 2000.

33.    On August 8, 2000, Coram filed its Chapter 11 petition together with its first Plan of Reorganization.  The proposed Plan provided for the cancellation of all shareholders' interests and for issuing new Coram stock to the Noteholders.  The Plan was supported by Coram's three-member Creditors' Committee, which consisted of two Noteholders and one trade creditor.  The Noteholders' claims of about $250 million far exceeded Coram's trade debt of approximately $7 million.

34.    In connection with the bankruptcy proceedings, Coram filed a Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code, which stated that Crowley was

serving as a consultant to Cerberus, that he generally receives a fee from Cerberus for such services, but that he "receives no fee from Cerberus for any services he provides respecting the Debtors." Despite this latest notice of a relationship between Crowley and Cerberus, the outside directors still asked no questions and made no inquiry about this relationship. Crowley made identical statements in other Bankruptcy Court filings.

35.     On October 18, 2000, the United States Trustee appointed an Official Committee of Equity Security Holders (the "Equity Committee") to represent the interests of Coram's common shareholders. The Equity Committee obtained the Crowley/Cerberus Employment Agreement and other documents in discovery in connection with Coram's proposed Plan of Reorganization, which the Equity Committee opposed.

36.     On December 21, 2000, the Bankruptcy Court, holding that Coram had not proposed its Plan in good faith under Section 1129(a)(3) of the United States Bankruptcy Code, denied confirmation of the First Plan. In its oral ruling, the Bankruptcy Court stated that:

a.     Crowley "had an actual conflict of interest" by virtue of his contractual relationship with Cerberus. (Opinion 12/21/00, at 89.)

b.     "[T]he actions of Mr. Crowley to hide the relationship, and I think that [his letter] did show an intent to hide the relationship and to hide his request for additional compensation in Winterland in exchange for his efforts here did at least evidence that he, himself, believed that this relationship should not be disclosed and, therefore, did, in fact, taint his ability to serve as CEO of the debtor." (*Id.*)

c.     The actual conflict of interest "tainted the debtors' restructuring of its debt, the debtors' negotiations towards a Plan, even the debtors' restructuring of its operations." (*Id.*, at 88.)

A copy of the Court's ruling is attached as Exhibit "H."

37.    Even if the outside directors had not learned the terms of the Crowley/Cerberus Employment Agreement during the course of discovery, they did so upon being informed of the Bankruptcy Court's decision. Nevertheless, in the face of the Bankruptcy Court's clear finding that Crowley had a conflict of interest and breached his fiduciary duty to Coram in a pervasive way, Crowley continued to receive $80,000 per month from Cerberus, while the outside directors did absolutely nothing to meet their obligation to make inquiry about Crowley's relationship with Cerberus, a matter of material importance to Coram and its shareholders. The minutes of the Board meetings in 2001 do not reflect any discussion of whether Crowley should be permitted to stay on as Coram CEO if he continued to receive payments from Cerberus.

38.    Rather than investigate the matter, the Board members attempted to avoid the issue. In 2000, the Board formed a Special Committee consisting of its independent directors – the Board members other than Crowley. The Special Committee decided to retain Harrison J. Goldin Associates, L.L.C. ("Goldin"), a financial advisory firm, as an independent restructuring advisor. Coram filed a motion to appoint Goldin on February 1, 2001, which the Bankruptcy Court approved on February 26, 2001.

39.    As approved by the Bankruptcy Court, Goldin's assignment was to advise the Special Committee regarding Crowley's relationship with Cerberus, and potential amendments to the plan of reorganization that had been rejected. In addition, Goldin was to attempt to mediate a consensual resolution among Coram, the Equity Committee, and the Noteholders.

40.    The Bankruptcy Court approved Goldin's application to retain counsel. Goldin conducted an extensive investigation, for which Coram paid in excess of $2.5 million, although Goldin envisioned having only a "soft role."

41.    Goldin limited the scope of his inquiry to events occurring prior to December 2000. He did not ask either Crowley or Cerberus whether Crowley continued to receive $80,000 per month from Cerberus. In fact, Crowley received those payments throughout 2001.

42.    In describing the Special Committee's purpose in retaining Goldin as independent restructuring advisor, Amaral testified that the Board wanted Goldin "to sprinkle holy water on [the situation]." (Amaral Deposition, 10/26/01, at 35, attached as Exhibit "I.")

43.    Goldin prepared a report of his investigation, which Coram converted into a second proposed plan of confirmation.

44.    On December 21, 2001, the Bankruptcy Court issued a written opinion denying confirmation, a copy of which is attached as Exhibit "J." After reviewing the facts of the Crowley/Cerberus Employment Agreement and Crowley's conflict of interest as found at the hearing on the First Plan, and after hearing from Goldin, Crowley, Amaral, and others concerning events since December 2000, the Bankruptcy Court concluded:

> Nothing, in fact, has changed since the first confirmation hearing. Crowley continues to receive almost $1 million a year from one of the Debtors' largest creditors, while serving as the Debtors' CEO and President. Under his agreement with Cerberus, he is required to obey its instructions or risk having the agreement terminated and losing his $1 million. This is an actual conflict of interest, as we

13

concluded at the first confirmation hearing. (Opinion, 12/21/01, at 13.)

45.    The Bankruptcy Court found that other than hiring Goldin and reviewing his report, the outside directors did nothing in response to the Bankruptcy Court's order denying confirmation of the First Plan. The Bankruptcy Court found that the outside directors did not conduct any investigation of Crowley's conflict of interest, did not require that Crowley cease accepting any compensation from Cerberus, and did not even ask Crowley or Cerberus if the conflict or payments persisted. The Bankruptcy Court also found that Crowley did not advise the Board that he continued to receive compensation from Cerberus and rejected Crowley's testimony that his nearly $1 million annual compensation from Cerberus had nothing to do with Coram.

46.    The Bankruptcy Court rejected the proposition that Crowley's conflict of interest had caused no harm to Coram. The Bankruptcy Court found that:

> there is absolutely no evidence from which the Court can conclude
> that the Debtors have suffered no harm from Crowley's continued
> conflict of interest. Mr. Goldin's assertion that there must be no
> harm since the disclosure of the relationship because no harm was
> caused by Crowley when the relationship was hidden is not logical,
> nor is it borne out by the facts. Crowley did cause harm to the
> Debtors while his relationship with Cerberus was hidden and there
> is no reason to assume he did not cause harm to the Debtors when
> that relationship was disclosed. (Opinion, 12/21/01, at 20.)

The Bankruptcy Court concluded that "the conflict in this case transcends every single thing Crowley does on behalf of the Debtors" and "[t]he Debtors' hiring of Goldin to 'sprinkle holy water on the situation' does not cure the conflict or evidence good faith." (*Id.*, at 24-25.)

47.    The Bankruptcy Court concluded that the "don't ask, don't tell" approach of the outside directors "does not fulfill their fiduciary duty to these estates." (*Id.* at 22.)

## COUNT I

### AGAINST CROWLEY
### FOR BREACH OF FIDUCIARY DUTY

48.    Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 47 as if fully set forth.

49.    Crowley, as an officer and director, owed Coram fiduciary duties of care, loyalty, disclosure, and good faith, including the duty to disclose actual and potential conflicts of interest. As found by the Bankruptcy Court, Crowley breached those duties. Those breaches, the Bankruptcy Court held, "transcend every single thing Crowley" did on Coram's behalf (*Id.* at 24.)

50.    As a result of Crowley's breaches of fiduciary duties, Coram has suffered damages in excess of $75,000, exclusive of interest and costs.

## COUNT II

### AGAINST AMARAL, CASEY, SMITH, AND
### SMOLEY FOR BREACH OF FIDUCIARY DUTIES

51.    Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 50 as if fully set forth.

52.    As members of Coram's Board of Directors, Amaral, Casey, Smith, and Smoley owed Coram fiduciary duties of care, loyalty, disclosure, and good faith in managing Coram's affairs.

53.    By allowing Coram to enter into an employment agreement with Crowley without first investigating Crowley's relationship with Cerberus, the Board members did not make an adequate investigation of material information reasonably available to them and breached their duties of good faith and due care.

54.    The Board members violated their fiduciary duties by allowing Feinberg, who also had a conflict of interest, to negotiate the terms of the Second Amendment to Crowley's employment agreement without any meaningful review by independent and unconflicted directors of the fairness of the Second Amendment to Coram and its shareholders.

55.    The Board members continued to breach their duties even after receiving actual knowledge of Crowley's conflict of interest.

56.    In 2001, Amaral testified that he first learned the details of Crowley's Employment Agreement with Cerberus during his December 8, 2000 deposition but expressed the opinion that the relationship did not create a conflict of interest.  (Amaral Deposition, 10/26/01, at 8, 13, attached as Exhibit "I.")  He further testified that he did not care about the appearance of the conflict and, therefore, did not think it necessary to ask Feinberg about the details of Crowley's relationship with Cerberus.  (*Id.*, at 45.)

57.    No later than a telephonic meeting of the Board of Directors on December 27, 2000, the outside directors were fully aware of the material terms of the Crowley/Cerberus Employment Agreement.  Coram's counsel sent a complete copy of the transcript of the Bankruptcy Court's December 21, 2000 ruling to each director.  Nonetheless, the Board members took no action to investigate the conflict or its impact on Coram and its shareholders.

58.    The outside directors, either individually or as a Special Committee, never investigated: (a) whether Crowley's conflict of interest had damaged Coram or had influenced Coram's strategic direction; (b) whether all of Crowley's arrangements with Cerberus had been fully disclosed; or (c) whether Crowley continued to receive payments of $80,000 per month from Cerberus and continued to be bound by his Employment Agreement with Cerberus.  By performing no investigation whatsoever, the outside directors failed to make any good faith attempt to fulfill their fiduciary duties to Coram.  They simply abdicated their responsibilities.

59.    Amaral intentionally disregarded his responsibilities as a director of Coram.  He did not consider Crowley's Employment Agreement with Cerberus to be a conflict.  When the Bankruptcy Court found otherwise, Amaral's only action was to retain Goldin "to sprinkle holy water."  He never asked Crowley why he failed to disclose the terms of his relationship to Cerberus, and after Crowley's involuntary disclosure, Amaral never asked him or Feinberg whether the $80,000/month payments were continuing.  Amaral testified that he "didn't think it was appropriate" to ask Feinberg about the conflict.  (Amaral Deposition, 10/26/01, at 45, attached as Exhibit "I.")

17

60.     Smith intentionally disregarded his responsibilities as a director of Coram. Smith did not think it important for the Board to reach its own conclusion whether the Crowley/Cerberus Employment Agreement was a conflict.  Smith never asked Crowley why he failed to disclose, and after Crowley's involuntary disclosure, Smith never asked him or Feinberg whether the $80,000/month payments were continuing.

61.     Casey intentionally disregarded his responsibilities as a director of Coram. Casey admitted that he did not investigate Crowley and his relationship with Cerberus between the denial of the First Plan and the issuance of Goldin's report nor did he request any one else to conduct such an investigation.  Casey did not ask to see Crowley's employment agreement with Cerberus.  Casey never asked Crowley why he failed to disclose.  Casey never asked him or Feinberg whether the $80,000/month payments were continuing.

62.     Smoley intentionally disregarded her responsibilities as a Director of Coram.  Smoley admitted that she did not care what Crowley was doing outside Coram even if it might be considered a conflict of interest.  Smoley never confronted Crowley or Feinberg about the nature of Crowley's relationship with Cerberus.  She failed to ask Crowley or Feinberg whether the $80,000/month payments were continuing.

63.     The outside directors, even though operating as a Special Committee, did not obtain independent legal advice, but relied on Coram's bankruptcy counsel.

64.     The decisions of the outside directors, individually and as the Special Committee, were made without adequate information and without adequate deliberation.

65.    The outside directors, individually and as the Special Committee, failed to exercise any business judgment with respect to their actions concerning Crowley's conflict of interest.

66.    The conduct of the outside directors, individually and as the Special Committee, was an egregious breach of their fiduciary duties and was consciously indifferent to the foreseeable results of the breach.

67.    Because the Board of Directors by their knowing and wrongful inaction failed to take such steps as would be necessary to afford the transactions at issue the protection of the business judgment rule, the transactions are subject to review for entire fairness and the defendants bear the burden of showing that the transactions were fair to Coram and its stockholders.

68.    As a result of the breaches of duty of the outside directors, Coram has suffered damages in excess of $75,000, exclusive of interest and costs.

WHEREFORE, Plaintiff demands judgment against defendants for compensatory damages, disgorgement, punitive damages, costs, attorneys' fees, pre-judgment interest and such other and further relief as the Court may deem just and proper.

Respectfully submitted,

By:    _____

Rolin P. Bissell (Attorney No. 4478)
Glenn C. Mandalas (Attorney No. 4432)
YOUNG CONAWAY STARGATT & TAYLOR
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Phone: (302) 571-6600
Fax:    (302) 571-1253

OF COUNSEL:

Barry E. Bressler
Wilbur L. Kipnes
Jennifer Nestle
Han Nguyen
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103
Phone: (215) 751-2000
Fax:    (215) 751-2205

Dated: December 29, 2004.

# EXHIBIT E

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2006 FEB 23  PM 4: 48

GREGORY C. LANGHAM
CLERK

BY_____DEP. CLK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. **05 -ωm - 335 (PAC)**

GENESIS INSURANCE COMPANY, a Connecticut corporation,

Plaintiff,

vs.

DANIEL D. CROWLEY;
DONALD J. AMARAL;
WILLIAM J. CASEY;
L. PETER SMITH; and
SANDRA L. SMOLEY,

Defendants.

---

## COMPLAINT FOR DECLARATORY JUDGMENT

---

Genesis Insurance Company ("Genesis") brings this action for declaratory judgment against defendants Daniel D. Crowley, Donald J. Amaral, William J. Casey, L. Peter Smith, and Sandra L. Smoley, all of whom are former directors or officers of Coram Healthcare Corporation and/or its wholly-owed subsidiary Coram, Inc. (collectively, "Coram). Genesis seeks a determination that a directors and officers liability policy issued by Genesis to Coram does not provide coverage for the claim asserted against the defendants in the lawsuit captioned *Adams. v. Crowley, et al.*, No. 04-1565 (D. Del.) (the "Underlying Action"). In support of this Complaint, Genesis alleges as follows:

## NATURE OF ACTION

1.      This is an action by Genesis for a declaratory judgment concerning its rights and obligations under a policy of directors and officers liability insurance issued to Coram Healthcare Corporation.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.  Genesis brings this action pursuant to 28 U.S.C. §§ 2201 and 2202.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).  A substantial part of the events giving rise to this dispute occurred in this district.  The Genesis insurance policy that is the subject of this dispute was issued here to non-party Coram, whose principal place of business is in this district.

## PARTIES

4.      Genesis is a corporation engaged in the business of providing liability insurance. Genesis is organized and exists pursuant to the laws of the state of Connecticut with its principal place of business in the state of Connecticut.

5.      Defendant Daniel D. Crowley ("Crowley") is a citizen of California.  He was Chairman and Chief Executive Officer of Coram from November 1999 until March 2003.

6.      Defendant Donald J. Amaral ("Amaral") is a citizen of Nevada.  He joined Coram's Board in 1995 and served as Chairman from September 1997 through November 30, 1999.  From October 1995 through April 23, 1999, and from October 22, 1999, through November 30, 1999, he also served as Coram's Chief Executive Officer.

7.      Defendant William J. Casey ("Casey") is a citizen of California.  He joined Coram's Board in 1997.

8.    Defendant L. Peter Smith ("Smith") is a citizen of Illinois.  He joined Coram's Board in 1994.

9.    Defendant Sandra L. Smoley ("Smoley") is a citizen of California.  She joined Coram's Board on February 10, 2000.

## FACTUAL ALLEGATIONS

### The Genesis Policy

10.    Directors and Officers Liability Insurance Policy  No. YXB001625A (the "Policy") (attached hereto as Exhibit A) was issued by Genesis to Coram Healthcare Corporation for the period from January 8, 1999, through January 27, 2001, as amended, with a discovery period for reporting Claims extending until January 27, 2002.  It has a limit of liability of $25,000,000.  It is a "claims-made" policy.  *See* Exhibit A at p. 1.

11.    Subject to all of its terms and conditions, the Policy affords specified coverage to Coram's directors and officers for "Loss" arising out of "Claims" for "Wrongful Acts," as those terms are defined, first made during the Policy Period.  It also affords specified coverage for "Claims" for "Wrongful Acts" first made during the Discovery Period, but only for "Wrongful Acts" committed before January 27, 2001.  Policy, Sections I and Section III.A.

12.    The Policy contains the following exclusion:

The Insurer shall not be liable to make any payment for Loss in connection with any Claim:

*    *    *

Arising out of, based upon or attributable to the Directors or Officers or the Company gaining in fact any profit or advantage to which they were not legally entitled.

Policy, Section IV.A.  This exclusion is referenced in this Complaint as the "Profit or Advantage Exclusion."

3

13.    The Policy contains the following provision:

> If either the Insurer or Insured Entity cancels this policy . . . or . . .
> chooses not to renew this Policy, for any reason other than the
> Company's nonpayment of premium or non-compliance with the
> terms of this Policy, then the Insured Entity shall have the right,
> upon payment of the additional premium . . . to an extension of the
> Policy Period for Claims first made during the period of one year
> after the effective date of such cancellation or nonrenewal *but only*
> *with respect to Wrongful Acts committed before such effective date*
> [January 27, 2001] and otherwise covered by this Policy.

Policy, Section III.A. (emphasis added).  This period is referred to in this Complaint as the

Discovery Period.

14.    The Policy also contains the following provision:

> If both Loss covered by this Policy and other loss are incurred,
> either because a Claim includes both covered and non-covered
> matters, or because a Claim is made against both covered and non-
> covered parties, then the Directors, Officers, the Company and the
> Insurer agree to use their best efforts to determine a fair and proper
> allocation of all such amounts.  In making such determination, the
> parties shall take into account the relative legal and financial
> exposures, and the relative benefits obtained in connection with the
> defense and/or settlement, of and between the covered and non-
> covered parties and matters involved in the Claim.  In the event the
> parties cannot agree to an appropriate allocation percentage for the
> Claim, then the Insurer shall be obligated to make an interim
> payment of the amount of Loss, including Defense Costs, which
> the parties agree is not in dispute until a final allocation is agreed
> upon or determined pursuant to the terms of this Policy.

Policy, Section V.G.

15.    The Policy contains the following definition of "Loss":

> "Loss" shall mean any amounts which the Directors or Officers are
> legally obligated to pay, such amounts which the Company is
> required to indemnify the Directors or Officers, or such amounts
> which the Company may legally indemnify the Directors or
> Officers, for Claims made against the Directors or Officers, or any
> amounts which the Company is legally obligated to pay for
> Securities Claims made against the Company, in excess of the
> applicable Retention, including damages, judgments, orders,
> Settlements, and Defense Costs; provided, however, Loss shall not

> include criminal or civil fines or penalties imposed by law,
> multiplied portions of damages in excess of actual damages, taxes,
> or any matter which may be deemed uninsurable under the law
> pursuant to which this Policy shall be construed.

Policy, Section II.F.

### The Underlying Action

16.    Coram is a provider of alternative-site infusion therapy.  Infusion therapy involves the intravenous administration of drug therapies for nutrition, anti-infection, HIV, blood factor, pain management, chemotherapy, and other purposes.

17.    Coram filed a voluntary petition for relief under Title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware on August 8, 2000.  On March 8, 2002, the Bankruptcy Court appointed Arlin Adams as Chapter 11 Trustee of Coram (hereinafter, Adams is referred to as "Trustee").  The Bankruptcy Court entered an order confirming the Trustee's Plan of Reorganization on November 1, 2004, and Coram is now a private company.

18.    On December 29, 2004, pursuant to the approved Plan of Reorganization, the Trustee brought suit against defendants Crowley, Amaral, Casey, Smith, and Smoley in the United States District Court for the District of Delaware.  The Underlying Action is captioned *Adams v. Crowley, et al.*, No. 04-1565 (D. Del. 2004).

19.    On February 7, 2005, defendants Amaral, Casey, Smith, and Smoley moved to transfer the Underlying Action to the United States District Court for the District of Colorado.

20.    The complaint in the Underlying Action alleges that Crowley failed to disclose properly an employment agreement he had with one of Coram's lenders, Cerberus Partners L.L.P. ("Cerberus") prior to entering into a November 30, 1999, employment agreement with Coram.  It further alleges that, when this assertedly incompletely-disclosed employment

5

relationship was revealed in connection with Coram's bankruptcy proceedings, the Bankruptcy Court refused to confirm Coram's first proposed plan of reorganization.

21.    The complaint in the Underlying Action further alleges that, after the proposed plan of reorganization was denied on December 21, 2000, Crowley continued to accept payments of $80,000 per month from Cerberus, despite his then position as Chairman and CEO of Coram. As a result of this continued relationship with Cerberus, the complaint asserts that the Bankruptcy Court again rejected Coram's second plan of reorganization on December 21, 2001, stating that Crowley's asserted conflict of interest and continued acceptance of payment from Cerberus breached "his duties of care, good faith and loyalty" to Coram.

22.    With respect to defendants Amaral, Casey, Smith, and Smoley (collectively hereinafter, the "Board Defendants"), the complaint alleges that those members of Coram's board failed to properly investigate Crowley's relationship with Coram's lender, failed to remedy the asserted conflict of interests once it was discovered, and, by doing so, "failed to act in good faith and meet even minimal standards of attention."

23.    The complaint further asserts that the foregoing alleged breaches of fiduciary duty caused Coram unspecified harm, and, as a result, the Trustee seeks "compensatory damages, disgorgement, punitive damages, costs, attorneys' fees, pre-judgment interests and such other relief as the Court may deem just and proper."

24.    Upon receiving notice of the Underlying Action, Board Defendants tendered the claim to Genesis under the Policy on December 31, 2004, almost four years after the expiration of the Policy and almost three years after the expiration of the Discovery Period.  After receipt of the complaint in the Underlying Action, and after a review of the allegations contained therein, Genesis determined that there was no coverage available under the Policy for the Underlying

6

Action because the Policy Period and Discovery Period had expired. Even assuming the Policy was triggered, Genesis also advised the Defendants, *inter alia*, that the Policy's Profit or coverage was barred to the extend the Policy's Personal Profit or Advantage Exclusion applied, that the Policy provided no coverage for alleged Wrongful Acts occurring after January 27, 2001, and that there could be no indemnity for any amounts sought by the Trustee that did not satisfy the Policy's definition of "Loss."

25.    By letter dated February 23, 2005, Genesis informed the Defendants of its coverage determination and advised the Defendants that it would initiate the present declaratory judgment action to determine the rights and obligations of the parties. Genesis also reserved all rights under the Policy at that time.

## CONTROVERSY AND RIPENESS

26.    Genesis has identified numerous reasons why coverage is precluded and/or limited under the Policy.

27.    Upon information and belief, the Defendants take issue with Genesis's coverage position.

28.    These coverage issues will directly govern Genesis's obligations under the Policy. This matter is therefore ripe for adjudication.

## COUNT I

### DECLARATORY JUDGMENT THAT THE UNDERLYING CLAIM WAS MADE AFTER THE END OF THE POLICY PERIOD AND THE DISCOVERY PERIOD

29.    Genesis incorporates by reference each of the allegations in paragraphs 1 through 28 of this Complaint.

30.    The Underlying Action was commenced on December 29, 2004. The Policy provides specified coverage for coverage for Claims first made during the Policy Period and

7

during the Discovery Period, but only to the extent the Claim is based on Wrongful Acts

occurring before January 27, 2001. Policy, Sections I. & Section III.A. The Policy Period was

January 8, 1999, to January 27, 2001, as amended, and the Discovery Period extended reporting

of Claims from January 27, 2001, to January 27, 2002. Policy, Declarations, Item 2.

Accordingly, the Underlying Action does not constitute a Claim first made during the Policy

Period or Discovery Period, and Genesis has no coverage obligation for the Underlying Action.

31.     Therefore, Genesis seeks a declaration that no coverage exists under the Policy

for the Underlying Action.

## COUNT II

### DECLARATORY JUDGMENT THAT THE PROFIT OR
### ADVANTAGE EXCLUSION BARS COVERAGE FOR THE UNDERLYING ACTION

32.     Genesis incorporates by reference each of the allegations in paragraphs 1 through

31 of this Complaint.

33.     The Underlying Action alleges that Crowley wrongfully received remuneration

from Cerberus during the course of his employment by Coram and that receipt of such

remuneration constituted a breach of Crowley's fiduciary duties owed to Coram.

34.     The United States Bankruptcy Court for the District of Delaware has determined

that, as a result of the profit or advantage resulting from his relationship with Cerberus, Crowley

failed to fulfill his fiduciary duties to Coram.

35.     The Policy's Profit or Advantage Exclusion bars coverage for Claims arising out

of Directors or Officers gaining in fact any profit or advantage to which the Directors or Officers

are not legally entitled.

36.     Therefore, Genesis seeks a declaration that coverage for the Underlying Action is

excluded under Section IV.A. of the Policy.

8

## COUNT III

### DECLARATORY JUDGMENT THAT THERE IS NO COVERAGE UNDER THE POLICY FOR WRONGFUL ACTS OCCURRING AFTER JANUARY 27, 2001

37.    Genesis incorporates by reference each of the allegations in paragraphs 1 through 36 of this Complaint.

38.    The Policy provides no coverage for claims arising from Wrongful Acts committed after January 27, 2001. Policy, Section III.A. Accordingly, to the extent there is any coverage available under the Policy, such coverage is limited only to Claims arising from Wrongful Acts occurring prior to January 27, 2001.

39.    The Underlying Action is based on allegations that, after Crowley's asserted conflict of interest was revealed in December 2000, that conflict (and resulting breach of fiduciary duty) continued for over a year thereafter, well after January 27, 2001. Similarly, the alleged breach of fiduciary duties committed by the Board Defendants by failing to address the asserted conflict likewise continued through 2001 and thereafter.

40.    Policy Section V.G. provides that, should a Claim that includes both covered and non-covered matters result in Loss as defined by the Policy, coverage is limited to the amount allocated to the covered aspects of the Claim, including coverage for Defense Costs.

41.    Accordingly, Genesis seeks a declaration that, to the extent there is any coverage available for the Underlying Action, it is limited to coverage for Wrongful Acts occurring prior to January 27, 2001, and, accordingly, any Loss incurred in connection with the Underlying Action would be subject to an allocation pursuant to Policy Section V.G.

## COUNT IV

## DECLARATORY JUDGMENT THAT THERE IS NO COVERAGE UNDER THE POLICY FOR ANY AMOUNTS THAT DO NOT CONSTITUTE "LOSS"

42.    Genesis incorporates by reference each of the allegations in paragraphs 1 thorough 41 of this Complaint.

43.    To the extent there is any coverage available under the Policy for the Underlying Action, it is limited to coverage for Loss arising from Claims for a Wrongful Act. Policy, Section I.

44.    The complaint in the Underlying Action seeks to recover amounts that Crowley allegedly was not legally entitled to retain.

45.    The obligation to repay amounts wrongfully received does not constitute a "Loss," and such amounts are not insurable under applicable law.

46.    Accordingly, Genesis seeks a declaration that, to the extent any relief sought by the Trustee in the Underlying Action does not constitute a "Loss," there can be no coverage under the Policy for such amounts.

## OTHER COVERAGE DEFENSES

47.    Other Policy terms and conditions may ultimately be implicated even if coverage were available under the Policy. Nothing in this Complaint should be construed as a waiver by Genesis of any other coverage defenses under the Policy, and Genesis reserves the right to raise all other Policy terms and conditions as defenses to coverage as appropriate. Further, Genesis specifically adopts and incorporates herein its reservation of rights set forth in its letter of February 23, 2005.

WHEREFORE, Genesis requests that the Court enter a declaration and judgment in its favor:

A.      Declaring that, for the reasons set forth in Count I, the Underlying Action does not constitute a Claim made during the Policy Period or Discovery Period;

B.      Declaring that, for the reasons set forth in Count II, to the extent the Policy is implicated by the Underlying Action, no coverage exists based on the Profit or Advantage Exclusion;

C.      Declaring that, for the reasons set forth in Count III, to the extent the Policy is implicated by the Underlying Action, no coverage exists for Wrongful Acts occurring after January 27, 2001, and any coverage is subject to allocation pursuant to Policy Section V.G.;

D.      Declaring that, for the reasons set forth in Count IV, to the extent that the Policy is implicated, no coverage exists for amounts that do not constitute "Loss;"

E.      Awarding Genesis such additional declaratory and other relief as shall be found to be appropriate under the circumstances; and

F.      Awarding Genesis its fees and costs incurred in prosecuting this action.

DATED this 23rd day of February, 2005.

SHERMAN & HOWARD L.L.C.

By: _____

    Leanne B. De Vos
    633 Seventeenth Street, Suite 3000
    Denver, Colorado 80202
    (303) 299.8418
    (303) 298.0940  (facsimile)
    D.C. Box 12

and

OF COUNSEL:
Daniel J. Standish
Jason P. Cronic
Paul A. Dame
WILEY REIN & FIELDING LLP
1776 K Street, NW
Washington, DC 20006
(202) 719-7000
(202) 719-7049 (facsimile)

*Attorneys for Plaintiff Genesis
Insurance Company*

**Address of Plaintiff**
695 East Main, 4th Floor
Stamford, CT 06910

# EXHIBIT F



Wiley Rein & Fielding LLP

1776 K STREET NW
WASHINGTON, DC 20006
PHONE 202.719.7000
FAX    202.719.7049

Virginia Office
7925 JONES BRANCH DRIVE
SUITE 6200
McLEAN, VA 22102
PHONE 703.905.2800
FAX    703.905.2820

www.wrf.com

Daniel J. Standish
202.719.7130
dstandish@wrf.com

Jason P. Cronic
202.719.7175
jcronic@wrf.com

February 23, 2005

**VIA ELECTRONIC AND CERTIFIED MAIL,
RETURN RECEIPT REQUESTED**

Boris Feldman, Esq.                          Anthony C. Valiulis, Esq.
Wilson Sonsini Goodrich & Rosati             Much Shelist Freed Denenberg Ament
650 Page Mill Road                              & Rubenstein, P.C.
Palo Alto, CA 94304-1050                     191 N. Wacker Drive, Ste. 1800
                                             Chicago, IL 60606

Re:    Insured:            Coram Healthcare Corporation
       Genesis Policy No.: YXB001625A (the "Policy")
       Matter:             *Adams v. Crowley, et al.,* No. 04-1565 (D. Del.) (the
                           "Litigation")

Gentlemen:

As you know, we represent Genesis Insurance Company ("Genesis") in connection
with the above-referenced matter (the "Litigation"). On behalf of Genesis, this
letter further acknowledges your previous notice of the Litigation and provides you
with Genesis's current views regarding the availability of coverage under the Policy
for this matter.

According to the complaint in the Litigation, the plaintiff, Arlin Adams "as Chapter
11 Trustee of the Post-Confirmation Bankruptcy Estate of Coram Healthcare
Corporation and its wholly owned subsidiary Coram, Inc." (the "Trustee"), seeks
recovery against Daniel Crowley, Donald Amaral, William Casey, L. Peter Smith,
and Sandra Smoley for alleged breaches of fiduciary duties owed to Coram as a
result of their position as officers and/or directors of the company. *See* Complaint,
Trustee's Action (the "Complaint"), ¶¶ 1-7, 48-68. Specifically, the Complaint
alleges that Crowley breached fiduciary duties owed to Coram through failing to
disclose "actual and potential conflicts" arising from his relationship with Cerberus
Partners, LLP ("Cerberus"), with whom he is alleged to have had an employment
agreement during his tenure as Chairman and CEO of Coram. *Id.,* ¶¶ 10-50. The
other defendants, Coram's outside directors, are alleged to have violated their
fiduciary duties to Coram by failing to investigate Crowley's asserted relationship
with Cerberus and by allowing Crowley to continue in his role at Coram in spite of
an asserted conflict of interest arising from his relationship with Cerberus. *Id.,* ¶¶
51-68. The Complaint further asserts that the foregoing alleged breaches of
fiduciary duty caused Coram unspecified harm, and, as a result, the Trustee seeks
"compensatory damages, disgorgement, punitive damages, costs, attorneys' fees,

Wiley Rein & Fielding LLP

Boris Feldman, Esq.
Anthony C. Valiulis, Esq.
February 23, 2005
Page 2

pre-judgment interests and such other relief as the Court may deem just and proper."
*Id.*, Prayer for Relief.

The Policy was issued to Coram Healthcare for the period from January 8, 1999, to
January 8, 2001. Policy, Declarations, Item 2. The Policy Period subsequently was
extended to January 27, 2001. Coram Healthcare exercised its option to purchase
the Discovery Period pursuant to Section III of the Policy. As a result, the coverage
was extended for one year (or until January 27, 2002), but only for Claims first
made during the Discovery Period for Wrongful Acts committed before January 27,
2001, and otherwise covered by the Policy. Policy, Section III.A. Subject to all
applicable terms and conditions, the Policy has an aggregate limit of liability of $25
million. Policy, Declarations, Item 3.[1]

As a threshold issue, we note that the Policy responds only to Claims first made
against an Insured during the Policy Period or Claims first made against an Insured
during the Discovery Period based on Wrongful Acts committed prior to January
27, 2001. Policy, Sections I.B. and III.A. Both the Policy Period and the Discovery
Period expired before the Litigation was filed. Accordingly, there can be no
coverage for the Litigation unless it is deemed related to a Claim first made against
an Insured during the Policy Period or Discovery Period. *See* Policy, Section V.C.[2]

As set forth in Genesis's letters of March 8, 2001, and January 10, 2002, various
iterations of a proposed lawsuit against Mr. Crowley based in part on his
relationship with Cerberus were presented to the Bankruptcy Court overseeing
Coram's bankruptcy during the Discovery Period. After the end of the Discovery
Period, versions of a complaint naming additional individuals were proposed to the
Bankruptcy Court. However, to Genesis's knowledge, the Bankruptcy Court never

---

[1] This aggregate limit has been eroded by approximately $1.8 million due to payments and advances
made in connection with other claims under the Policy.

[2] The Policy also contains provisions regarding notices of potential Claims tendered during the
Policy Period. Policy, Section VII.B. Because there was no specific notice of potential Claim based
on the circumstances at issue in the Litigation, this provision is not implicated. We further note that
coverage under the Discovery Period applies solely with respect to Claims first made against an
Insured during the Discovery Period; the Policy does not provide for notices of potential Claims
during the Discovery Period. Policy, Sections III.A. and VII.B.

Wiley Rein & Fielding LLP

Boris Feldman, Esq.
Anthony C. Valiulis, Esq.
February 23, 2005
Page 3

permitted those actions to be initiated.  In that regard, the Policy defines "Claim," in relevant part, as:

> . . . the following proceedings initiated against a Director or Officer for money damages or other relief, whether brought within or outside of the United States:
>
> (1)    any civil, arbitration or administrative proceeding commenced by: (a) service of a complaint or similar pleading, or (b) receipt of a notice of charges;
>
> (2)    any criminal proceeding commenced by the return of an indictment or an information;
>
> (3)    any administrative or regulatory investigation commenced by a formal order of investigation;
>
> (4)    any appeal from the above proceedings; or
>
> (5)    other written or verbal demand for money or services.

Policy, Section II.(A), as amended by Endorsement No. GIC-7425 (08/93). Because the Bankruptcy Court never allowed the proposed matters to proceed, they did not constitute a "Claim."  Accordingly, no Claim against an Insured was first made during the Policy Period or Discovery Period, so the Litigation cannot relate back to a Claim made during the Policy Period or Discovery Period.  Policy, Section V.C.  Thus, the Litigation falls outside the coverage grant of the Policy.

We note that counsel for some insureds previously contended that the proposed lawsuit as originally presented by the Equity Committee formed as a result of Coram's bankruptcy proceeding constituted a Claim, contending that it was a "notice of charges" pursuant to Policy Section II.A.1.b., as amended.  We do not believe that position to be well-founded, however, as that definition specifically incorporates a requirement that a proceeding be "commenced."  As set forth above,

Wiley Rein & Fielding LLP

Boris Feldman, Esq.
Anthony C. Valiulis, Esq.
February 23, 2005
Page 4

the Bankruptcy Court never allowed that action to be commenced, and thus it never satisfied the Policy's definition of "Claim."[3]

Genesis is aware that, in response to Genesis's letter of March 8, 2001, Coram also contended that the proposed lawsuit "arose out of the same circumstance" as *Furst v. Feinberg*, No. 2:00cv05509 (D.N.J.) (the "Securities Action"), and thus constituted a single Claim with that action, first made during the Policy Period. Genesis respectfully disagrees. The Securities Action was filed by different plaintiffs and focused on an alleged scheme by Coram's directors and officers, among others, to drive Coram into bankruptcy in connection with an effort to extinguish shareholder equity in the company. *See* Third Amended Class Action Complaint, *Furst v. Feinberg*, No. 2:00cv05509 (D.N.J. Nov. 8, 2000), ¶ 3 (alleging that, defendants implemented "a scheme designed to perpetrate fraud upon the market . . . in order to artificially depress the trading price of [Coram] shares, and create the false impression that the stockholders' equity . . . was steadily decreasing in value, and . . . that it was completely worthless . . . . to justify a bankruptcy 'reorganization'"). The Litigation is not based on any such theory and, indeed, the complaint in that action is wholly silent as to any purported scheme to devalue Coram. Accordingly, the Litigation is unrelated to the Securities Action.

We note, however, that, even if the Trustee's Action did relate back to a Claim first made during the Policy Period or Discovery Period, a number of additional Policy terms and conditions would be implicated. In an abundance of caution, Genesis discusses potentially implicated Policy provisions below.

There is no coverage for Loss under the Policy in connection with any Claim arising out of Directors or Officers gaining in fact any profit or advantage to which they were not legally entitled. Policy, Section IV.A. In light of the allegations of the Complaint regarding the breach of the fiduciary duties of defendant Crowley for his own financial benefit, Genesis reserves the right to deny coverage based on this exclusion.

---

[3] Similarly, counsel previously contended that the proposed lawsuit constituted a Claim based on certain language from Policy Endorsement No. GIC-7473 (8/93) ("The Claim must be a demand for damages by an injured party but it does not have to be in writing."). However, this assertion (based on an endorsement that specifically states that it does not alter the scope of the Policy's provisions) does not address the fact that the proposed lawsuit was never permitted to proceed.

Wiley Rein & Fielding LLP

Boris Feldman, Esq.
Anthony C. Valiulis, Esq.
February 23, 2005
Page 5

The Policy also excludes coverage for any Claim arising out of the committing in fact of deliberate fraudulent, dishonest, or criminal acts. Policy, Section IV.B. In light of the allegations of the Complaint regarding the improper withholding of information by Mr. Crowley in connection with Coram's bankruptcy proceedings and securities filings, *see* Complaint, ¶¶ 25, 34, Genesis reserves the right to deny coverage based on this exclusion.

Further, the Policy precludes coverage for Loss in connection with any Claim:

> Which is insured in whole or in part by another valid policy or policies, including policies issued to an Outside Entity, regardless of whether or not any Loss arising from such Claim is collectible or recoverable under such other policy or policies; provided, however, this exclusion shall not apply to policies which are specifically excess of this Policy by reference hereto (including the Policy Number).

Policy, Section IV.C. Genesis reserves the right to deny coverage based on this exclusion. To the extent that you have not already done so, please notify any other relevant insurer of the Litigation. In addition, please provide us with copies of all other potentially relevant policies (including any successor policies or policies issued to Cerberus), as well as all correspondence to or from such other insurers regarding the availability of coverage for the Litigation.

We also note that the Trustee purports to bring the lawsuit pursuant to his authority as the Trustee of Coram's Bankruptcy Estates. Complaint, ¶ 3; *see also* Chapter 11 Trustee's Second Amended Joint Plan of Reorganization, § 5.3, *In re Coram Healthcare Corp.*, Nos. 00-3299 and 00-3300 (Bankr. D. Del. April 15, 2004) (providing that the Trustee has Coram's rights to prosecute all causes of action held by Coram). In that regard, the Policy excludes coverage for any Claim "[b]rought by, at the behest of, or with the assistance or active participation of, the Insured Entity or a Subsidiary (or any affiliated person), or any Director or Officer of the Insured Entity or a Subsidiary . . . ." Policy, Section IV.I. Genesis reserves the right to deny coverage based on this exclusion.

Wiley Rein & Fielding LLP

Boris Feldman, Esq.
Anthony C. Valiulis, Esq.
February 23, 2005
Page 6

The Policy only affords coverage for "Loss." That term is defined as:

> any amounts which the Directors or Officers are
> legally obligated to pay, such amounts which the
> Company is required to indemnify the Directors or
> Officers, or such amounts which the Company may
> legally indemnify the Directors or Officers, for
> Claims made against the Directors or Officers, or any
> amounts which the Company is legally obligated to
> pay for Securities Claims made against the Company,
> in excess of the applicable Retention, including
> damages, judgments, orders, Settlements, and Defense
> Costs; provided, however, Loss shall not include
> criminal or civil fines or penalties imposed by law,
> multiplied portions of damages in excess of actual
> damages, taxes, or any matter which may be deemed
> uninsurable under the law pursuant to which this
> Policy shall be construed.

Policy, Section II.F. Genesis reserves the right to deny coverage for amounts that
do not constitute "Loss." This reservation of rights includes the right to deny
coverage for the payment or disgorgement of amounts to which the defendants were
not legally entitled.

In addition, the Complaint focuses in large part on events occurring after January
27, 2001, the expiration of the Policy Period, and the Policy provides no coverage
for claims arising from Wrongful Acts committed after January 27, 2001. Policy,
Section III.A. The Litigation appears to be based in substantial part on alleged
Wrongful Acts after the Policy Period, including the failure to address the alleged
conflict of interest of Mr. Crowley. Thus, to the extent the Litigation does
constitute a Claim under the Policy, it is based in significant measure on non-
covered allegations. In that regard, the Policy provides:

> If both Loss covered by this Policy and other loss are
> incurred, either because a Claim includes both
> covered and non-covered matters, or because a Claim
> is made against both covered and non-covered parties,
> then the Directors, Officers, the Company and the

Wiley Rein & Fielding LLP

Boris Feldman, Esq.
Anthony C. Valiulis, Esq.
February 23, 2005
Page 7

> Insurer agree to use their best efforts to determine a
> fair and proper allocation of all such amounts.  In
> making such determination, the parties shall take into
> account the relative legal and financial exposures, and
> the relative benefits obtained in connection with the
> defense and/or settlement, of and between the covered
> and non-covered parties and matters involved in the
> Claim.  In the event the parties cannot agree to an
> appropriate allocation percentage for the Claim, then
> the Insurer shall be obligated to make an interim
> payment of the amount of Loss, including Defense
> Costs, which the parties agree is not in dispute until a
> final allocation is agreed upon or determined pursuant
> to the terms of this Policy.

Policy, Section V.G.  Genesis reserves all rights under this provision.

*    *    *    *    *

In light of the forgoing substantial coverage concerns, and in an abundance of
caution, Genesis has initiated a declaratory judgment action to establish its rights
and obligations under the Policy.  A courtesy copy is included for your review.
Please advise us whether you are willing to accept service of the complaint on
behalf of your clients.

We note that the information available to Genesis is preliminary and may be
incomplete.  If there is additional information that you would like Genesis to
consider in connection with this matter, please provide it to us.  Genesis would be
pleased to consider any additional information and materials that you submit.  This
letter, as well as all past, present and future communications, is sent pursuant to a
complete reservation of all of Genesis's rights under the Policy and at law.

Wiley Rein & Fielding LLP

Boris Feldman, Esq.
Anthony C. Valiulis, Esq.
February 23, 2005
Page 8

Sincerely yours,

Daniel J. Standish
Jason P. Cronic

# EXHIBIT G

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Settlement Agreement") is made and entered into this fifth day of April, 2006, by and between ARLIN M. ADAMS (the "Trustee"), in his capacity as CHAPTER 11 TRUSTEE TO THE BANKRUPTCY ESTATES OF CORAM HEALTHCARE CORPORATION ("CHC") and CORAM, INC. ("CI" and together with CHC, collectively "Coram") and the following former members of the Coram Board of Directors: DONALD J. AMARAL, a citizen of the State of Nevada, WILLIAM J. CASEY, a citizen of the State of California, L. PETER SMITH, a citizen of the State of Illinois, and SANDRA L. SMOLEY, a citizen of the State of California (collectively the "Outside Directors").

WHEREAS, on December 29, 2004, the Trustee commenced an action against defendant Daniel J. Crowley, Coram's former Chairman, President and CEO, and the Outside Directors, in the United States District Court for the District of Delaware at Case No. 04-1565-SLR (the "Delaware Action");

WHEREAS, the Delaware Action alleges that Crowley and the Outside Directors breached their fiduciary duties to Coram;

WHEREAS, the Outside Directors notified Genesis Insurance Company ("Genesis") of the Delaware Action but Genesis has refused to defend them;

WHEREAS, the Trustee and the Outside Directors, without any admission of liability, desire to avoid the expense and uncertainty of further litigation and to resolve any and all disputes that have been raised or could be raised in the Delaware Action by entering into this Settlement Agreement; and

1

**WHEREAS**, this Settlement Agreement is subject to approval by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

**NOW, THEREFORE**, in consideration of the promises set forth in this Settlement Agreement, which the parties agree constitute good and sufficient consideration, and subject to the terms and conditions set forth below, and intending to be legally bound, the Trustee and the Outside Directors agree as follows:

1.      The Outside Directors consent to the entry of judgment in the Delaware Action against them in favor of the Trustee in the amount of $9,550,000 (the "Judgment").

2.      Within five business days of the execution of this Settlement Agreement and receipt by the Trustee of the financial information from the Outside Directors as set forth below, the Trustee will file a motion with the Bankruptcy Court to approve this Settlement Agreement.

3.      The Outside Directors hereby assign to the Trustee all of their rights and any and all causes of action any or all of them may have arising out of, or under, any of the directors' and officers' liability insurance policies obtained by Coram for their benefit, including but not limited to the primary policy issued by Genesis (Policy No. YXB001625A), for the period January 8, 1999 through January 27, 2001 (the "D&O Policy"), and any further causes of action based on the handling of the Outside Directors' claims under such policies.

4.      The Trustee agrees that he will not seek to execute on the Judgment on any assets of the Outside Directors other than the claims assigned in paragraph 3 above and the directors' and officers' liability insurance policies, including the D&O Policy.

2

5.      This settlement is contingent upon the Outside Directors providing the Trustee in writing with accurate and complete information substantiating their representations regarding the Outside Directors' executable assets, which the Trustee has reasonably relied upon in negotiating this Settlement Agreement.

6.      Any financial information provided by the Outside Directors that is marked "Confidential" by the Outside Directors shall not be disclosed by the Trustee or his attorneys to any third party without the consent of the Outside Directors except that:  (a) the Trustee may, if necessary, submit such financial information to the Bankruptcy Court in support of his motion to approve this Settlement Agreement, but shall request that he be permitted to do so under seal; and (b) the Trustee may comply with any order or direction of the Bankruptcy Court regarding such information.

7.      The Outside Directors shall continue to defend the action for a declaratory judgment filed against them by Genesis in the U.S. District Court for the District of Colorado (Civil Action No. 05-cv-335) (the "Coverage Action") and to prosecute their counterclaim for breach of the D&O Policy in the Coverage Action until this Settlement Agreement is approved by the Bankruptcy Court. Thereafter, the parties shall use their best efforts to have the Trustee substituted as a party-in-interest for the Outside Directors in the Coverage Action.

8.      The Trustee shall make reasonable efforts to prosecute in the Coverage Action the Outside Directors' claims under the D&O Policy for attorneys' fees and costs incurred in the Delaware Action and the Coverage Action. The Trustee shall not be required to appeal any ruling of the trial court in the Coverage Action relating to the Outside Directors' claim for attorneys'

3

fees and costs and the Trustee shall be permitted to compromise such claim with the approval of the Outside Directors, which shall not be unreasonably withheld.

9.      Within ten (10) days of the Bankruptcy Court's approval of this Settlement Agreement, the parties shall cause the consent judgment to be entered in the Delaware Action.  If the Bankruptcy Court does not grant the Motion to Approve Settlement, this Settlement Agreement is null, void and of no effect.  If the Bankruptcy Court grants the Motion to Approve Settlement but only with modifications, the parties agree to negotiate in good faith in an effort to reach agreement to satisfy any concerns the Bankruptcy Court might express.  Failing such agreement, the Settlement Agreement will be null and void and the parties will return to their prior positions.

10.      Upon approval of this Settlement Agreement by the Bankruptcy Court, each of the Outside Directors agrees to cooperate with the Trustee in connection with the Coverage Action and the continuing Delaware Action against defendant Daniel Crowley and shall comply with all reasonable requests of the Trustee.

11.      The Trustee and the Outside Directors represent that they enter into this settlement freely and voluntarily and with and upon the advice of counsel.

12.      No covenants, agreements, representations or warranties of any kind have been made by any party hereto, except as expressly set forth herein.  This Settlement Agreement constitutes the entire agreement between the parties relating to the subject matter hereof, and all prior negotiations and discussions with respect to the subject matter of this Settlement

PHDATA 1354393_2

Agreement have been and are merged and integrated into, and superseded by this Settlement Agreement.

13.    This Settlement Agreement may not be altered, amended, modified, terminated or otherwise changed in any respect whatsoever except by a writing signed by the Trustee and the Outside Directors.

14.    This Settlement Agreement shall be binding upon and inure to the benefit of the Trustee (in his capacity as Trustee only and not personally) and the Outside Directors, and their respective agents, representatives, attorneys, partners, employees, predecessors, successors, heirs, assigns, executors, administrators, and any other persons who may in any fashion claim an interest in the subject matter hereof through any of the parties.

15.    This Settlement Agreement shall be construed and enforced under the law of the State of Delaware.

16.    This Settlement Agreement may be signed in counterpart copies, each of which shall be deemed to be an original document, and all of which shall together be deemed to constitute a single document.  Facsimile copies shall be deemed to be originals.

**[balance of page intentionally left blank]**

5

IN WITNESS WHEREOF, the parties hereto have executed this Settlement Agreement as of the date stated at the outset.

WITNESS:

_____

**ARLIN M. ADAMS**

_____
Arlin M. Adams, as Chapter 11 Trustee of
Coram Healthcare Corp. and Coram, Inc.

WITNESS:

_____

**DONALD J. AMARAL**

_____
Donald J. Amaral

WITNESS:

_____

**WILLIAM J. CASEY**

_____
William J. Casey

WITNESS:

_____

**L. PETER SMITH**

_____
L. Peter Smith

WITNESS:

_____

**SANDRA L. SMOLEY**

_____
Sandra L. Smoley

6

IN WITNESS WHEREOF, the parties hereto have executed this Settlement Agreement as of the date stated at the outset.

WITNESS:                                ARLIN M. ADAMS

_____                 _____
                                        Arlin M. Adams, as Chapter 11 Trustee of
                                        Coram Healthcare Corp. and Coram, Inc.

WITNESS:                                DONALD J. AMARAL

_____                 _____
                                        Donald J. Amaral


WITNESS:                                WILLIAM J. CASEY

_____                 _____
                                        William J. Casey

WITNESS:                                L. PETER SMITH

_____                 _____
                                        L. Peter Smith

WITNESS:                                SANDRA L. SMOLEY

_____                 _____
                                        Sandra L. Smoley


6

IN WITNESS WHEREOF, the parties hereto have executed this Settlement Agreement as of the date stated at the outset.

WITNESS:                          **ARLIN M. ADAMS**

_____          _____
                                 Arlin M. Adams, as Chapter 11 Trustee of
                                 Coram Healthcare Corp. and Coram, Inc.

WITNESS:                          **DONALD J. AMARAL**

_____          _____
                                 Donald J. Amaral

WITNESS:                          **WILLIAM J. CASEY**

_____          _____
                                 William J. Casey

WITNESS:                          **L. PETER SMITH**

_____          _____
                                 L. Peter Smith

WITNESS:                          **SANDRA L. SMOLEY**

_____          _____
                                 Sandra L. Smoley

6

To: Boris Feldman

IN WITNESS WHEREOF, the parties hereto have executed this Settlement Agreement as of the date stated at the outset.

WITNESS:                              ARLIN M. ADAMS

_____              _____
                                     Arlin M. Adams, as Chapter 11 Trustee of
                                     Coram Healthcare Corp. and Coram, Inc.

WITNESS:                              DONALD J. AMARAL

_____              _____
                                     Donald J. Amaral

WITNESS:                              WILLIAM J. CASEY

_____              _____
                                     William J. Casey

WITNESS:                              L. PETER SMITH

_____              _____
                                     L. Peter Smith

WITNESS:                              SANDRA L. SMOLEY

_____              _____
                                     Sandra L. Smoley

6

IN WITNESS WHEREOF, the parties hereto have executed this Settlement Agreement as of the date stated at the outset.

WITNESS:                                 **ARLIN M. ADAMS**

_____          _____
                                         Arlin M. Adams, as Chapter 11 Trustee of
                                         Coram Healthcare Corp. and Coram, Inc.

WITNESS:                                 **DONALD J. AMARAL**

_____          _____
                                         Donald J. Amaral

WITNESS:                                 **WILLIAM J. CASEY**

_____          _____
                                         William J. Casey

WITNESS:                                 **L. PETER SMITH**

_____          _____
                                         L. Peter Smith

WITNESS:                                 **SANDRA L. SMOLEY**

_____          _____
                                         Sandra L. Smoley

6

# EXHIBIT H

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

In re:                                          : Chapter 11
                                                :
CORAM HEALTHCARE CORP. and                      : Case No. 00-3299 (MFW)
CORAM, INC.,                                     : (Jointly Administered)
                                                :
            Debtors.                            : **Docket Ref. No: 4646**
                                                :

## ORDER GRANTING MOTION OF THE CHAPTER 11 TRUSTEE
## FOR APPROVAL OF SETTLEMENT WITH OUTSIDE DIRECTORS

AND NOW, this 24th day of ___April___, 2006, upon

consideration of the Motion of the Chapter 11 Trustee for Approval of Settlement With

Outside Directors (the "Motion"); and upon further consideration of any objection to the

Motion; and the Court finding that: (a) it has jurisdiction over this matter pursuant to 28

U.S.C. §§ 157 and 1334; (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (c)

notice of the Motion was sufficient under the circumstances and no other further notice need

be provided; (d) a reasonable opportunity to object or to be heard regarding the relief

requested in the Motion has been afforded to all interested persons and entities; (e) the relief

requested in the Motion in the best interests of the Debtors'[1] estates; (f) good and sufficient

grounds for entering into the Settlement Agreement annexed to the Motion as Exhibit F (the

"Settlement Agreement") have been established; and (g) the terms and conditions of the

Settlement Agreement are fair, reasonable and in the best interest of the Debtors' estates; and

after due deliberation thereon and sufficient cause appearing therefore, it is

---

[1] Unless otherwise defined herein, all capitalized terms shall have the same meanings ascribed to them in the
Motion.

**ORDERED**, that, pursuant to 11 U.S.C. § 105 and Fed. R. Bankr. P. 9019, the

Motion be and hereby is **GRANTED**, and it is further

**ORDERED**, that the Trustee be and hereby is **AUTHORIZED** to enter into the

Settlement Agreement, the terms and conditions of which are **APPROVED**; and it is further

**ORDERED**, that the Trustee be and hereby is **AUTHORIZED** to take such

further actions as may be necessary to implement the terms and conditions of the Settlement

Agreement.

Mary F. Walrath, C.U.S.B.J.

2

# EXHIBIT I

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| ARLIN M. ADAMS, Chapter 11 Trustee of the | : |
| Post-Confirmation Bankruptcy Estates of | : |
| CORAM HEALTHCARE CORPORATION | : Case No. 04-1565-SLR |
| and CORAM, INC., | : |
| Plaintiff, | : |
|  | : |
| v. | : |

·DANIEL D. CROWLEY; DONALD J.
AMARAL; WILLIAM J. CASEY; L. PETER
SMITH; AND SANDRA L. SMOLEY,

Defendants.

## STIPULATION AND ORDER ENTERING
## JUDGMENT AGAINST OUTSIDE DIRECTORS

Plaintiff, Arlin M. Adams, Chapter 11 Trustee (the "Trustee") of the bankruptcy

estates of Coram Healthcare Corporation and Coram, Inc. (collectively "Coram") and

Defendants Donald J. Amaral, William J. Casey, L. Peter Smith and Sandra L. Smoley

(collectively "the Outside Directors"), hereby stipulate and jointly move for the entry of a final

judgment in favor of the Trustee and against the Outside Directors, as follows:

WHEREAS, on December 29, 2004, the Trustee commenced this action; and

WHEREAS, on or about April 5, 2006, the Trustee and the Outside Directors

made and entered into a Settlement Agreement resolving any and all disputes that have been

raised or could have been raised in this matter, subject to approval by the United States

Bankruptcy Court for the District of Delaware in Coram's Chapter 11 proceeding (the "Settlement Agreement); and

WHEREAS, by Order dated April 24, 2006, the United States Bankruptcy Court for the District of Delaware entered an Order approving the Settlement Agreement and found the Settlement Agreement reasonable; and

WHEREAS, the Settlement Agreement provides, *inter alia*, that the Outside Directors shall consent to the entry of judgment against them, jointly, severally, and in the alternative, and in favor of the Trustee in the amount of $9,550,000; and

WHEREAS, the Settlement Agreement further provides, *inter alia*, that the Outside Directors assign to the Trustee all of their rights and any and all causes of action any or all of them may have arising out of, or under, any of the directors' and officers' liability insurance policies obtained by Coram for their benefit, including but not limited to the primary policy issued by Genesis (Policy No. YXB001625A), for the period January 8, 1999 through January 27, 2001 (the "D&O Policy"), and any further causes of action based on the handling of the Outside Directors' claims under such policies (collectively, the "Assigned Claims"); and

WHEREAS, the Settlement Agreement further provides, *inter alia,* that the Trustee will not seek, in connection with any such judgment entered, to execute on any assets of the Outside Directors, other than the Assigned Claims.

NOW, THEREFORE, the parties respectfully request that this Court enter the following Order:

2                                          PHDATA 1364038_2

1.     Final judgment in the amount of $9,550,000 shall be and hereby is entered in favor of the Trustee and against Defendants Donald J. Amaral, William J. Casey, L. Peter Smith and Sandra L. Smoley, jointly, severally and in the alternative.

2.     The Trustee shall not seek, in connection with the judgment entered against the Outside Directors, to execute on any assets of the Outside Directors, other than the Assigned Claims.

## [THIS SPACE INTENTIONALLY LEFT BLANK]

3                                                                                          PHDATA 1364038_2

SCHNADER HARRISON SEGAL
& LEWIS LLP

By: _____
Richard A. Barkasy (#4683)
Michael J. Barrie (#4684)
824 Market Street Mall, Suite 1001
Wilmington, DE 19801
(302) 888-4554 (telephone)
(302) 888-1696 (facsimile)

-and-

Barry E. Bressler (*pro hac vice*)
Wilbur L. Kipnes (*pro hac vice*)
1600 Market Street, Suite 3600
Philadelphia, PA 19103-7286
(215) 751-2000 (telephone)
(215) 751-2205 (facsimile)

Counsel to Arlin M. Adams,
Chapter 11 Trustee

Dated: May 26, 2006

POTTER ANDERSON & CORROON LLP

By: _____
Peter J. Walsh, Jr. (#2437)
1313 N. Market St.
Hercules Plaza, 6th Flr.
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6037 (telephone)
(302) 658-1192 (facsimile)

-and-

WILSON SONSINI GOODRICH
& ROSATI, LLP
Boris Feldman
650 Page Mill Road
Palo Alto, CA 64304-1050
(650) 493-9300 (telephone)
(650) 493-6811 (facsimile)

Counsel to the Outside Directors

**SO ORDERED**, this _14th_ day of _____June_____, 2006.

_____
Sue L. Robinson, U.S.D.J.

4                                                          PHDATA 1364038_2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| ARLIN M. ADAMS, as Chapter 11 Trustee of the Bankruptcy Estates of Coram Healthcare Corp. and Coram, Inc. and not individually, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. _____ |
| GENESIS INSURANCE COMPANY, | ) ) | JURY TRIAL DEMANDED |
| Defendant. | ) ) ) | |

## COMPLAINT

Plaintiff, Arlin M. Adams, as the Chapter 11 Trustee of the bankruptcy estates of Coram Healthcare Corporation ("CHC") and its wholly-owned subsidiary Coram, Inc. ("CI") (collectively "Coram"), by way of complaint against Genesis Insurance Company ("Genesis"), states:

## PARTIES

1.    Coram is the leading provider of alternative-site infusion therapy in the United States.  Infusion therapy involves the intravenous administration of drug therapies for nutrition, anti-infection, HIV, blood factor, pain management, chemotherapy and other purposes.

2.    On August 8, 2000, Coram filed a voluntary petition for relief under Chapter 11 of the United States Code §§ 101, *et seq*. (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

3.    At a hearing held on February 12, 2002, the Bankruptcy Court granted two motions seeking the appointment of a Chapter 11 trustee to assume control over Coram's

property and affairs pursuant to Section 1104 of the Bankruptcy Code. On March 7, 2002, the

Bankruptcy Court entered an order approving the appointment of Arlin M. Adams, former judge

of the United States Court of Appeals for the Third Circuit, as Chapter 11 Trustee of Coram (the

"Trustee").

4.    At all times relevant hereto, CHC was a Delaware corporation.

5.    CI is a Delaware corporation.

6.    The Trustee lives and works in the Commonwealth of Pennsylvania.

7.    Genesis is a Connecticut corporation with principal places of business in

Connecticut and is authorized to do business in Delaware.

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as the

action is between citizens of different states and the matter in controversy exceeds $75,000,

exclusive of interest and costs.

9.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1409.

## FACTUAL ALLEGATIONS

**A.    The Outside Directors' Failure to Investigate
    and Address Crowley's Conflict of Interest.**

10.    On December 21, 2000, the Bankruptcy Court denied confirmation of Coram's

first proposed plan of reorganization. The Bankruptcy Court held that Coram had not proposed

its plan in good faith because its CEO, Daniel D. Crowley ("Crowley"), had an actual conflict of

interest, which he failed to disclose, due to his separate employment contract with one of

Coram's largest creditors, Cerberus Partners, L.P. ("Cerberus"), which required that Crowley

obey the instructions of Cerberus and under which Crowley was being paid almost $1 million per

year. A true and correct copy of the Bankruptcy Court's decision is attached hereto as Exhibit A.

11.    Following denial of confirmation of the first plan, Coram's Board of Directors formed a Special Committee of independent directors, consisting of Coram's four outside directors: Donald J. Amaral; William J. Casey; L. Peter Smith; and Sandra L. Smoley (the "Outside Directors"). The Special Committee retained Harrison J. Goldin Associates, L.L.C. ("Goldin"), a financial advisory firm, as an independent restructuring advisor. Coram filed a motion to appoint Goldin on February 1, 2001, which the Bankruptcy Court approved on February 26, 2001.

12.    As approved by the Bankruptcy Court, Goldin's assignment was to advise the Special Committee regarding Crowley's relationship with Cerberus and potential revisions to the plan of reorganization that had been rejected.

13.    Goldin prepared a report of his investigation and Coram incorporated his recommendations into Coram's second proposed plan of reorganization.

14.    On December 21, 2001, the Bankruptcy Court issued a written opinion denying confirmation of the Debtors' second plan. *In re Coram Healthcare Corp.,* 271 B.R. 228 (Bankr. D. Del. 2001), a true and correct copy of the Bankruptcy Court's opinion is attached as Exhibit B. After hearing testimony concerning events since December 2000, the Bankruptcy Court concluded:

> Nothing, in fact, has changed since the first confirmation hearing. Crowley continues to receive almost $1 million a year from one of the Debtors' largest creditors, while, serving as the Debtors' CEO and President. Under his agreement with Cerberus, he is required to obey its instructions or risk having the agreement terminated and losing his $1 million. This is an actual conflict of interest, as we concluded at the first confirmation hearing.

*Id.* at *17-18.

15.    The Bankruptcy Court rejected Coram's argument that Crowley's conflict of interest had caused no harm to Coram. To that end, the Bankruptcy Court found that:

> there is absolutely no evidence from which the Court can conclude
> that the Debtors have suffered no harm from Crowley's continued
> conflict of interest. Mr. Goldin's assertion that there must be no
> harm since the disclosure of the relationship because no harm was
> caused by Crowley when the relationship was hidden is not logical,
> nor is it borne out by the facts. Crowley did cause harm to the
> Debtors while his relationship with Cerberus was hidden and there
> is no reason to assume he did not cause harm to the Debtors when
> that relationship was disclosed.

*Id.* at * 27.

16.     In its opinion, the Bankruptcy Court noted that one of the Outside Directors "testified that Goldin was hired to 'sprinkle holy water on the situation' and make everything all right." *Id.* at *15.

17.     The Bankruptcy Court found that the Special Committee had taken no action in response to the denial of confirmation of Coram's first plan other than hiring Goldin and reviewing his report. The Bankruptcy Court explained, "[s]ignificantly, it did not conduct any investigation of Crowley's conflict of interest, did not require that Crowley cease accepting any compensation from Cerberus and did not even ask Crowley if the conflict persisted." *Id.*

18.     The Bankruptcy Court stated that Coram "should have required that Crowley sever all agreements with Cerberus as a condition of continued employment" and concluded that the "don't ask, don't tell" approach adopted by the Special Committee did not fulfill its fiduciary duty and that the Special Committee's hiring of Goldin neither cured the conflict nor evidenced good faith. *Id.* at *29, 33.

19.     In its later opinion confirming the plan of reorganization proposed by the Trustee, the Bankruptcy Court made it clear that Crowley's conflict was the reason that Coram remained in bankruptcy:

> As we recognized at the conclusion of the first confirmation
> hearing, Crowley's consultation agreement with Cerberus created
> an actual conflict of interest that tainted the Debtors' restructuring
> of its debt, the Debtors' negotiation of a plan, and the Debtors'

> ultimate emergence from bankruptcy.  The delay (and the
> additional expenses incurred by the Debtors inherent in that delay)
> is largely attributable to that conflict.

*In re Coram Healthcare Corp.*, 315 B.R. 321, 347-48 (Bankr. D. Del. 2004), a true and correct

copy of which is attached hereto as Exhibit C.

**B.      The Confirmation of the Trustee's Plan.**

20.      Shortly after the Bankruptcy Court rejected Coram's second plan of

reorganization, the Trustee was appointed.

21.      On May 1, 2003, the Trustee filed a proposed plan of reorganization that provided

for a breach of fiduciary duty lawsuit against Crowley and the Outside Directors.

22.      In accordance with the Court's order entered as of November 1, 2004, the

Bankruptcy Court confirmed the Trustee's Second Amended Plan of Reorganization (the

"Plan"), which became effective on December 1, 2004 (the "Effective Date").

**C.      The Trustee's D&O Action.**

23.       On December 29, 2004, in accordance with the confirmed Plan, the Trustee filed

an action in the United States District Court for the District of Delaware, Civil Action No. 04-

1565 (SLR) (the "D&O Action"), asserting that Crowley and the Outside Directors breached

their fiduciary duties to Coram.  A true and correct copy of the Complaint in the D&O Action is

attached as Exhibit D.

24.      In the complaint commencing the D & O Action, the Trustee alleged that the

Outside Directors breached their fiduciary duties to Coram by, *inter alia*:  (a) making no

inquiries and approving Crowley's employment as CEO without investigating Crowley's

relationship with Cerberus or learning that Crowley was receiving nearly $1 million per year

from Cerberus; (b) failing to take adequate remedial action after the Bankruptcy Court rejected

the Debtors' first plan as a result of Crowley's conflict; (c) failing to inquire as to whether Crowley continued to receive payments from Cerberus after the Bankruptcy Court denied confirmation of the first plan; and (d) hiring Goldin, not to give truly independent advice, but rather to "sprinkle holy water" on the situation.

25.     In the D&O Action, the Trustee seeks to recover more than $100 million in damages, including more than $40 million in reorganization expenses incurred by Coram after the first plan was rejected and the substantial diminution in Coram's value that resulted from the delay in its emerging from bankruptcy.

**D.     The D&O Policy Issued By Genesis.**

26.     Coram purchased from Genesis a Directors' and Officers' Liability Policy (Policy No. YXB001625A) (the "D&O Policy), which, as amended, covered the period from January 8, 1999 through January 27, 2001 (the "Policy Period") and had a discovery period for reporting claims extending until January 27, 2002 (the "Discovery Period"). The D&O Policy has an aggregate limit of liability of $25 million. A true and correct copy of the D&O Policy is attached as Exhibit E.

27.     The Outside Directors notified Genesis of the D&O Action and requested that Genesis defend their interests. Genesis declined.

28.     Under the D&O Policy, Genesis agreed to pay: (a) claims made during the Policy Period based on a "Wrongful Act" of Coram's officers and directors, (b) claims made during the Discovery Period based on a "Wrongful Act" of Coram's officers and directors during the policy period, (c) claims made after the Policy Period that were based on potential claims of which notice was provided during the Policy Period, and (d) claims made after the Policy Period that were based on or arising out of the same acts that were already subject to claims made during the Policy Period.

29.     The definition of a "Wrongful Act" under the D&O Policy includes "any actual or alleged act, omission, misstatement, misleading statement, neglect, error or breach of duty" of Coram's directors or officers in their capacity as directors or officers of Coram. (D&O Policy § II.L.)

30.     The Trustee's claims in the D&O Action that the Outside Directors breached their fiduciary duties by, *inter alia*, failing to properly investigate Crowley's relationship with Cerberus and adopting a "don't ask, don't tell" approach to Crowley's conflict of interest constitute "Wrongful Act[s]" for which Genesis is required to provide coverage pursuant to the D&O Policy.

**E.     Genesis Was Timely Notified of the Claims in the D&O Action.**

31.     The D&O Policy requires that Genesis be given written notice as soon as practicable of any claim first made during the Policy Period or the Discovery Period and in no event later than thirty (30) days after the expiration of the Policy Period or Discovery Period. (D&O Policy § VII.A.)

32.     Genesis was timely notified of the claims in the D&O Action.

33.     The D&O Policy provides that claims based upon or arising out of similar facts or circumstances shall be considered a single claim deemed to be made when the earliest claim is filed or notice of a potential claim is given. The Policy states:

> More than one Claim based upon or arising out of the same Wrongful Act(s), or facts or circumstances or situations, or one or more series of similar, repeated or continuous Wrongful Acts, shall be considered a single Claim, and only one Retention shall be applicable to such single Claim. Such single Claim shall be deemed to be first made on the date when the earliest Claim is first made, or on the date within the Policy Period in which notice of a potential Claim pursuant to Section VII.B.is given.

(D&O Policy § V.C.)

7

34.     On November 8, 2000, Coram shareholders brought a class action suit against Crowley and the Outside Directors (and others) in the United States District Court for the District of New Jersey, alleging securities fraud and breach of fiduciary duty. *See Furst v. Feinberg, et al.*, No. 2:00-cv-5509. Coram notified Genesis of the *Furst* case during the Policy Period and Genesis agreed to defend the action.

35.     On March 21, 2001, the *Furst* plaintiffs filed a Second Amended Complaint to include specific claims against Crowley and the Outside Directors based upon Crowley's conflict. A true and correct copy of the Second Amended Complaint in *Furst* is attached as Exhibit F.

36.     Coram notified Genesis of the Second Amended Complaint during the Discovery Period. Genesis defended Crowley and the Outside Directors in *Furst*.

37.     The factual allegations in the D&O Action are virtually identical to those in the Second Amended Complaint in *Furst*:

| *FURST v. FEINBERG* <br> *Second Amended Complaint:* | *DELAWARE ACTION* <br> *The Trustee's Complaint:* |
|---|---|
| "Cerberus, acting through Feinberg, hired Crowley in August, 1989 [sic], to be a full-time employee of Cerberus with cash compensation of $1 million per year and opportunities for substantial additional bonuses." ¶ 36. | "In July 1999, Crowley and Cerberus entered into an oral agreement pursuant to which Crowley agreed to work exclusively for Cerberus for three years at a salary of $80,000 per month plus expenses and the possibility of substantial bonuses if Cerberus' investments on which Crowley had consulted were profitable." ¶ 13. |
| "As soon as Crowley was hired to work full time for Cerberus, Feinberg recommended that Coram hire Crowley as a 'consultant.'" ¶ 36. | "In August 1999, after Crowley and Cerberus had made their oral agreement, Feinberg recommended to the Board that Coram hire Crowley as a 'consultant' or 'CEO coach' to work with the newly-elevated CEO, Richard Smith." ¶ 14. |

| | |
|---|---|
| "Feinberg, a member of the Coram Board of Directors, did not disclose to the board the compensation terms of Crowley's employment agreement with Cerberus nor did he disclose that Crowley had agreed to work full time for Cerberus under the direction of Feinberg and that all of Crowley's benefits could be terminated by Feinberg if Crowley did not follow his instructions." ¶ 38. | "Feinberg disclosed to the Board that Crowley had a relationship with Cerberus, but provided no information about that relationship . . . [Coram's Directors] approved the retention of Crowley as a consultant to CEO Richard Smith without knowing Crowley's obligations to Cerberus, the nature of his work for Cerberus, and the terms of his compensation from Cerberus. ¶ 15. |
| "Crowley was hired by Coram for a three-year term, effective November 30, 1999, as Chairman of the Board, President and Chief Executive Officer." ¶ 40. | "On November 17, 1999, the Board approved a three-year employment agreement with Crowley, which he signed the next day." ¶ 21. |
| "On or about the same day that Crowley agreed to employment terms with Coram, Crowley and Cerberus executed a written employment agreement that reflected the earlier terms . . . and confirmed that Crowley agreed to devote 'his entire business time, attention, skill and energy exclusively' to Cerberus by performing duties to be assigned by Feinberg, in exchange for a base salary of $80,000 a month ($960,000 a year) plus the potential for Crowley to receive sizeable bonuses." ¶ 41. | "The Crowley/Cerberus Employment Agreement provides that Crowley would devote 'his entire business time, attention, skill and energy exclusively to the business of the Employer [Cerberus]' by performing duties to be assigned by Feinberg. Cerberus agreed to pay Crowley a base salary of $960,000 and the potential for bonuses. The Employment Agreement also provided that Cerberus could terminate Crowley for cause if Crowley did not follow Cerberus' reasonable instructions." ¶ 22. |
| "Neither Crowley nor Feinberg disclosed to Coram and its Board of Directors that Crowley was being paid nearly $1 million a year, plus expenses, and potential bonuses, by Cerberus." ¶ 44. | "As was the case with the oral agreement between Crowley and Cerberus, neither Crowley nor Feinberg disclosed the existence or the terms of their written agreement to the Board of Coram, and no member of the Board of Coram made any inquiry about the terms of the Crowley/Cerberus relationship." ¶ 23. |

| | |
|---|---|
| "Feinberg recommended to Coram's Board of Directors . . . that Coram hire Crowley's consulting company, Dynamic Health Care Solutions (Dynamic) to act as a 'consultant' to Coram." ¶ 42. | "Coram retained Crowley's wholly-owned consulting company, Dynamic Health Care Solutions, L.L.C., to act as a 'consultant' to Coram." ¶ 26. |
| [A] renegotiated agreement . . . was finalized in April 2000.  It was signed on behalf of Coram by Feinberg, who was not an officer of Coram." ¶ 60.  Feinberg arranged for Coram to bind itself to pay Crowley huge (potentially $13 million or more) incentive bonuses for one year's work." ¶ 8. | "Even though the other members of the Board had been informed that Crowley had a 'relationship' with Cerberus, they allowed Feinberg to conduct the negotiations with Crowley, made no inquiry concerning that relationship, nor made any independent review of Feinberg's negotiations with Crowley. ¶ 28.<br><br>"The Second Amendment provided a new bonus structure that was far greater than the maximum $1.9 million bonus that Crowley received under the employment agreement with Coram he had signed just four months earlier." ¶ 29. |
| "Consistent with these arrangements, Crowley used his position as Chairman and Chief Executive Officer at Coram to run Coram in a manner that benefited Cerberus and injured Coram… [Crowley] had thereby abandoned the fiduciary duties of care, loyalty and good faith which he owed to Coram." ¶ 9. | "Crowley, as an officer and director, owed Coram fiduciary duties of care, loyalty, disclosure, and good faith, including the duty to disclose actual and potential conflicts of interest.  As found by the Bankruptcy Court, Crowley breached those duties." ¶ 49. |

| | |
|---|---|
| "The Officer and Director Defendants had a fiduciary duty to act in the best interests of the Plaintiffs and the Class, in connection with all activities relating to Coram common stock, and in connection with the activities of Coram under their supervision and control." ¶ 87.<br><br>"Defendants breached their fiduciary duties to the Plaintiffs and the Class by working instead to orchestrate the scheme of fraud described herein . . . ." ¶ 90. | "The conduct of the outside directors, individually and as the Special Committee, was an egregious breach of their fiduciary duties and was consciously indifferent to the foreseeable results of the breach." ¶ 66. |

38.    Since the D&O Action and *Furst* are based upon and arise out of the same facts and circumstances, the D&O Action and the Second Amended Complaint in *Furst* constitute a single claim that was deemed to be first made within the Discovery Period based upon conduct occurring during the Policy Period, rendering notice timely under the D&O Policy.

39.    On February 6, 2001, during the Discovery Period, the Official Committee of Equity Security Holders in the Coram bankruptcy (the "Equity Committee") filed a motion seeking leave to file a derivative suit against Crowley and others based upon the Bankruptcy Court's finding that Crowley had a conflict.  Coram provided notice of the motion to Genesis on or about February 20, 2001, during the Discovery Period.

40.    On December 28, 2001, the Equity Committee filed a renewed motion for leave to file a derivative claim against Crowley and the Outside Directors.  Coram notified Genesis of the renewed motion on January 24, 2002, within the Discovery Period.

41.    Since the D&O Action and the Equity Committee's motions are both grounded in Crowley's conflict and the Outside Directors' failure to address that conflict, notice of the Delaware Action is deemed to have been made within the Discovery Period when Genesis received notice of the motions.

11

42.    The D&O Policy contains the following provision regarding notice of potential claims:

> [i]f, prior to the effective date of the expiration of the Policy Period, the Directors, Officers or the Company first become aware of circumstances which may substantially give rise to a Claim, and the Directors, Officers or the Company as soon as practicable during the Policy Period give written notice to the insurer of the circumstances and the reasons for anticipating a Claim, then any Claim subsequently made based upon such circumstances… shall be deemed for the purposes of this Policy to have been first made during the Policy Period.

(D&O Policy § VII.B.)

43.    By letter from Coram's general counsel, David Schwab, to Genesis dated January 24, 2001 (during the Policy Period), Coram reported the Bankruptcy Court's finding that Crowley had an actual conflict and advised Genesis that the Outside Directors faced potential claims for breach of fiduciary duty arising out of Crowley's conflict as a result of the Outside Directors' failure to inquire about or limit that conflict.  In section 7 of the letter, Coram informed Genesis that:

> the Equity Committee in the Chapter 11 alleged that the Debtors failed to disclose fully to the creditors in the Disclosure Statement all of [sic] financial relationships that existed between Mr. Crowley and Cerberus Partners. In addition, certain portions of the transcript of the December 21, 2000 hearing in the Bankruptcy Court raise the implication that the officers and directors of the Debtors may have been negligent in failing to obtain such information from Mr. Crowley upon his employment with the organization and later in connection with their consideration of filing of the bankruptcy petitions. With this information, a stockholder or creditor of the Debtors may attempt to assert some sort of securities fraud, breach of fiduciary duty, negligence or other claim directly or derivatively against the Insureds for the failure to disclose this relationship, inquire about it, limit it or otherwise take notice of these facts in the operation of the organization or the filing of the bankruptcy petitions and the formulation and negotiation of the plan of reorganization that was proposed in the bankruptcy proceedings.

A true and correct copy of Mr. Schwab's January 24, 2001 letter is attached as Exhibit G.

44.     The transcript of the Bankruptcy Court's December 21, 2000 decision was attached to Mr. Schwab's letter and Genesis acknowledged receipt of the letter.

45.     Because the Delaware Action is based upon and arises out of the same facts and circumstances as the notice of provided in the January 24, 2001 letter, the Trustee's claim is deemed for the purposes of the D&O Policy to have first been made during the Policy Period.

**F.      The Settlement of the Trustee's Claims Against the Outside Directors in the D&O Action.**

46.     Under the D&O Policy, Genesis agreed to pay on behalf of Coram's directors or officers any "Loss" arising from claims first made during the policy or discovery period based on a "Wrongful Act" of Coram's directors or officers.  (D&O Policy § I.A.)

47.     On or about April 5, 2006, after protracted negotiations, the Trustee and the Outside Directors entered into a written agreement settling the claims against the Outside Directors asserted in the D&O Action, subject to the approval of the Bankruptcy Court (the "Settlement Agreement").  Pursuant to the Settlement Agreement: (a) judgment shall be entered against the Outside Directors in the amount of $9.55 million; and (b) the Outside Directors shall assign all of their rights against Genesis to the Trustee.  A true and correct copy of the Settlement Agreement is attached hereto as Exhibit H.

48.     The settlement amount is reasonable in view of the amount of the damages the Trustee intends to assert in the D&O Action, including hard dollar reorganization costs of in excess of $40 million and expert testimony that Coram's remaining in bankruptcy caused a substantial decline in its value.

49.     On April 24, 2006, after notice to all parties in interest, including Genesis, the Bankruptcy Court approved the Settlement Agreement, finding that the settlement was fair and reasonable.  A true and correct copy of the Order approving the settlement is attached hereto as Exhibit I.

50.     Despite repeated requests by the Outside Directors, Genesis, having abandoned its insureds by refusing to defend them, then refused to engage in meaningful settlement negotiations with the Trustee on their behalf.

## FIRST COUNT
### (Breach of Insurance Contract)

51.     The Trustee repeats the allegations contained in paragraphs 1 through 50 as if set forth at length herein.

52.     Section VI.A. of the D&O Policy provides that Coram's directors and officers may not settle any claim without the prior written consent of Genesis, "which consent shall not be unreasonably withheld."

53.     Genesis unreasonably withheld its consent to the settlement.

54.     By abandoning its insureds, Genesis is not entitled to rely upon the consent to settlement clause of the D&O Policy.

55.     The settlement is a fair and reasonable compromise of the Trustee's claims against the Outside Directors and was the product of extensive negotiations by experienced counsel.

56.     Counsel for the Outside Directors kept Genesis contemporaneously advised of the progress of the negotiations and time and time again invited Genesis to participate, but Genesis rejected his requests out of hand.

57.     The Trustee's claims in the D&O Action that the Outside Directors breached their fiduciary duties constitute "Wrongful Act[s]" for which Genesis is required to provide coverage pursuant to the D&O Policy.

58.     Genesis' refusal to pay the settlement on behalf of the Outside Directors constitutes a breach of its obligations under the D&O Policy.

WHEREFORE, the Trustee demands that judgment be entered against Genesis in the amount of $9,550,000.00, together with interest, attorneys' fees, costs of suit and that he be granted such other and further relief as the Court deems just and equitable.

Dated: May 31, 2006

SCHNADER HARRISON SEGAL
& LEWIS LLP

By: _____
Richard A. Barkasy (#4683)
Michael J. Barrie (#4684)
824 Market Street Mall, Suite 1001
Wilmington, DE 19801
(302) 888-4554 (telephone)
(302) 888-1696 (telecopier)

Barry E. Bressler, Esq.
Wilbur L. Kipnes, Esq.
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103-7286
(215) 751-2000 (telephone)
(215) 751-2205 (telecopier)

Of Counsel.

15

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ARLIN M. ADAMS, as Chapter 11 Trustee of )
the Bankruptcy Estates of Coram Healthcare )
Corp. and Coram, Inc. and not individually, )
                                       )
             Plaintiff, )
                                         )   Civil Action No. 1:06-cv-00364-SLR
      v. )
                                         )
GENESIS INSURANCE COMPANY, )
                                         )
             Defendant. )

---

### DECLARATION OF BARRY E. BRESSLER

---

I, Barry E. Bressler, hereby declare as follows:

           1.      I am a partner in the law firm of Schnader Harrison Segal & Lewis LLP ("Schnader").

           2.      I am admitted and in good standing as a member of the Bars of the United States Supreme Court, the United States Court of Appeals for the Third Circuit, the United States District Courts for the Eastern and Middle Districts of Pennsylvania and the District of Colorado, as well as the Bar of the Supreme Court of the Commonwealth of Pennsylvania.

           3.      I submit this declaration in connection with the Brief of Arlin M. Adams, Chapter 11 Trustee of Coram Healthcare Corporation and Coram, Inc. (the "Trustee"), in Opposition to Genesis Insurance Company's ("Genesis") Motion to Dismiss or Stay.  I have personal knowledge of the facts stated herein.

           4.      Schnader serves as counsel for the Trustee in the above-captioned case and maintains offices at, among other places, 824 North Market Street, Suite 1001, Wilmington, Delaware and 1600 Market Street, Suite 3600, Philadelphia, Pennsylvania.

5.      The Trustee is Senior Counsel to Schnader and recently celebrated his eighty-fifth birthday.

6.      The Trustee, who resides in Elkins Park, Pennsylvania (a suburb of Philadelphia), maintains his office at Schnader's Philadelphia, Pennsylvania location.

7.      In April, 2006, the Trustee underwent quadruple bypass surgery and he is recuperating.

8.      The United States District Court for the District of Delaware (the "Delaware District Court") a short commute by car from the Trustee's Philadelphia, Pennsylvania office and less than an hour commute by car from the Trustee's Elkins Park, Pennsylvania residence.

9.       In connection with the confirmation hearings in the United States Bankruptcy Court for the District of Delaware, the Firm has approximately 161,000 pages of documents relating to the Coram Debtors in its Philadelphia, Pennsylvania office.

10.     These documents can be conveniently transported to, and/or stored at, Schnader's Wilmington, Delaware office, which is across the street from the Delaware District Court.

11.     According to the parties' current deposition schedule in the action pending in the United States District Court for the District of Colorado, no depositions will occur in Colorado.

12.     The only witnesses Genesis has thus far been willing to agree to produce in the Colorado action are scheduled to have their depositions taken just outside of Cleveland, Ohio. Three of the Outside Directors will be deposed in connection with the Colorado action in California and the fourth in Chicago, Illinois.

2

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: _Aug. 11, 2006_                    _____
                                          Barry E. Bressler

3